**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| TIMOTHY C. BORUP,<br>individually and on behalf of all others<br>similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>THE CJS SOLUTIONS GROUP, LLC,<br>d/b/a THE HCI GROUP,<br><br>　　　　　Defendant. | Civil No. 0:18-cv-1647<br><br><br>**COLLECTIVE AND CLASS ACTION<br>COMPLAINT AND JURY DEMAND** |

Plaintiff Timothy C. Borup through his undersigned counsel, individually and on behalf of all others similarly situated, file this Collective and Class Action Complaint against Defendant The CJS Solutions Group, LLC d/b/a The HCI Group ("Defendant" or "HCI"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA") and Minnesota state law.  Plaintiff alleges that he and other similarly situated consultants were improperly classified as independent contractors, and, as a result, did not receive overtime pay for hours worked in excess of forty (40) in a workweek.  The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

**<u>JURISDICTION AND VENUE</u>**

1.　　Jurisdiction over Plaintiff's FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.  This Court also has supplemental jurisdiction over Plaintiff's Minnesota state law claims pursuant 28 U.S.C. § 1367(a), because these claims

are so related to the federal claims that they form part of the same case and controversy.

2. Venue in this Court is proper pursuant to 28 U.S.C. § 1391, since a substantial part of the events giving rise to Plaintiff's claims occurred within this District, and HCI conducts business in this judicial District. Specifically, Plaintiff Borup performed work for HCI at Mayo Clinic in Rochester, Minnesota.

## PARTIES

3. Plaintiff Borup is an individual presently residing in Grand Rapids, Michigan. Borup worked for Defendant providing support and training in using a new recordkeeping system to HCI's clients at the Mayo Clinic in April and May, 2018. Pursuant to 29 U.S.C. § 216(b), Borup has consented in writing to participate in this action. *See* Exhibit A.

4. Defendant The CJS Solutions Group, LLC d/b/a The HCI Group ("Defendant" or "HCI") is a corporation providing information technology educational services for the healthcare industry across the country. HCI maintains its corporate headquarters in Jacksonville, Florida and is incorporated in Florida.

5. HCI employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

6. HCI's annual gross volume of sales made or business done exceeds $500,000.

## COLLECTIVE AND CLASS DEFINITIONS

7. Plaintiff brings Count I of this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of themselves and the following class of potential FLSA opt-in litigants:

> All individuals who were classified as independent contractors while performing consulting work for The CJS Solutions Group, LLC d/b/a The HCI Group ("Defendant" or "HCI") in the United States, for the maximum time period as may be allowed by law.

8. Plaintiff brings Count II of this lawsuit as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and the following class:

> All individuals who were classified as independent contractors while performing consulting work for The CJS Solutions Group, LLC d/b/a The HCI Group ("Defendant" or "HCI") in the State of Minnesota, for the maximum time period as may be allowed by law.

9. The FLSA Collective and the Minnesota Class are together referred to as the "Classes."

10. Plaintiff reserves the right to re-define the Classes prior to notice or class certification, and thereafter, as necessary.

## FACTS

11. As a leading healthcare information technology firm, HCI provides training and support to medical facilities in connection with the implementation of new electronic recordkeeping systems. HCI employs consultants, such as Plaintiff, who perform such training and support services throughout the United States.

12. HCI's financial results are significantly driven by the number of consultants

3

providing training and support services for HCI's customers and the fees that HCI charges the customers for these services.

13. In 2018, Borup worked as a consultant for HCI and was assigned to work at the Mayo Clinic in Rochester, Minnesota, which is located within this judicial District.

14. Plaintiff was paid solely on an hourly basis and was paid only for the time he actually worked. Plaintiff also received a *per diem* for food.

15. HCI improperly, wrongfully and illegally classified Plaintiff and Class Members as independent contractors, when the economic reality of their position is that of an employee, and HCI retains the right of control, and, in fact, actually does control their work.

**Plaintiff is an Employee as a Matter of Economic Reality**

16. The Department of Labor's Wage and Hour Division ("WHD") Administrator's Interpretation No. 2015-1 provides "guidance regarding the application of the standards for determining who is an employee under the Fair Labor Standards Act [FLSA] ... to the regulated community in classifying workers and ultimately in curtailing misclassification." U.S. Dep't of Labor, Wage & Hour Div., Admin.'s Interpretation No. 2015-1, 1 (July 15, 2015). According to the WHD, "most workers are employees under the FLSA's broad definitions." *Id.* Plaintiff and Class Members qualify as employees under the FLSA's test, as further described below.

17. Work performed by Plaintiff and Class Members is an integral part of HCI's business. HCI is in the business of providing information technology educational services to the healthcare industry. Plaintiff and Class Members provide support and

4

training to HCI's clients in connection with the implementation of electronic recordkeeping systems.

18. Plaintiff and Class Members' duties do not involve managerial work. They follow the training provided to them by HCI in performing their work, which is basic training and support in using electronic recordkeeping systems.

19. Plaintiff and Class Members do not make any significant relative investments in relation to their work with HCI. HCI provides the training and equipment required to perform the functions of their work.

20. Plaintiff and the Class Members have little or no opportunity to experience a profit or loss related to their employment. HCI pays Plaintiff and the Class Members a fixed hourly rate. Plaintiff and the Class Members do not share in HCI's monetary success; their income from their work is limited to their hourly rate.

21. Plaintiff and Class Members' work does not require special skills, judgment or initiative. HCI provides training to Plaintiff and Class Members, which they use to provide training and support to HCI's clients.

22. Plaintiff and Class Members are economically dependent on HCI. Plaintiff and Class Members are entirely dependent upon HCI for their business, as they are not permitted to perform services for any other company during their time working for HCI.

23. Plaintiff and Class Members are not customarily engaged in an independently established trade, occupation, profession or business.

24. On information and belief, Class Members often enter into successive projects for HCI.

25. Plaintiff and Class Members have little or no authority to refuse or negotiate HCI's rules and policies; they must comply or risk discipline and/or termination.

26. HCI instructs Plaintiff and Class Members concerning how to do their work and HCI dictates the details of the performance of their jobs. For example:

   a. HCI, not Plaintiff or Class Members, conducts all of the billing and invoicing to HCI's clients for the work. HCI bills the third-party customers directly;

   b. Plaintiff and Class Members have no control over what prices to charge, or the scheduling of shifts, the manner of taking meal or rest breaks, or even the dress code. All negotiations over the cost of the work are done directly between HCI and the third-party client;

   c. HCI requires Plaintiff and Class Members to work the entire project from inception to conclusion, and can release the workers for poor performance;

   d. HCI provides all training needed for Plaintiff and Class Members to perform their work; and

   e. HCI requires Plaintiff and Class Members to perform in accordance with HCI's policies, manuals, standard operating procedures and the third-party client's requirements.

27. Plaintiff and Class Members often work approximately twelve (12) hours per day, seven (7) days per week.

28. Plaintiff and Class Members have to request HCI's approval for time off.

HCI has the discretion to grant or deny such requests.

**Plaintiff is not Exempt as a "Computer Employees" under the FLSA**

29. Plaintiff and Class Members provide support and training to hospital staff in connection with electronic recordkeeping systems. Plaintiff has no specialized training or certification in computer programming, software documentation and analysis, or testing of computer systems or programs. For example, Plaintiff Borup has a background as a medical student. Plaintiff and Class Members were not working as, nor were they similarly skilled as, computer systems analysts, computer programmers or software engineers, as defined in 29 C.F.R. § 541.400(a).

30. Plaintiff and Class Members' primary duties consisted of training and aiding healthcare staff with using new electronic recordkeeping software. This support is also known as "at the elbow." Plaintiff and Class Members' primary duties did not include the higher skills of "application of systems analysis techniques and procedures" pursuant to 29 C.F.R. § 541.400(b)(1). Plaintiff and Class Members did not analyze, consult or determine hardware, software programs or any system functional specifications for HCI's clients. *See id.*

31. Plaintiff and Class Members did not consult with HCI customers to determine or recommend hardware specifications. Plaintiff and Class Members did not design, develop, document, analyze, create, test or modify a computer system or program as defined in 29 C.F.R. § 541.400(b)(2).

32. While Plaintiff and Class Members' "work was highly dependent upon, or facilitated by, the use of computers and computer software programs;" they were not

7

"primarily engaged in computer systems analysis and programming." U.S. Dept. of Labor, Wage & Hour Div., Fact Sheet #17E: Exemption for Employees in Computer-Related Occupations under the Fair Labor Standards Act (FLSA). Plaintiff and Class Members provided support and training to HCI's clients in using electronic recordkeeping systems.

**Plaintiff and Class Members Routinely Worked in Excess of Forty Hours a Week**

33. Plaintiff and Class Members are regularly required to work 12-hour shifts, 7 days a week, while performing work for HCI.

34. Although Plaintiff and Class Members are routinely required to work more than both forty (40) hours per week and forty-eight (48) hours per week, they do not receive one and one-half (1 ½) times their regular rate for hours worked in excess of forty (40) hours per week and in excess of forty-eight (48) hours per week, as required by the FLSA and Minnesota state law, respectively.

35. Instead, Plaintiff and Class Members are paid a straight hourly rate for hours that they work, regardless of whether they work more than forty hours in a week.

**HCI Willfully Violated the FLSA**

36. HCI and its senior management had no reasonable basis to believe that Plaintiff and the members of the FLSA Class were exempt from the requirements of the FLSA. Rather, HCI knew or acted with reckless disregard of clearly applicable FLSA provisions in failing to pay overtime to Plaintiff and the FLSA Class. Such willfulness is demonstrated by, or may be reasonably inferred from, HCI's actions and/or failures to act, including the following:

8

a. HCI has faced multiple lawsuits involving the issues presented herein, and has paid millions of dollars in compensation to similarly situated workers;

b. At all times relevant hereto, HCI maintained payroll records that reflect the fact that Plaintiff and the Class did, in fact, regularly work in excess of forty (40) and forty-eight (48) hours per week, and thus, HCI had actual knowledge that Plaintiff and the Class worked overtime;

c. At all times relevant hereto, HCI knew that it did not pay Plaintiff and the FLSA Class one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) and forty-eight (48) hours per week;

d. As evidenced by its own job offer letters, independent contractor agreements, employment agreements, and training / orientation materials for consultants, at all times relevant hereto, HCI was aware of the nature of the work performed by its consultants, and, in particular, that these individuals worked exclusively "at the elbow" of healthcare workers employed by HCI's clients, providing basic training and support;

e. As evidenced by its own job offer letters, employment agreements, and training materials for consultants, HCI knew and understood that it was subject to the wage requirements of the FLSA as an "employer"

9

under 29 U.S.C. § 203(d) and applicable state law.

    f.    At all times relevant hereto, HCI was aware that its consultants did not engage in: (i) computer systems analysis, computer programming, or software engineering, as defined in 29 C.F.R. § 541.400(a); (ii) the application of systems analysis techniques and procedures, as defined in 29 C.F.R. § 541.400(b)(1); or (iii) the design, development, analysis, creation, testing or modification of a computer system or program, as defined in 29 C.F.R. § 541.400(b)(2);

    g.    HCI lacked any reasonable or good faith basis to believe that its consultants fell within any exemption from the overtime requirements of the FLSA. Rather, HCI deliberately misclassified its consultants as independent contractors in order to avoid paying them overtime compensation to which they were entitled;

    h.    At all times relevant hereto, HCI was aware that it would (and, in fact did) benefit financially by failing to pay Plaintiff and the FLSA Class one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) and forty-eight (48) hours per week; and

    i.    Thus, HCI had (and has) a strong financial motive to violate the requirements of the FLSA by misclassifying its consultants as independent contractors.

37.    Based upon the foregoing, HCI was cognizant that, or recklessly disregarded whether, its conduct violated the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

38. Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the class defined above.

39. Plaintiff desires to pursue his FLSA claims on behalf of all individuals who opt- in to this action pursuant to 29 U.S.C. § 216(b).

40. Plaintiff and the FLSA Class Members are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals currently work or worked pursuant to HCI's previously described common business and compensation practices as described herein, and, as a result of such practices, have been misclassified as independent contractors and have not been paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, HCI's common misclassification, compensation and payroll practices.

41. Specifically, HCI misclassified Plaintiff and FLSA Class Members as independent contractors and paid them a set hourly rate.

42. The similarly situated employees are known to HCI, are readily identifiable, and can easily be located through HCI's business and human resources records.

43. HCI employs many FLSA Class Members throughout the United States. These similarly situated employees may be readily notified of this action through U.S. Mail and/or other means, and allowed to opt in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest) and attorneys' fees and

costs under the FLSA.

## CLASS ACTION ALLEGATIONS

44. Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the Minnesota Class, as defined above.

45. The members of the Minnesota Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Minnesota Class.

46. Plaintiff will fairly and adequately represent and protect the interests of the Minnesota Class because there is no conflict between the claims of Plaintiff and those of the Minnesota Class, and Plaintiff's claims are typical of the claims of the Minnesota Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

47. There are questions of law and fact common to the proposed Minnesota Class, which predominate over any questions affecting only individual Class Members, including, without limitation: whether Defendant has violated and continues to violate Minnesota law through its policy or practice of misclassifying consultants as independent contractors, and thereby failing to pay them overtime compensation.

48. Plaintiff's claims are typical of the claims of the Minnesota Class in the following ways: (1) Plaintiff is a member of the Minnesota Class; (2) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Minnesota Class; (3) Plaintiff's claims are based on the same legal and remedial theories as those of the Minnesota Class and involve similar factual

circumstances; (4) there are no conflicts between the interests of Plaintiff and the Minnesota Class Members; and (5) the injuries suffered by Plaintiff is similar to the injuries suffered by the Minnesota Class Members.

49. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1), (b)(2) and / or (b)(3) because, *inter alia*, questions of law and fact common to the Minnesota Class predominate over any questions affecting only individual Class members.

50. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Minnesota Class is readily identifiable from Defendant's own records. Prosecution of separate actions by individual members of the Minnesota Class would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

51. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Furthermore, the amounts at stake for many of the Minnesota Class members, while substantial, are not great enough to enable them to maintain separate suits against Defendant. Without a class action, Defendant will retain the benefit of its wrongdoing, which will result in further damages

to Plaintiff and the Minnesota Class. Plaintiff envisions no difficulty in the management of this action as a class action. These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt out of it pursuant to Fed. R. Civ. P. 23(c)(2), for the purpose of adjudicating their claims for overtime compensation, liquidated damages, civil penalties, interest, attorneys' fees and costs and all other liabilities under the Minnesota Law.

## COUNT I
### Violation of the FLSA
### (On Behalf of Plaintiff and the FLSA Class Members)

52. All previous paragraphs are incorporated as though fully set forth herein.

53. The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee…" 29 U.S.C. § 203(d).

54. HCI is subject to the wage requirements of the FLSA because HCI is an employer under 29 U.S.C. § 203(d).

55. During all relevant times, HCI has been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

56. During all relevant times, Plaintiff and the FLSA Class Members have been covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

57. Plaintiff and the FLSA Class Members are not exempt from the requirements of the FLSA.

58. Plaintiff and the FLSA Class Members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

59. HCI, pursuant to its policies and practices, failed and refused to pay overtime premiums to Plaintiff and the FLSA Class Members for all their overtime hours worked by misclassifying Plaintiff and the FLSA Class as independent contractors, thereby exempting them from the requirements of the FLSA.

60. HCI knowingly failed to compensate Plaintiff and the FLSA Class Members at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1).

61. In violating the FLSA, HCI acted willfully and with reckless disregard of clearly applicable FLSA provisions.

62. In violating the FLSA, on information and belief, HCI did not have any good faith basis to rely on any legal opinion or advice to the contrary.

## COUNT II
### Violation of Minnesota Fair Labor Standards Act
### (On Behalf of Plaintiff and the Minnesota Class)

63. All previous paragraphs are incorporated as though fully set forth herein.

64. Overtime compensation due to Minnesota workers is governed by Minnesota Fair Labor Standards Act, Minn. Stat. §§ 177.21, *et seq.*

65. The MFLSA requires that employees be compensated for all hours worked in excess of forty-eight (48) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. Minn. Stat. § 177.25, subd. 1.

66. HCI is subject to the wage requirements of the MFLSA because HCI is an "employer" under the MFLSA. Minn. Stat. § 177.23, subd. 6.

67. During all relevant times, Plaintiff and the Minnesota Class are covered employees entitled to the above-described MFLSA's protections. Minn. Stat. § 177.23, subd. 7.

68. Plaintiff and the Minnesota Class are not exempt from the requirements of the MFLSA.

69. HCI is required by MFLSA to pay Plaintiff and the Minnesota Class time and one- half (1 ½) the regular rate of pay for any work in excess of forty-eight (48) hours. HCI violated Plaintiff and the Minnesota Class Members' rights by failing to pay them the legally required amount of overtime compensation. Minn. Stat. § 177.25, subd. 1.

70. Specifically, HCI, pursuant to its policies and practices, failed and refused to pay overtime premiums to Plaintiff and the Minnesota Class for all their overtime hours worked by misclassifying Plaintiff and the Minnesota Class as employees exempt from the requirements of the MFLSA.

71. In violating the MFLSA, HCI acted willfully and with reckless disregard of clearly applicable MFLSA provisions.

72. Defendant is liable to Plaintiff and the Minnesota Class for compensatory and liquidating damages, plus costs, disbursements, witness and attorneys' fees, pursuant to Minn. Stat. § 177.27.

## JURY DEMAND

Plaintiff requests a trial by jury on all of their claims.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff seeks the following relief on behalf of himself and the Classes:

a. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. §216(b);

b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Class Members;

c. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Minnesota Class;

d. Back pay damages for unpaid overtime compensation and prejudgment interest to the fullest extent permitted under the law;

e. Liquidated, penalties and exemplary damages to the fullest extent permitted under the law, including but not limited to any civil penalties for belated payment (Minn. Stat. § 181.13);

f. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

g. Such other and further relief as this Court deems just and proper.

Dated: June 13, 2018

LARSON • KING, LLP

By: s/T. Joseph Snodgrass
T. Joseph Snodgrass (MN #231071)
Kelly A. Lelo (MN #330838)
30 East Seventh St., Suite 2800
St. Paul, MN  55101
Tel: (651) 312-6500
Fax: (651) 312-6618
jsnodgrass@larsonking.com
klelo@larsonking.com

and

Thomas A. Jacobson (MN #0265810)
SWENSON LERVICK SYVERSON
   TROSVIG JACOBSON SCHULTZ CASS, PA
710 Broadway Street
Alexandria, MN 56308
Tel: (320) 421-6447
Fax: (320) 763-3657
taj@alexandriamnlaw.com

*Attorneys for Plaintiff and the Proposed Classes*

1719542