**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

TIMOTHY C. BORUP,
individually and on behalf of all
others similarly situated,

       Plaintiff,

v..

THE CJS SOLUTIONS GROUP,
LLC, d/b/a THE HCI GROUP,

       Defendant.

Court File No. 0:18-cv-01647-PAM-DTS

**MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFF'S MOTION
TO COMPEL DISCOVERY PURSUANT
TO FED. R. CIV. P. 37(a)**

## INTRODUCTION

The primary discovery dispute in this wage-and-hour case relates to the Defendant The CJS Solutions Group, LLC, d/b/a The HCI Group's ("HCI") unilateral efforts to limit the putative classes by simply refusing to provide any discovery for the full scope of the workers at issue within the scope of the proposed class definitions alleged within the Complaint.  Under the Court's current scheduling order, collective and class certification motions are due on April 1, 2019. Dkt. 19, at 2.

Plaintiff Timothy Borup ("Borup") brought this putative collective and class action against HCI under the Fair Labor Standards Act ("FLSA") and corresponding Minnesota state law for failure to pay overtime, including travel time, due to the misclassification of Borup and others as independent contractors.

HCI is in the business of providing educational services to healthcare industry workers. Borup and thousands of putative class members assist HCI's clients in

connection with the implementation of electronic recordkeeping systems created by non-party Epic Software. These individuals work exclusively "at the elbow" of healthcare industry workers employed by HCI's clients, providing basic training and consulting for use of the record-keeping software.

Borup was an HCI onsite consultant at the Mayo Clinic "go live" conversion to Epic software in 2018. At the time, Borup was a medical student, and HCI paid him an hourly rate but refused to provide overtime or travel compensation.

Approximately one year *before* Borup was hired by HCI, HCI was sued in three separate federal lawsuits involving the exact same claims and legal theories at issue in this case.[1] Approximately six months before Borup was hired, in February, 2018, a global settlement of the three prior lawsuits was reached for workers who were paid for "consulting work" for HCI between May 19, 2014 through on or about May 31, 2017, but who were not paid overtime. A non-reversionary fund of $3.24 million was created for over two thousand consultants. As required by law, the settlement only released FLSA claims if the consultant actually agreed to opt-into the litigation.

Approximately one-half of the workers at issue chose not to opt-in or participate in the prior litigation, as the $3.24 million fund was grossly insufficient to cover all of the overtime at issue for all of the eligible consultants. Approximately one-half of the eligible

---

[1] *E.g., Sanders v. The CJS Solutions Group, LLC d/b/a The HCI Group,* No. 17-3809 (S.D.N.Y. filed May 19, 2017); *Garrett v. The CJS Solutions Group, LLC d/b/a The HCI Group*, No. 17-2-10799-9 (Wash. Sup. Ct. May 4, 2017), *removed* No. 17-3809 (W.D. Wash. June 5, 2017), *transferred* (S.D.N.Y. July 19, 2017); *Allen v. The CJS Solutions Group, LLC d/b/a The HCI Group*, No. 17-7085 (S.D.N.Y. Sept. 18, 2017) (hereafter collectively referred to as the "*Sanders* litigation").

workers (1,037) participated in the settlement, and they received less than 100% of their wages owed with no liquidated damages.  If there was a greater the participation rate, the individual claims payments would have been even lower.

Despite telling former counsel of the plaintiffs in the prior lawsuits that HCI had agreed to cease its offending pay practices, HCI continued its misclassification scheme with Borup and hundreds of other workers.  Borup brought suit not only on his behalf, but also on behalf of all of the other non-released workers who were misclassified before and after the prior global settlement.  Borup's Complaint seeks collective relief on behalf of:

> All individuals who were classified as independent contractors while performing consulting work for The CJS Solutions Group, LLC d/b/a The HCI Group ("Defendant" or "HCI") in the United States, for the maximum time period as may be allowed by law.

Dkt. 1, at ¶ 7.

The instant motion seeks to compel production of *all* documents responsive to 30 requests within Borup's First Set of Requests for the Production of Documents, and a full and substantive answer to Interrogatory No. 1 in his First Set of Interrogatories.[2]  In a transparent effort to limit the class and collective that may be certified here, HCI has refused to provide a substantive interrogatory answer or documents responsive to basic

---

[2] When Borup initially filed the instant motion on December 21, 2018 (Dkt. 21), he also intended to seek an order compelling HCI to comply with its Rule 26(a)(1) initial disclosure obligations. Subsequently, on January 3, 2019, HCI amended its initial disclosures to identify additional persons beyond the single previously-identified HCI employee it believes may possess discoverable information in this case.  Borup has since recommended the meet-and-confer process for these new disclosures, as HCI does not appear to have identified the persons responsible for the wage and hour decisions at issue.

requests seeking information concerning all of putative class members; HCI's decision, practices and policies relating to the classification and payment of "go live" consultants as independent contractors, beyond the production of records directly referencing and/or applicable to Borup; its affirmative defenses; and related wage-and-hour misclassification litigation and settlement involving the same category of workers at issue here—all information highly relevant to Borup's forthcoming motions for FLSA collective action and Rule 23 class action certification.

## FACTUAL BACKGROUND

Borup served his First Sets of Requests for Production of Documents and Interrogatories on HCI on November 19, 2018. Ex. A.[3]  HCI served its written responses and objections to Borup's first sets of discovery on December 19, 2018. Exs. E and F. Asserting boiler-plate objections, HCI refused to provide a substantive answer to Interrogatory No. 1, and refused to produce any documents beyond those previously produced in the litigation relating directly to Borup. *See* Exs. E and F.

During a lengthy telephonic meet-and-confer between the parties' counsel on December 20, 2018, Borup's counsel outlined their concerns with HCI's responses and objections to Borup's discovery. For its part, HCI agreed to supplement its production on or before January 22, 2019, by producing documents responsive to Document Request Nos. 6-8 (training materials, 1099 form, and work advertisements), 10-11 and 25 (training materials, work rules and instructions, and job duties), 18-19 and 26 (third-party

---

[3] Exhibits are attached to the Declaration of T. Joseph Snodgrass, filed concurrently herewith.

agreements), 21 (classification decision), and 25 (training, job duties and work rules), *but limited the supplementation to only those records specifically applicable to Borup.* Ex. G, at 3.

HCI's counsel suggested that HCI might be willing to "compromise" on Borup's discovery requests by providing information and documents beyond those directly applicable to Borup, for a group of medical doctors (MDs) and medical students who worked as HCI onsite consultants at the 2018 Mayo Clinic "go live" conversion to Epic software. Snodgrass Decl. ¶¶ 4-5; Ex. G, at 3-4. However, this in effect was no compromise at all but rather a request for Borup to arbitrarily limit the scope of the proposed classes without the benefit of any discovery. Snodgrass Decl. ¶ 5.

The parties subsequently exchanged email correspondence concerning their meet-and-confer efforts on December 20 and 21, 2018, and have since been unable to resolve their differences absent Court involvement. *See* Exs. C and G. This motion follows.

**FACTUAL BACKGROUND**

Borup served his First Sets of Requests for Production of Documents and Interrogatories on HCI on November 19, 2018. Ex. A.[4] Thereafter, on December 14, 2018, the parties exchanged their Rule 26(a)(1) initial disclosures. Ex. B.

In its original initial disclosures, HCI identified a single, short-term HCI employee, Ena Frljak (employed within approximately the past 10 months), likely to have discoverable information in this matter. *See id.* at 1; *see also* Ex. C, at 1.

---

[4] Exhibits are attached to the Declaration of T. Joseph Snodgrass, filed concurrently herewith.

Thereafter, on January 3, 2019, HCI served its First Amended Rule 26(A)(1) Initial Disclosure, wherein it identified 7 additional current or former HCI employees 3 of whom "may have information relating to Plaintiff Borup's work for Defendant, Plaintiff Borup's allegations, including facts relating to Defendant's defenses," and 4 of whom "may have general knowledge of Go Live events." Ex. D.

HCI has failed to disclose any persons who actually were involved in making, approving and allowing the pay practice decisions leading to yet a fourth lawsuit involving the same wage and hour claims for "go live" employees. HCI produced no documents or electronically stored information (ESI) in its possession that it may use to support its defenses in this case beyond previously produced worker, payroll, and timekeeping records related solely to Borup and agreements between Borup and HCI. Nor did it identify any other categories of documents in its possession relevant to either parties' claims and defenses. *See generally* Ex. B, at 2.

HCI served its written responses and objections to Borup's first sets of discovery on December 19, 2018. Exs. E and F. Asserting boiler-plate objections, HCI refused to provide a substantive answer to Interrogatory No. 1, and refused to produce any documents beyond those previously produced in the litigation relating directly to Borup. *See* Exs. E and F.

During a lengthy telephonic meet-and-confer between the parties' counsel on December 20, 2018, Borup's counsel outlined their concerns with HCI's responses and objections to Borup's discovery, as well as HCI's deficient initial disclosures. For its part, HCI agreed to supplement its production on or before January 22, 2019, by producing

documents responsive to Document Request Nos. 6-8 (training materials, 1099 form, and work advertisements), 10-11 and 25 (training materials, work rules and instructions, and job duties), 18-19 and 26 (third-party agreements), 21 (classification decision), and 25 (training, job duties and work rules), but limited the supplementation to only those records specifically applicable to Borup. Ex. G, at 3.

HCI's counsel suggested that HCI might be willing to "compromise" on Borup's discovery requests by providing information and documents beyond those directly applicable to Borup, for a group of medical doctors (MDs) and medical students who worked as HCI onsite consultants at the 2018 Mayo Clinic "go live" conversion to Epic software. Snodgrass Decl. ¶¶ 4-5; Ex. G, at 3-4. However, this in effect was no compromise at all but rather a request for Borup to arbitrarily limit the scope of the proposed classes without the benefit of any discovery. Snodgrass Decl. ¶ 5.

The parties subsequently exchanged email correspondence concerning their meet-and-confer efforts on December 20 and 21, 2018, and have since been unable to resolve their differences absent Court involvement. *See* Exs. C and G. This motion follows.

## **ARGUMENT**

I.   **HCI REFUSES TO ALLOW DISCOVERY CONCERNING PUTATIVE CLASS MEMBERS.**

Interrogatory No. 1: Identify all workers who you paid as independent contractors during the relevant time period [three years from filing of the Complaint in this action] and whose work related to go live events, and who did not receive money from the Sanders settlement.

HCI Answer to Interrogatory No. 1: Defendant objects to this interrogatory on the grounds that it is premature, vague, overbroad, not relevant to a claim or defense of a party, not proportionate to the needs of the case, and

7

to the extent it seeks to discovery confidential information about persons not party to this matter. Subject to and without waiving the foregoing objections, limited to Plaintiff Timothy Borup, Defendant responds as follows: Timothy C. Borup.

Ex. E, at 2; *see also* Ex. A, at 3 (defining "The relevant time period" and "The Sanders settlement" as used in Borup's interrogatory).

> Document Request No. 1: For all workers identified in Interrogatory No. 1, all contracts between you and the worker.
>
> Document Request No. 2: For all workers identified in Interrogatory No. 1, all records reflecting the number of hours worked per day and worked per week, including but not limited to the workers time sheets, and any Excel spreadsheets including the such data, and the notice materials from the Sanders settlement providing the number of overtime hours then at issue in that lawsuit.
>
> Document Request No. 3: For all workers identified in Interrogatory No. 1, all records reflecting their work responsibilities and what they were doing related to go live events.
>
> Document Request No. 4: For all workers identified in Interrogatory No. 1, all records reflecting their rate of pay, including but not limited to hourly rates.
>
> HCI Response to Request Nos. 1-4: Defendant objects to this request on the grounds that it is premature, vague, overbroad, not relevant to a claim or defense of a party, not proportionate to the needs of the case, and to the extent it seeks to discover confidential information about persons not party to this matter. Subject to and without waiving the foregoing objections, limited to Plaintiff Timothy Borup, Defendant responds as follows: See documents previously produced.

Ex. F, at 2-3; *see also* Ex. A, at 3 (defining "The relevant time period" and "The Sanders settlement" as used in Borup's document requests).

> Document Request No. 5: For all workers identified in Interrogatory No. 1, all documents relating to their travel to any out-of-town locations related to go live events, including expenses, itineraries, mileage reimbursement,

8

airfare, rental car records, bus records, train records, and ride-sharing records.

Document Request No. 6: For all workers identified in Interrogatory No. 1, all documents relating to training materials related to go live events.

Document Request No. 7: For all workers identified in Interrogatory No. 1, all 1099 forms.

Document Request No. 9: All emails and other communications by you to workers identified in Interrogatory No. 1 during the relevant time period and related to go live events.

Document Request No. 16: For workers identified in Interrogatory No. 1, any documents that reflect the amount of time spent at unpaid rest or meal breaks.

Document Request No. 17: For workers identified in Interrogatory No. 1, any documents that reflect the dates and amounts of payment for remuneration.

Document Request No. 18: For workers identified in Interrogatory No. 1, any document reflecting the rate at which you billed any third-party for their work.

Document Request No. 19: For workers identified in Interrogatory No. 1, any documents reflecting the number of hours you billed any third-party for their work.

Document Request No. 26: All documents reflecting contracts between you and any third-parties during the relevant time period and related to go live events, and which involved any workers identified in your response to Interrogatory No. 1.

HCI Response to Request Nos. 5-7, 9, 16-19 and 26: Defendant objects to this Request on the grounds that it is vague, ambiguous, overbroad as to time and scope, unduly burdensome, not relevant to a claim or defense of a party, and not proportionate to the needs of the case, and to the extent it seeks to discover confidential information about persons not party to this matter.

Ex. F, at 4, 6-7.

9

Interrogatory No. 1 and Document Requests 1-7, 9, 16-19 and 26 seek basic information concerning putative class members—*i.e.*, the very individuals Borup claims are similarly situated. Contrary to HCI's boilerplate objections based on vagueness, ambiguity, and overbreadth as to time and scope, all of the above-referenced requests are narrowly tailored to the workers identified in response to Interrogatory No. 1, which itself, is limited to: (1) workers HCI paid as independent contractors; (2) during the three years prior to the filing of Borup's Complaint; (3) whose work related to go live events; and (4) who did not receive money from the *Sanders* settlement. HCI's objections on these grounds are therefore baseless and should be rejected.

Information concerning work responsibilities, training materials, work-related travel, the number of hours worked and subsequently billed, rates of pay and billing, and the amount of compensation paid to other onsite "go live" consultants, are highly relevant to Borup's ability to demonstrate similar situation, numerosity, typicality of claims and commonality—requirements for FLSA collective action and Rule 23 class action certification. *E.g., Gerlach v. Wells Fargo & Co,* No. C 05-0585, 2006 WL 824652, at *2-3 (N.D. Cal. Mar. 28, 2006) (plaintiffs met similarly situated burden where Wells Fargo employees (1) shared a job description; (2) were uniformly classified as exempt from overtime pay by defendants; and (3) performed similar job duties).

For example, Borup's requests for documents reflecting work responsibilities, training materials and contracts, *inter alia*, are relevant to the scope of the classes Borup seeks to certify—particularly, given HCI's argument that, at best, only MDs and medical students may be similarly situated to Borup, and its demand during the parties' meet-and-

confer that Borup arbitrarily limit the scope of the putative classes to only that subgroup without the benefit of any discovery. *E.g. Strauch v. Computer Sciences Corp.*, 322 F.R.D. 157, 161-165, 183 (D. Conn. 2017) (granting Rule 23 class certification in misclassification case involving computer systems administrators who may be grouped by different areas of specialization and whose work locations varied, based on homogeneity in class members' job duties and functions, as evidenced by "several common forms of proof" such as "a global set of job descriptions, a company-wide set of best practices …, and various agreements [employer] enters into with its clients to provide particular services"); *Strauch v. Computer Sciences Corp.*, No. 14-956, 2015 WL 3727804, at *3-4 (D. Conn. June 9, 2015) (granting conditional FLSA certification to computer system administrators, and rejecting employer's contention that groups of workers separated by disparities in job titles, job descriptions and compensation cannot be subject to the same policy that violates FLSA).

Given employers' efforts to oppose certification by highlighting purported individualized differences between putative class members generally, Borup's focused pre-certification discovery concerning HCI's timekeeping and pay practices, as well as its affirmative defenses, discussed *infra* Section III, must be obtained to demonstrate to the Court that the variances typically highlighted by employers like HCI do not in fact defeat certification. *Strauch,* 2015 WL 3727804, at *3-4. Additionally, compensation records and records of actual hours worked support Borup's position that HCI's onsite "go live" consultants routinely worked more than 40 hours per week without receiving overtime compensation, and that damages can easily be computed using HCI's electronic records.

11

Significantly, HCI's position that Borup is not entitled to any pre-certification discovery beyond that directly related to him is contrary to the decisions of this Court. *See, e.g., Holaway v. Stratasys, Inc.*, No. 12-998 (PAM/JSM), 2012 WL 12895690, at *2 (D. Minn. Oct. 30, 2012) (denying, in relevant part, appeal of magistrate's order compelling production of contact information for putative FLSA collective action members, recognizing that the requested information was "undoubtedly relevant" "[r]egardless of whether [plaintiff] claimed to need the compelled information at the conditional certification stage or at the liability stage"); *Bailey v. Ameriquest Mortg. Co.*, No. 01-545 (JRT/FLN), 2002 WL 100388, at *2 (D. Minn. Jan. 23, 2002) (Tunheim, J., affirming order of Noel, M.J., compelling pre-certification discovery of information concerning putative opt-in plaintiffs during relevant timeframe, and specifically rejecting employer's argument that conditional certification must precede such discovery and that such discovery was an invasion of privacy). Indeed, pre-certification discovery of information concerning putative collective action members is "almost universally" permitted by district courts. *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 673 (D. Kan. 2003); *accord Helmert v. Butterball, LLC*, No. 08-342, 2008 WL 5272959, at *2 (E.D. Ark. Dec. 15, 2008) ("information the plaintiffs seek about Butterball's other employees is relevant to whether the plaintiffs are similarly situated to potential collective action members").

Borup's requests and HCI's corresponding objections to the same are not unlike those addressed by this Court in *Holaway*. *See Holaway v. Stratasys, Inc.*, No. 12-998 (PAM/JSM), 2012 WL 12897218, at *4 (D. Minn. Sept. 24, 2012) (Mayeron, M.J.). In

12

*Holaway*, the plaintiff sought categories of information, including contact information, for "each person employed, formerly or presently, by Defendants in the three (3) years prior to Plaintiff filing his Complaint to the present who performed the same or similar job duties or responsibilities that Plaintiff performed ...." *Id.* The Court concluded that the information sought "could bear fruit on plaintiff's claim that he and the other FSEs were similarly situated, which is directly relevant to conditional class certification" and, further, putative class members "may have information that could lead to discovery of admissible evidence at trial bearing on liability—i.e., whether the nature of the work they performed was properly characterized as exempt." *Id.* (emphasis in original), *aff'd by*, 2012 WL 12895690, at *2.

The reasoning applied by this Court and Magistrate Mayeron in *Holaway* applies with equal force to Borup's discovery requests here. The information sought is "undoubtedly relevant" to FLSA and Rule 23 certification and ought to be produced without limitation as to any subset of HCI onsite "go live" consultants. HCI offers no legitimate basis for limiting the scope of discovery solely to a subgroup of its own attorneys' choosing—*i.e.*, MDs and medical students who worked the Mayo Clinic 2018 "go live" event—particularly since the Complaint alleges that *all* HCI onsite "go live" consultants have been the subject of a single decision, policy or plan on the part of HCI to misclassify them as independent contractors in violation of the FLSA and Minnesota law. *See generally* Dkt. 1; *Morden v. T-Mobile USA, Inc.*, No. 05-2112, 2006 WL 1727987, at *4 (W.D. Wash. June 22, 2006) (rejecting employer's relevancy argument against pre-certification discovery concerning Territory Representatives since named plaintiffs were

13

only employed as Account Representatives, where plaintiffs alleged the former worker category was assigned substantially similar primary job duties as the latter, and both categories were victims of employer's common practice of denying overtime). Indeed, none of the cases HCI has settled to date have been so limited. *See, e.g.,* Order Granting Pls.' Unopposed Mot. for Final Approval of the Amended Settlement Agreement, at ¶ 2, *Sanders v. The CJS Solutions Grp., LLC, d/b/a The HCI Grp.*, No. 17-3809 (S.D.N.Y. June 22, 2018) (*Sanders* Dkt. 106) (granting final FLSA and Rule 23 certification of settlement class comprised of "[a]ll individuals who performed work as a Consultant for [HCI] at any time from May 19, 2014 through on or about May 31, 2017").

Finally, the putative class discovery sought by Borup is not disproportionate to the needs of the case. To the contrary, the discovery is necessary for Borup to properly define the proposed classes and to demonstrate that the prerequisites of FLSA conditional certification and Rule 23 class certification have been satisfied. *Morden*, 2006 WL 1727987, at *2-4 (granting plaintiffs' pre-certification motion to compel list of employees (and other discovery) in FLSA misclassification and off-the-clock case; discovery was necessary for plaintiff to properly define class and defendant made no showing as to burden associated with requested discovery). Indeed, the opt-in provision of the FLSA requires some procedure for identifying potential class members in the first instance. *Id.*; *Hammond*, 216 F.R.D. at 673. HCI has made no effort to demonstrate that the purported burden or expense associated with responding to these discovery requests is unreasonable

in light of the benefits to be obtained from the discovery or the amount in controversy.[5]

Accordingly, the Court should grant Borup's motion to compel and order HCI to fully

answer Interrogatory No. 1 and produce documents responsive to Document Requests 1-7

and 16-19.

## II.    HCI REFUSES TO PRODUCE ADDITIONAL INFORMATION RELATED TO "GO LIVE" EVENTS.

Document Request No. 8: During the relevant time period, all advertisements posted by you to solicit workers for work related to go live events.

Document Request No. 10: All training materials during the relevant time period provided to any workers related to go live events.

Document Request No. 11: All work instructions and work rules during the relevant time period provided to any workers related to go live events.

Document Request No. 25: All documents relating to training and job responsibilities and work rules of workers who were paid overtime during the relevant time period and related to go live events.

HCI Response to Request Nos. 8, 10-11 and 25: Defendant objects to this Request on the grounds that it is vague, ambiguous, overbroad as to time and scope, unduly burdensome, not relevant to a claim or defense of a party and not proportionate to the needs of the case, and to the extent it seeks to discover confidential information about persons not party to this matter.

Ex. F, at 4-5 and 8-9.

Document Requests 8, 10-11 and 25 seek  HCI advertisements, training materials,

work instructions, work rules and job responsibilities for work related to "go live" events

---

[5] When pressed during the parties' meet-and-confer, HCI's counsel could not provide any specific details concerning any alleged undue burden associated with responding to Borup's discovery requests or describe how the requests are allegedly disproportionate to the needs of this particular case. Snodgrass Decl. ¶ 7.

during the three years preceding the filing of the Complaint in this case. The requests are thus narrowly tailored in both time and scope.

HCI has made no effort to demonstrate that it will suffer any burden whatsoever, let alone undue burden, in having to respond to these requests, nor how the requests can possibly be considered disproportionate to the needs of the case. Snodgrass Decl. ¶ 7. Additionally, HCI has offered no explanation for how the requested advertisements, training materials or work instructions and rule might contain "confidential information about persons not party to this matter." These boilerplate objections should be rejected accordingly.

With respect to HCI's relevancy objection, the requested advertisements, HCI training materials, instructions and work rules are undoubtedly relevant to establishing the similar situation of Borup and the other onsite "go live" consultants he seeks to represent, as well as satisfying the prerequisites for Rule 23 class certification. For instance, documents related to payroll and timekeeping procedures and the development of such procedures are relevant to showing that Borup and the putative classes were all paid the same way, utilizing the same timekeeping software, *see infra* Section V, and subject to the same timekeeping requirements. Certification may be granted even in cases where these types of procedures vary somewhat as between putative class members. *See, e.g., Busler v. Enersys Energy Prods., Inc.*, No. 09-159, 2009 WL 2998970, at *3 (W.D. Mo. Sept. 16, 2009) (granting certification where employees were subject to different pay systems); *Helmert v. Butterball, LLC*, No. 08-342, 2009 WL 5066759, at *3-4 (E.D. Ark.

16

Dec. 15, 2009) (timekeeping system relevant to "similarly situated" certification analysis).

Advertisements posted by HCI to solicit workers for work related to "go live" events are relevant to defining the putative classes as they should demonstrate the types of workers HCI was targeting for "go live" events. The advertisements may also provide evidence of the homogeneity in the putative class members' essential job duties and functions to the extent that they provide job descriptions and thus demonstrate similar situation, commonality and typicality as between Borup and putative class members.

Together, the materials responsive to Document Requests 8 and 10-11 could support a conclusion that class members performed a discrete set of duties in relatively rote fashion with limited discretion—*i.e.*, that they performed the same basis tasks in similar ways and under similar circumstances irrespective of whether the individual was an MD, a medical student, a nurse or some other type of consultant—such that the work is sufficiently uniformly of the type that the fact-finder could determine whether the work at issue was exempt or non-exempt on a class-wide basis. *Strauch*, 322 F.R.D. at 182-85.

Finally, documents relating to training and job responsibilities and work rules of workers who were actually paid overtime by HCI during the relevant time period for work related to "go live" events, will provide information by which one should be able to distinguish between the types of "go live" work activities HCI internally deemed to be exempt versus those activities it considered to be nonexempt. Borup can then cross-compare each category against the work activities he and other onsite "go live" consultants actually performed on the job.

17

### III.  HCI REFUSES TO PRODUCE DISCOVERY CONCERNING ITS DEFENSES.

Document Request No. 12: All documents you rely upon in support of any of your affirmative defenses.

Document Request No. 13: To the extent you rely upon the advice of counsel defense to support avoidance of any liabilities in this lawsuit, all of your attorneys files, billings, letters, e-mails and communications within the scope of their representation of you.

Document Request No. 22: All documents you will rely on, if any, to show good faith and reasonable grounds for believing that HCI was not in violation of the FLSA or state law for the allegations set forth in this lawsuit.

Document Request No. 23: All documents you will rely on, if any, to show good faith and reasonable grounds for believing that HCI was not in violation of the FLSA for the allegations set forth in the lawsuits resolved by the Sanders settlement.

HCI Response to Request Nos. 12-13 and 22-23: Defendant objects to this Request on the grounds that it is vague, ambiguous, overbroad as to time and scope, seeks a legal conclusion, seeks materials protected by attorney/client privilege and work-product privilege, and is not proportionate to the needs of the case.

Ex. F, at 5 and 8.

Document Requests 12-13 and 22-23 properly seek factual information related to HCI's defenses and whether any such defenses favor certification. *E.g. Kasten v. Saint Gobain Perf. Plastics Corp.*, 556 F. Supp. 2d 941, 956 (W.D. Wis. 2008) (rejecting employer's argument that factual variations relating to *de minimis* defense demonstrated that plaintiffs were not similarly situated).

HCI's objections to these requests on grounds that they are "vague, ambiguous, overbroad as to time and scope" are unfounded. The temporal scope of all three of these

18

requests is necessarily broad at this point in the case because the factual underpinnings for HCI's defenses are not yet known—although, as discussed elsewhere herein, such factual underpinnings likely arose well before the 2017 *Sanders* litigation.

Further, Request 12 and 22-23 seek factual information that HCI will rely upon to support its own affirmative defenses and, thus, the request is necessarily limited or expanded solely by HCI, not Borup. Playing coy, HCI has since taken the vague, ambiguous, and overbroad "position that the entire record supports each of its affirmative defenses." Ex. G, at 4. Borup is entitled to know precisely what HCI contends is "the entire record" that supports its defenses.

Similarly, Request 13 seeks the production of documents only to the extent HCI seeks to invoke the advice of counsel as a defense to Borup's claims. Accordingly, it is HCI that controls the scope of what is or is not responsive to this Request as only it can make the decision as to whether to invoke the advice-of-counsel defense in connection with its good faith defense.[6]

HCI's objection on grounds that these requests seek legal conclusions is also "meritless." *Holaway*, 2012 WL 12897218, at *6, n.4. Among its defenses, HCI asserts that: (1) it did not pay Borup or putative class members "in a manner known or believed to violate any applicable statutory requirements, including the FLSA," and that its actions

---

[6] The FLSA provides that an employer who underpays an employee "is liable to the employee or employees affected in the amount of … their unpaid overtime compensation, … and an additional equal amount as liquidated damages[,]" 29 U.S.C. § 216(b), unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such act was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA, in which case, "the court may, … award no liquidated damages …." *Id.* §260.

in this case were made in good faith (Affirmative Def. 5); (2) there exists no "employer-employee relationship" between Borup and all or certain members of the putative classes, on the one hand, and HCI on the other hand, and that the former persons were all properly classified as independent contractors (Affirmative Def. 6 and 12); (3) Borup "is not similarly situated to those he purports to represent" (Affirmative Def. 7); (4) Borup and all or certain members of the putative classes failed to avoid or mitigate their damages (Affirmative Def. 11 and 15); and (5) even if Borup and others were misclassified, any failure to properly compensate them for time worked was "*de minimus*" (Affirmative Def. 14). Dkt. 14, at 13-16.

As Magistrate Mayeron concluded in *Holaway*, each of these affirmative defenses are the proper subject of pre-certification discovery because they are "highly fact-dependent and information sought is within the scope of Rule 26 and bears directly on [collective and] class certification." *Holaway*, 2012 WL 12897218, at *6-8, n.4 (compelling discovery aimed at employer's defenses that plaintiff was not similarly situated to those whom he sought to represent); *see also Scheffler v. Molin*, No. 11-3279 (JNE/JJK), 2012 WL 3292894, at *6 (D. Minn. Aug. 10, 2012) (permitting discovery on affirmative defenses and noting that "while some of the affirmative defenses Defendants raised in their Answer … involve issues of 'pure law' not requiring any identification of facts, others, … are factually dependent and [plaintiff] is entitled to know the basic facts Defendants will present at trial." (internal citation and quotation omitted)). Indeed, in your typical wage-and-hour case, the courts generally recognize that "on balance, [the employer's] defenses weigh in *favor* of class certification, not against it." *Frank v.*

20

*Gold'n Plump Poultry, Inc.,* No. 04-1018 (PJS/RLE), 2007 WL 2780504, at *3 (D. Minn.

Sept. 24, 2007) (emphasis added). HCI's refusal to provide any responsive information is

therefore unwarranted.

Finally, with respect to HCI's privilege, work product and proportionality

objections, HCI has not yet produced a privilege log in this matter so Borup has no way

of knowing the volume of responsive material HCI and/or its attorneys possess but

continue to withhold from production.[7] Regardless, HCI cannot base its good faith

defense in any way upon the advice of counsel without allowing Borup access to the

content of the advice. The attorney-client privilege and work product doctrine cannot be

used as both a sword and shield; therefore, to the extent HCI intends to rely upon the

advice of counsel as a defense to liability, it will have waived privilege and work product

protections "as to communications and documents relating to the advice."[8] *Minn.*

*Specialty Crops, Inc. v. Minn. Wild Hockey Club, L.P.,* 210 F.R.D. 673, 675, 678. (D.

---

[7] During the parties' meet-and-confer, HCI's counsel stated that HCI would produce a privilege log but offered no timeline for doing so. Nor did HCI provide any information as to the volume of responsive materials it possesses but continues to withhold on any grounds—let alone due to attorney-client or work product protections—or otherwise describe how any of Borup's requests are disproportionate to the needs of this case. *See* Snodgrass Decl. ¶ 7. HCI should therefore be precluded from attempting to do so for the first time in its responsive memorandum.

[8] It is worth noting that even in instances where the employer expressly confirms that its good faith defense will *not* rely on legal advice, federal courts routinely find waiver of the privilege may nonetheless occur simply by virtue of the assertion of a good faith defense, which necessarily involves an inquiry into the employer's state of mind. *See, e.g., Wang v. The Hearst Corp.*, No. 12-793, 2012 WL 6621717, at *2-3 (S.D.N.Y. Dec. 19, 2012) (granting plaintiffs' motion to compel based on finding that defendant waived privilege associated with its in-house counsel's emails because the emails bear on defendant's state of mind; ordering *in camera* review prior to production; citing cases).

21

Minn. 2002) (assertion of advice-of-counsel defense serves as waiver of attorney-client privilege that can extend past the onset of litigation).

For example, in *Frank v. Gold'n Plump Poultry, Inc.*, an FLSA collective action involving claims for off-the-clock donning and doffing, Magistrate Erickson held that the employer's invocation of the advice-of-counsel defense waived the attorney-client privilege and work product protection over communications and documents relating to advice the employer received from both in-house and litigation counsel concerning the propriety of compensation for donning and doffing up to and through the litigation. Order, at 12-17, 21, *Frank v. Gold'n Plump Poultry, Inc.*, No. 04-1018 (JNE/RLE) (D. Minn. Apr. 24, 2006) (Erickson, M.J.) (citing cases). More specifically, Magistrate Erickson held:

- "Defendant should be required to produce all communications, which do not concern litigation strategy, but which expressly reflect an opinion, or conclusion, as to the propriety of compensating employees for donning and doffing." *Id.* at 13.

- "[W]e find that there should be no temporal limit to the waiver of attorney-client privilege vis-à-vis the filing of the lawsuit…. 'the better authority requires that **all** communications, both pre and post-complaint filing, should be disclosed.'" *Id.* at 16-18 (rejecting "temporal restriction based on the onset of litigation, either resulting from the current case, or the [earlier] administrative investigation ….") (emphasis in original; internal citation omitted).

- "[D]ocuments which counsel provided to the Defendant, and which address the propriety of the Defendant's practices concerning compensation … should not be afforded work product protection, in the interests of fairness, as the reasonableness of the Defendant's reliance on the advice of counsel has here been waived." *Id.* at 21 (ordering production of any specific documents that do not reflect defendant's trial strategy, but express its counsel's legal opinions as to the propriety of defendant's compensation practices).

These rulings rendered specifically within the context of an FLSA collective action in which the defendant has asserted that all of its actions were made in good faith ought to apply with equal force here. Further, HCI must not be permitted to sandbag Borup at the conclusion of Phase I certification discovery[9] with an announcement that it is formally relying upon the advice of counsel. *See Wang v. The Hearst Corp.*, No. 12-793, 2012 WL 6621717, at *3 (S.D.N.Y. Dec. 19, 2012) ("Defendant's argument that an order by this Court at this juncture in the litigation is premature is a valid argument but for the fact that discovery is over next month and later would hardly be better."). Such a decision not only impacts the discovery Borup is entitled to but also bears directly on issues relating to certification—*e.g.*, whether Borup and other onsite "go live" consultants were the subject of a single decision, policy or plan on the part of HCI that violates federal and state wage-and-hour laws.

## IV. HCI REFUSES TO PRODUCE DISCOVERY CONCERNING OTHER MISCLASSIFICATION CASES INVOLVING THE SAME CLAIMS AND CERTAIN OF THE SAME WORKERS AT ISSUE IN THIS CASE, AND ITS COLLECTIVE CORPORATE KNOWLEDGE OF WAGE AND HOUR LAW.

Document Request No. 2: For all workers identified in Interrogatory No. 1, all records reflecting the number of hours worked per day and worked per week, including but not limited to the workers time sheets, and any Excel spreadsheets including the such data, and the notice materials from the Sanders settlement providing the number of overtime hours then at issue in that lawsuit.

HCI Response to Request Nos. 1-4: Defendant objects to this request on the grounds that it is premature, vague, overbroad, not relevant to a claim or

---

[9] The Court has set a simultaneous deadline of April 1, 2018 for pre-certification discovery and for the filing of Borup's motions for collective and/or class certification. Dkt. 19, at 2.

defense of a party, not proportionate to the needs of the case, and to the extent it seeks to discover confidential information about persons not party to this matter. Subject to and without waiving the foregoing objections, limited to Plaintiff Timothy Borup, Defendant responds as follows: See documents previously produced.

Ex. F, at 3.

Document Request No. 14: Any documents that identify the workers who received notice of the Sanders settlement.

Document Request No. 15: Any documents that identify the workers who signed checks or drafts sent out as part of the Sanders settlement.

Document Request No. 20: All communications between plaintiffs counsel, on the one hand, and defense counsel, on the other hand, leading up to and following the Sanders settlement, including but not limited any communications concerning paying workers related to go live events as independent contractors after the effective dates of the Sanders settlement.

Document Request No. 23: All documents you will rely on, if any, to show good faith and reasonable grounds for believing that HCI was not in violation of the FLSA for the allegations set forth in the lawsuits resolved by the Sanders settlement.

Document Request No. 29: All documents produced by you to counsel for the plaintiffs in any of the lawsuits resolved by the Sanders settlement.

Document Request No. 30: All discovery responses and discovery disclosures provided by you to the plaintiffs in any of the lawsuits resolved by the Sanders settlement.

HCI Response to Request Nos. 14-15, 20, 23, and 29-30: Defendant objects to this Request on the grounds that it is vague, ambiguous, overbroad as to time and scope, seeks a legal conclusion, not relevant to a claim or defense of a party, seeks materials protected by attorney/client privilege and work-product privilege, seeks material protected by Federal Rule of Evidence 408, and is not proportionate to the needs of the case.

Ex. F at 6-10.

24

Documents relating to the other cases involving the misclassification of HCI onsite "go live" consultants that were resolved by the *Sanders* settlement are relevant to Borup's attempt to properly define the scope of the putative FLSA and Rule 23 classes— particularly, Document Requests 14-15. Individuals who received notice of the *Sanders* settlement but who declined to accept a settlement payment and thereby release their claims are properly included in the putative FLSA class in this case, subject to the applicable statute of limitations. *See* Ex. H, at 23-24 (notifying HCI consultants that "[o]nly Settlement Class Members who deposit or cash their Settlement Award will release their FLSA claims under the Settlement" and "[e]xcept for Named Plaintiffs, Settling Class Members' Released Claims shall include the release set forth in this paragraph [FLSA release] *only* when the Settling Class Member has become an Eligible Class Member *and* deposits his/her Settlement Award check.").[10]

The information sought by Document Requests 20, 23, 29-30[11] is relevant to HCI's defense that it complied with wage-and-hour laws in good faith and did not willfully violate the FLSA; these defenses are common to all putative class members and thus support certification. *E.g., Frank*, 2007 WL 3780504, at *4 (facts relating to employer's good faith defense weighs in favor of certification). By asserting the "good

---

[10] Based on court documents publicly available in *Sanders*, as of June 13, 2018, there remained approximately 911 "hold overs"—*i.e.*, individuals who received the *Sanders* settlement notice but did not file claim forms, accept a settlement payment or release their FLSA claims. *See* Ex. I, at 3.

[11] Any HCI claim of "burden" as it relates to Requests 29-30 is diminished here because these requests seek materials already searched for, compiled and produced by HCI in other misclassification litigation. Thus, the information should be readily accessible.

25

faith" defense, HCI subjected itself to expansive discovery concerning its corporate knowledge. "An award of liquidated damages is […] is mandatory unless the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA." *Braswell v. City of El Dorado*, 187 F.3d 954, 957 (8th Cir. 1999). "[A] defendant employer must show that he took affirmative steps to ascertain [the] requirements [of wage and hour law], but nonetheless, violated its provisions." *Chao v. Barbeque Ventures, LLC*, 547 F.3d 937, 942 (8th Cir. 2008).[12]

Borup seeks discovery relating to the "affirmative steps" HCI did or did not take relating to potential misclassification liabilities stemming from its classification of onsite "go live" consultants as independent contractors instead of employees, including steps it took in response to three other misclassification cases filed against it, involving the same claims and certain of the same workers at issue in this case. Such evidence supports certification to the extent any such step was taken on a company-wide basis as opposed to an individual, employee-by-employee basis.

## V.    PRODUCTION OF HCI'S DOCUMENTATION RETENTION POLICY AND LITIGATION HOLDS NOTICE(S) ARE DISCOVERABLE.

Document Request No. 27: All documents reflecting your document retention policies during the relevant time period [three years from the filing of the Complaint].

Document Request No. 28: All documents reflecting the rules for your litigation holds for this lawsuit or the lawsuits resolved by the Sanders settlement.

---

[12] Similarly, the FLSA's two-year statute of limitations extends to three years when a cause of action arises out of a defendant employer's "willful" violation of the FLSA. 28 U.S.C. § 255(a).

> HCI Response to Request Nos. 27-28: Defendant objects to this Request on grounds that it is vague, ambiguous, not relevant to a claim or defense of a party, seeks materials protected by attorney/client privilege and work-product privilege, and is not proportionate to the needs of the case.

Ex. F, at 9.

Borup has a reasonable basis for seeking evidence related to HCI's litigation holds and preservation efforts. First, as previously discussed, HCI has not produced information responsive to several categories of Borup's requests based on unsupported claims of burdensomeness and disproportionality. Litigation has been pending against HCI specifically related to potential independent contractor misclassification liabilities of "go live" consultants since at least 2017. As such, HCI should have evidence readily accessible and preserved dating back to 2014 or earlier.

The litigation hold letters and document retention policies sought by Borup should demonstrate, *inter alia*, whether information related to whether and to what extent HCI improperly misclassified Borup and others whose work related to "go live" events as independent contractors, has been appropriately preserved and can be produced by HCI with relatively little burden. When *Sanders v. The CJS Solutions Group, LLC d/b/a The HCI Group*, No. 17-3809 (S.D.N.Y.) was filed in May 2017, HCI should have endeavored to fulfill its discovery obligations by preserving evidence related to its classification of its "go live" consultants dating back to, at least, three years prior to the filing of that case—*i.e.*, 2014 or earlier. *E*Trade Sec., LLC v. Deutsche Bank*, 230 F.R.D. 582, 587 (D. Minn. 2005) ("The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current

27

litigation."). Through the discovery of litigation holds and preservation efforts, Borup seeks concrete information related to HCI's actual burden (or lack thereof) concerning the production of evidence responsive to Borup's other requests.

Second, despite HCI's assertion otherwise, document retention policies and litigation hold notices are *not* automatically protected by the attorney-client privilege or the work product doctrine. Federal courts recognize that the predominant purpose of the notices is *not* to give legal advice, as would be required for protection under the attorney-client privilege. Rather, the primary purpose of such a notice is to give the recipients "forceful instructions about what they must do" in order to preserve evidence in pending or reasonably foreseeable litigation. *Bagley v. Yale Univ.*, 318 F.R.D. 234, 239-40 (D. Conn. 2016) (granting plaintiff's motion to compel production of litigation hold notices and the responsive survey forms notice recipients returned to employer because "[t]hese documents bear directly upon the questions courts identify as dispositive in spoliation cases"). Likewise, such notices do not implicate the purpose behind the work product doctrine—*i.e.*, shielding an attorneys' mental processes so that she can analyze and prepare for a client's case without interference from an opponent. *Id.* at 240.

Third, HCI's counsel has repeatedly stated that HCI does not possess any daily or weekly timekeeping records for consultants whose work related to "go live" events, "at least, not in any of the databases that HCI preserved." Snodgrass Decl. ¶ 6. This assertion raises serious questions regarding the likelihood of evidence spoliation and discovery abuse, particularly given the fact that the "offer letter" Borup received and signed at the start of his employment with the company makes clear that Borup would only be paid his

28

"actual hours worked," which HCI required be recorded utilizing HCI's time tracking platform called "Deputy." Ex. J, at 3. The offer letter expressly stated:

- "Your payrate will be $60.00 per hour." *Id.* at page 2 of 4. Stated differently, Borup would be compensated "$60.00 per hour as an employee paid bi-weekly." *Id.* at page 3 of 4.

- "HCI holds a firm policy on paying only for *actual hours worked* by you at the Client site." *Id.* (emphasis added).

- "Any improper or fraudulent clocking in and out of your actual hours worked at the Client site will result in immediate termination of your contract engagement …." *Id.*

- "You herein agree to *utilize Deputy (HCI's time tracking platform) to clock in and out of your assigned shifts* within 1 hour of start and end time. Any delay in clocking in and out of your assigned shifts may result in termination of your contract engagement." *Id.* (emphasis added).

Borup also received multiple contemporaneous email communications from HCI personnel emphasizing HCI's daily timekeeping requirements for "go live" events. For example, on May 4, 2018, HCI Project Coordinator, Kristy Horton, emailed Borup and others the following instructions:

> … Also, you have ALL been approved to work 12 hrs over the weekend. Please add on the additional hours to your scheduled shift end time….

> Please, everyone, *do NOT clock in before arriving to your site. Please wait until you get to your location to clock in as the person approving timesheets will be checking the GPS location in which each person clocks in and out and will adjust the time accordingly if clock in/out occurs off-site*. For those of you who don't have a schedule tomorrow, you will go to your assigned dept, *clock into Deputy* and start an "unscheduled shift." You will all be floating so do not worry if your exact dept isn't open tomorrow. *If you get on site and have issues with clocking into your Deputy, just send me a text/email and we can adjust for you manually* as Deputy is not always perfect.

29

Ex. K (emphasis added).[13] Days later, HCI Client Engagement Manager, Jennifer Foler, sent Borup and others the following email: "Good Morning MDs, Please do not forget to clock into deputy." Ex. L. Finally, on May 8, 2018, Borup received another email from Foler, stating "please check your deputy and make sure you are *logging your hours and the timesheets are capture*d." Ex. M (emphasis added).

These contemporaneous email communications make clear that it was HCI's policy and practice to require its "go live" consultants to create daily electronic timekeeping records and that such records *ought to exist* for purposes of this litigation. This stands in sharp contrast to HCI's claim that no daily or weekly time-records exist for Borup (or any other independent contractors who worked on "go live" events)—"*at least, not in any of the databases that HCI preserved.*" Snodgrass Decl. ¶ 6 (emphasis added).

The prevailing view is that when there is *some* indication that a party *may* have spoliated evidence, that party's litigation hold letters and/or document retention notices ("DRNs") are fully discoverable. *Bagley*, 318 F.R.D. at 239-40 (rejecting defendant's contention that DNRs and responses to the same are immune from discovery absent proof that spoliation had in fact occurred); *Major Tours, Inc. v. Colorel*, No. 05-3091, 2009 WL 2413631, at *4 (D.N.J. Aug. 4, 2009) ("most applicable authority from around the country provides that litigation hold letters should be produced if there has been a preliminary showing of spoliation"); *see, e.g., Remote Tech., Inc. v. Data Int'l Co., Ltd.*, No. 10-1678 (MJD/JSM), 2012 WL 13028154, at *13 (D. Minn. July 31, 2012) (ordering

---

[13] HCI goes so far as to track not only the time *when* a person clocks in and out, but also his or her precise location when doing so—HCI then manually adjusts the person's time if the clocking-in/out occurs off-site. Ex. K.

defendant to file and serve attorneys' declarations/affidavits attesting with specificity steps attorneys took to ensure defendant had placed effective litigation hold on its documents given appearance that defendant may have failed to adequately preserve documents).[14]

For all of these reasons, Borup requests that the Court require production of not only HCI's document retention policies during the relevant timeframe but also the litigation hold notice(s), if any, that HCI issued for this lawsuit or the lawsuits resolved by the *Sanders* lawsuit.

## CONCLUSION

For the foregoing reasons, Borup's motion to compel discovery concerning Borup's First Sets of Requests for Production and Interrogatories should be granted in its entirety.

---

[14] Regardless of spoliation concerns or whether the DRNs at issue may have contained some material protected under attorney-client privilege and/or work product doctrine, the steps taken by a client to implement a litigation hold are fully discoverable, including "what kinds and categories of ESI [defendant's] employees were instructed to preserve and collect, [] what specific actions they were instructed to undertake to that end" and "a list of names and job titles of the … employees who received DNRs." *In re eBay Antitrust Litigation,* No. 07-01882, 2007 WL 2852364, at *1-2 (N.D. Cal. Oct. 2, 2007).

Respectively submitted,

Dated: January 8, 2019

LARSON • KING, LLP

By: *s/T. Joseph Snodgrass*
T. Joseph Snodgrass (MN #231071)
Kelly A. Lelo (MN #330838)
30 East Seventh St., Suite 2800
St. Paul, MN  55101
Tel: (651) 312-6500
Fax: (651) 312-6618
jsnodgrass@larsonking.com
klelo@larsonking.com

and

Thomas A. Jacobson (MN #0265810)
SWENSON LERVICK SYVERSON
   TROSVIG JACOBSON SCHULTZ CASS, PA
710 Broadway Street
Alexandria, MN 56308
Tel: (320) 421-6447
Fax: (320) 763-3657
taj@alexandriamnlaw.com

*Attorneys for Plaintiff and the Proposed Classes*

1804398