## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

TIMOTHY C. BORUP, individually and
on behalf of all others similarly situated,

Court File No. 0:18-CV-01647-PAM-DTS

                                   Plaintiff,

vs.

THE CJS SOLUTIONS GROUP, LLC,
d/b/a THE HCI GROUP,

                                  Defendant.

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO
COMPEL DISCOVERY PURSUANT
TO FED. R. CIV. P. 37(a)**

Less than a week after receiving HCI's responses to Plaintiff's first discovery requests, and fewer than twenty four hours after the parties' first meet and confer conversation, despite repeated statements that extensive productions were forthcoming as identified in the responses and as agreed upon as part of the meet and confer, despite assurances that amended responses were forthcoming, despite agreements to alter deadlines, despite pending depositions, despite three amendments to HCI's disclosures revealing witnesses as senior as the CEO and Chief of Staff of the Company, and without deposing a single witness or reviewing any produced files to assess what additional discovery might in fact still be necessary once these items were provided,[1] Plaintiff Borup has rejected HCI's repeated efforts for compromise and now moves, with shocking prematurity, to compel responses on all but one of his initial discovery requests. Much of Plaintiff's motion is, regrettably, unnecessary. The bulk of the remainder presents two fundamental questions to the Court: (1) what is the proper scope of putative class

---

[1] Notably, many of the requested items could not be produced prior to the motion being filed because the parties had not yet even agreed upon the terms of a protective order (*see* Dkt. 30 (Stipulation for Protective Order, January 11, 2019)).

discovery this early in litigation; and (2) whether Borup may discover sensitive, privileged materials from a prior, unrelated lawsuit that addressed claims separate and apart from his own.

The Court should direct, at most, that Plaintiff is entitled to discovery of materials related to those individuals who, like Plaintiff, worked as "ATE MD" consultants on the same project as Plaintiff Borup and who were classified as independent contractors – not, as Plaintiffs' counsel's sworn statement suggests, as a "redefinition" or "stipulation" of Plaintiffs' proposed class or collective – but instead as a reasonable boundary for preliminary discovery in a case that has not yet been certified as a class or collective action, and one in which Plaintiff has made absolutely no showing that even the initial group proposed by HCI is similarly situated to Plaintiff. The Court should further protect HCI from disclosing confidential materials from prior, unrelated litigation.

## I.   PROCEDURAL BACKGROUND

Plaintiff Borup filed his Collective and Class Action Complaint and Jury Demand on June 13, 2018 (Dkt. 1). Borup alleges that HCI improperly classified him as an independent contractor in violation of the Fair Labor Standards Act and Minnesota state law (*id.* p.1). Borup does not allege violations of any other state or federal laws (*c.f. id.*).

The parties stipulated, and the Court ordered, to stay the case until August 31, 2018, in part to accommodate settlement discussions (Dkt. 10, 13). The initial scheduling conference occurred on December 10, 2018, and the Court entered its Scheduling Order that day (Dkt. 19). The Scheduling Order sets a deadline of April 1, 2019 for any motions for class or collective certification, and ends discovery on the same day (*id.*).

Given this procedural posture, HCI and its counsel recognize that Plaintiff must, and should, be permitted discovery at this time to inform his class and collective allegations (Declaration of Claire B. Deason, hereinafter "Deason Dec." ¶ 2). However, the scope of that discovery must be reasonably tailored to Mr. Borup's allegations – not to those raised by plaintiffs in other lawsuits. Borup's allegations relate to a single specialized project that only occurred in April and May 2018, and was managed and executed separate and apart from HCI's prior work with consultants, and involved a unique group of consultants – one of whom was Mr. Borup.

## II.     FACTUAL BACKGROUND

### A.     HCI and its Prior HCI Independent Contractor Litigation

The HCI Group is a technology company (Declaration of Stephen Tokarz, Deason Dec. Ex. A, ¶ 2). The Company provides information technology service solutions for the healthcare industry. HCI implements electronic recordkeeping systems for hospital and clinical settings (*id.*). The Company partners with several technology vendors to assist its customers to develop tailored technology solutions, and then assists with establishing that technology in the customer's hospital or clinic (*id.* ¶ 3). HCI provides: (1) system selection advice – advising the customer about what technology will be right for its setting; (2) legacy system support – assisting with managing the existing technology system; (3) data migration work – conducting technology processes to move critical data from one system to the next; (4) integration and testing – to ensure the system is properly aligned to the needs of the customer; (5) implementation – establishing the system itself within the customer's technology systems; (6) training for the customer; (7) optimization

– making any necessary software changes; (8) Clinical Service Desk – a specialized program to assist customers; and (9) staff augmentation – assisting with any changes to the customer's workforce to improve the utilization of the new technology (*id.* ¶ 4).

After conducting customer training, but before beginning the optimization phase, HCI manages the "go-live" event for the new technology: the first day that the technology "goes live" to manage records in real-time in the customer's hospital or clinic, and the period of (typically) several weeks that follow as the customer adjusts to the change (*id.* ¶ 5). Given the nature of medical care, this critical time for the customer's business requires round-the-clock attention and assistance, to ensure that the doctors and nurses utilizing the new software can use it confidently, and without error, while treating patients (*id.*).

HCI enlists consultants, known as "ATEs," for this work, who work directly alongside "at-the-elbows" of the healthcare provider's employees (*id.* ¶ 6). In the past, most often, HCI contracted with other companies for short-term services from ATEs affiliated with those companies (*id.*). Prior to May 2017, HCI paid all ATEs as independent contractors (*id.*). In February 2018, HCI resolved a collective and class action lawsuit filed in federal court in New York, *Sanders v. The CJS Solutions Group, LLC d/b/a HCI Group*, seeking alleged unpaid overtime wages and damages for ATEs who worked for HCI from May 19, 2014 to May 31, 2017 (*see* Dkt. 26-8). The *Sanders* Court approved a settlement which is still in the final stages of administration.

In May 2017, HCI began classifying all ATE consultants as employees, not independent contractors (and paid them overtime wages for all hours worked over 40 per

week) with two exceptions: (1) a specialized group of salaried, exempt employees known as "FTEs"; and (2) medical doctors (including resident and medical students) with specialized training above and beyond that of other ATE consultants, who worked on one specific project at the Mayo Clinic in Rochester, Minnesota (Tokarz Dec. ¶ 7).

### B.     Plaintiff Borup's Work as an ATE on the Mayo Clinic Go-Live Event

Mr. Borup was one of those medical residents working on the Mayo Clinic go-live project, known as "ATE MDs" (*id.* ¶ 8). Borup never worked on any of the projects that were encompassed in the *Sanders* litigation; he did not work for HCI during the timeframe covered by the *Sanders* case (*compare* Dkt. 26-8 (*Sanders* settlement covered work performed between May 2014 and May 2017); *with* Dkt. 1 ¶ 3 (Borup worked for HCI from April to May 2018)). In fact, Borup did not work for HCI until a year after the timeframe covered by *Sanders*, and his work began after that litigation had reached resolution (*see* Dkt. 1 ¶ 3). Borup worked for HCI exclusively in Minnesota on the Mayo Clinic go-live event, for approximately four weeks in April and May 2018 (*id.* ¶¶ 2-3).

As part of the sub-set of specialized medical doctors working on the Mayo Clinic go-live event, Borup and the other ATE MDs received specialized training targeted towards the specific contributions they could make to the project as medical doctors assisting other doctors with the implementation and use of the new technology in their unique practices (Tokarz Dec. ¶ 9). Unlike other ATEs on the Mayo Clinic go-live project, Borup and the other ATE MDs selected what areas of the hospital they would work in, and exercised more discretion in how they performed that work (*id.*).

### C.    Plaintiff Borup's Requests and HCI's Responses and Ongoing Productions

HCI has offered to produce all relevant, responsive records related to the work of the ATE MDs on the Mayo Clinic project, and its productions are ongoing (Deason Dec. ¶¶ 3, 14). As of the date of this filing, HCI has produced 147 pages of records to Mr. Borup, including e-mail communications from HCI to Borup and other ATE MDs, the contractor agreement between HCI and Mr. Borup, personnel records for Mr. Borup's work – including payroll records – as well as training materials and instructions for the ATE MD work, and the contract for services between HCI and the company that recruited many of the ATE MDs to work for HCI (*id.* ¶ 14). However, Borup's discovery requests do not simply target the Mayo Clinic group of ATE MDs, and he has refused to entertain the thought that the ATE MD records may sufficiently inform his class and collective allegations for this initial round of discovery (*id.* ¶ 3).

Discovery for this matter began when Borup served his first requests for written discovery on November 19, 2018, and HCI responded on December 20, 2018. Interrogatory No. 1 states:

> Identify all workers who you paid as independent contractors during the relevant time period and whose work related to go live events, and who did not receive money from the Sanders settlement.

(Dkt. 26-6). HCI objected and responded to Interrogatory No. 1:

> Defendant objects to this interrogatory on the grounds that it is premature, vague, overbroad, not relevant to a claim or defense of a party, not proportionate to the needs of the case, and to the extent it seeks to discover confidential information about persons not party to this matter. Subject to and without

> waiving the foregoing objections, limited to Plaintiff Timothy
> Borup, Defendant responds as follows: Timothy C. Borup.

(*id.*).

Plainly, Borup's requests are not limited to the Mayo Clinic project (the only project Borup worked on) or ATE MDs (the only position Borup held). Instead, Borup seeks discovery related to every consultant, of *any* position, classified as an independent contractor on *any* project, which includes:

- Consultants who (unlike Borup) were encompassed by the *Sanders* litigation and, accordingly, have already had the opportunity to resolve any claims of unpaid wages;

- Consultants who (unlike Borup) were classified as non-exempt employees and paid overtime wages beginning in May 2017;

- Consultants who (unlike Borup) were classified as salaried, exempt employees; and

- Consultants who (unlike Borup) were not a part of the ATE MD program and, accordingly, had different training and discretion over their work for HCI's customers (Tokarz Dec. ¶ 7-9).

Borup seeks personal information about each of these individuals; Plaintiff's Interrogatory definitions define "identify" to mean "the full name and contact information for the person, including mailing address, e-mail addresses and telephone numbers." (Deason Dec. ¶ 4). Borup has not served any other interrogatories (*id.*).

**D.   HCI Proposed to Produce Relevant, Non-Privileged Records for Borup and All Other ATE MDs at the Mayo Clinic Project; That Proposal Would Apply to RFPs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 17, 18, 21, 22, 23, 25, and 26 – It Was Rejected**

Borup also served 31 requests for production, 30 of which are the subject of his

motion.[2]  In addition to the requests for which HCI has already agreed to produce records

relating to Mr. Borup, and in addition to the productions HCI has already made, HCI's

counsel suggested to Borup's counsel that the parties begin discovery with productions of

the following requests, limited to the group of ATE MDs who worked on the Mayo

Clinic project alongside Mr. Borup:

> REQUEST NO. 1.  For all workers identified in Interrogatory No. 1, all contracts between you and the worker.
>
> REQUEST NO. 2.  For all workers identified in Interrogatory No. 1, all records reflecting the number of hours worked per day and worked per week, including but not limited to the workers time sheets, and any Excel spreadsheets including the such data, and the notice materials from the Sanders settlement providing the number of overtime hours then at issue in that lawsuit.
>
> REQUEST NO. 3.  For all workers identified in Interrogatory No. 1, all records reflecting their work responsibilities and what they were doing related to go live events.
>
> REQUEST NO. 4.  For all workers identified in Interrogatory No. 1, all records reflecting their rate of pay, including but not limited to hourly rates.
>
> REQUEST NO. 5.  For all workers identified in Interrogatory No. 1, all documents relating to their travel to any out-of-town locations related to go live events, including expenses, itineraries, mileage reimbursement, airfare, rental car records, bus records, train records, and ride-sharing records.
>
> REQUEST NO. 6.  For all workers identified in Interrogatory No. 1, all documents relating to training materials related to go live events.

---

[2] Notably the only RFP that Borup does not raise in this motion is one in which HCI has informed him that no responsive records exist (Deason Dec. ¶ 2).

REQUEST NO. 7. For all workers identified in Interrogatory No. 1, all 1099 forms.

REQUEST NO. 8. During the relevant time period, all advertisements posted by you to solicit workers for work related to go live events.

REQUEST NO. 9. All emails and other communications by you to workers identified in Interrogatory No. 1 during the relevant time period and related to go live events.

REQUEST NO. 10. All training materials during the relevant time period provided to any workers related to go live events.

REQUEST NO. 11. All work instructions and work rules during the relevant time period provided to any workers related to go live events.

REQUEST NO. 17. For workers identified in Interrogatory No. 1, any documents that reflect the dates and amounts of payment for remuneration.

REQUEST NO. 18. For workers identified in Interrogatory No. 1, any document reflecting the rate at which you billed any third-party for their work.

REQUEST NO. 21. All documents related to your decision, if any, to not pay overtime to Plaintiff and any similarly situated workers.

REQUEST NO. 22. All documents you will rely on, if any, to show good faith and reasonable grounds for believing that HCI was not in violation of the FLSA or state law for the allegations set forth in this lawsuit.

REQUEST NO. 23. All documents you will rely on, if any, to show good faith and reasonable grounds for believing that HCI was not in violation of the FLSA for the allegations set forth in the lawsuits resolved by the Sanders settlement.

REQUEST NO. 25. All documents relating to training and job responsibilities and work rules of workers who were paid overtime during the relevant time period and related to go live events.

> REQUEST NO. 26. All documents reflecting contracts between you and any third-parties during the relevant time period and related to go live events, and which involved any workers identified in your response to Interrogatory No. 1.

(Dkt. 26-6). Borup's counsel rejected this proposal (Deason Dec. ¶ 3), and now mischaracterizes the parties' discussions about these requests. Specifically, Borup's counsel articulated a refusal to "stipulate" to a narrower putative class and collective that did not include individuals who were previously offered the opportunity to resolve claims through the *Sanders* litigation, and who never worked as ATEs at the Mayo Clinic project (*id.* ¶ 5). As HCI's counsel has explained repeatedly (including in communications attached to Borup's brief), that was never the proposal:

> I do need to clarify that we've made no such request for you to abandon your putative class definition; of course, it's your prerogative to define your putative class however you choose. Our proposal is that non-party discovery would be limited, at this early stage, to a smaller group. That discovery may lead to broader discovery.

(Dkt. 26-7). Plaintiff's counsel never responded to that communication, but has since insisted that Borup will only agree to this preliminary discovery scope on the condition that HCI stipulate that such individuals are similarly situated to the entire putative collective for class treatment (Deason Dec. ¶ 6). Because it is HCI's position that these individuals are not similarly situated, it cannot agree to this ludicrous proposal.

In addition, in his brief and his counsel's declaration in support, Borup claims that "HCI's counsel has repeatedly stated that HCI does not possess any daily or weekly timekeeping records for consultants whose work related to 'go live' events, 'at least, not in any of the databases that HCI preserved.'" (Dkt. 25 p.28). This assertion is directly

counter to what HCI's counsel articulated in meet and confer communications, which

Borup's counsel attached to his own declaration (stating the opposite):

> I indicated on our call that I am not aware of any timekeeping
> databases that would have daily hours records for Mr. Borup.
> I was referring to the payroll timekeeping system, which
> we've discussed at length in settlement discussions. **There
> may, in fact, be an invoicing system where such data exist.
> To the extent it exists, it would have been preserved for
> this litigation and we will produce relevant records as they
> are accessible.**

(Dkt. 26-7) (emphasis added).

In the same communication, HCI's counsel reiterated that HCI would be

producing additional records throughout the month of January 2019 (*id.*). And, as

predicted and promised even before Plaintiff's motion was filed, records of daily "check

in" and "check out" on a mobile application, and electronic work schedule records, from

the database used for invoicing have been identified and were preserved (Deason Dec.

¶ 7). And as predicted and promised, those records are being produced over the course of

this month, subject to entry of the Stipulated Protective Order that was filed with the

Court on January 11, 2019 (*id.*). Consistent with its standing offer of compromise, HCI is

also producing (subject to the recently filed protective order) these records for all ATE

MDs who worked on the Mayo Clinic project, without disclosing personal identifying

information (*id.*).

### E.   HCI Objects to Borup's Requests 14, 15, 20, 29, and 30 for Records from the *Sanders* Litigation

A significant volume of Borup's requests appear to attempt to re-create the

*Sanders* litigation. Borup requests:

REQUEST NO. 14. Any documents that identify the workers who received notice of the Sanders settlement.

REQUEST NO. 15. Any documents that identify the workers who signed checks or drafts sent out as part of the Sanders settlement.

REQUEST NO. 20. All communications between plaintiff's counsel, on the one hand, and defense counsel, on the other hand, leading up to and following the Sanders settlement, including but not limited any communications concerning paying workers related to go live events as independent contractors after the effective dates of the Sanders settlement.

REQUEST NO. 29. All documents produced by you to counsel for the plaintiffs in any of the lawsuits resolved by the Sanders settlement.

REQUEST NO. 30. All discovery responses and discovery disclosures provided by you to the plaintiffs in any of the lawsuits resolved by the Sanders settlement.

(Dkt. 26-6).

HCI objects to Requests 14, 15, and 20, because they are "vague, ambiguous, overbroad as to time and scope, seeks a legal conclusion, not relevant to a claim or defense of a party, seeks materials protected by attorney/client privilege and work-product privilege, seeks material protected by Federal Rule of Evidence 408, and is not proportionate to the needs of the case" (*id.*). HCI raised all but the legal conclusion objection for Requests 29 and 30 (*id.*).

## F.    HCI Objects to Requests 12 and 13, Premature Inquiries into Privileged Material

HCI further objected to Borup's requests 12 and 13:

REQUEST NO. 12. All documents you rely upon in support of any of your affirmative defenses.

> REQUEST NO. 13. To the extent you rely upon the advice of counsel defense to support avoidance of any liabilities in this lawsuit, all of your attorneys files, billings, letters, e-mails and communications within the scope of their representation of you.

(Dkt. 26-6). In its written responses and objections, HCI objected to these requests because they each are "vague, ambiguous, overbroad as to time and scope, seeks a legal conclusion, seeks materials protected by attorney/client privilege and work-product privilege, and [are] not proportionate to the needs of the case." (*id.*).

HCI's counsel explained in written communications:

> [W]e recognize that – if HCI takes the position that it relied on advice of counsel to support a good-faith defense under the FLSA, under some circumstances, a Court may require limited waiver of the attorney-client communication privilege. . . . If that is a position we take in our defense, we would seek the Court's assistance with such limited waiver.
>
> . . . **HCI will certainly produce any and all relevant, non-privileged materials related to the decision to retain Mr. Borup as an independent contractor**, not an employee. And we expect that you will explore that decision in deposition discovery, as well.

(Dkt. 26-7) (emphasis added).

Borup's brief complains, "HCI does not appear to have identified the persons responsible for the wage and hour decisions at issue," (Dkt. 25 n.2), but Borup has neither served an interrogatory making such an inquiry, nor has he deposed any of HCI's employees or witnesses and asked that simple question (Deason Dec. ¶ 8).[3]

---

[3] Further, in the meet and confer discussions leading to Borup's motion, in response to a similar accusation, HCI's counsel articulated that "our disclosures will be amended (likely more than once, as is common in litigation). Amended disclosures will be issued

### G.    HCI Objected to Requests 27 and 28, as Inappropriate "Discovery on Discovery"

Borup served the following requests:

> REQUEST NO. 27. All documents reflecting your document retention policies during the relevant time period.
>
> REQUEST NO. 28. All documents reflecting the rules for your litigation holds for this lawsuit or the lawsuits resolved by the Sanders settlement.

(Dkt. 26-6).

HCI objected to Request No. 27 because it is "vague, ambiguous, not relevant to a claim or defense of a party, seeks materials protected by attorney/client privilege and work-product privilege, and is not proportionate to the needs of the case" (*id.*). HCI objected to Request No. 28 because it is "vague, ambiguous, overbroad as to time and scope, not relevant to a claim or defense of a party, seeks materials protected by attorney/client privilege and work-product privilege, and is not proportionate to the needs of the case" (*id.*). In the parties' meet and confer discussion, the only justification Borup's counsel provided for these requests were the spoliation concerns related to time records, described above (Deason Dec. ¶ 10). Those concerns are unfounded (*id.*).

### H.    HCI Objects to Broup's Remaining Requests

The remaining requests, and HCI's objections thereto, are:

> REQUEST NO. 16. For workers identified in Interrogatory

shortly" (Dkt. 26-7). Borup filed his motion two days later (two days before Christmas) but, as promised, prior to Borup's filing his brief in support of his motion, less than one month after making its first initial disclosure, HCI has amended its disclosures *three times* identifying eleven witnesses – including the Company's CEO and the president of the company that provided recruiting services for many of the ATE MDs working at the Mayo Clinic go-live event (*id.* ¶ 9).

No. 1, any documents that reflect the amount of time spent at unpaid rest or meal breaks.

RESPONSE: Defendant objects to this Request on the grounds that it is vague, ambiguous, overbroad as to time and scope, unduly burdensome, not relevant to a claim or defense of a party, and not proportionate to the needs of the case, and to the extent it seeks to discover confidential information about persons not party to this matter.

REQUEST NO. 19. For workers identified in Interrogatory No. 1, any documents reflecting the number of hours you billed any third-party for their work.

RESPONSE: Defendant objects to this Request on the grounds that it is vague, ambiguous, overbroad as to time and scope, unduly burdensome, not relevant to a claim or defense of a party, and not proportionate to the needs of the case, and to the extent it seeks to discover confidential information about persons not party to this matter.

REQUEST NO. 24. All documents related to your decision to provide an option to workers, during the relevant time period and related to go live events, to be compensated as an employee or as an independent contractor.

RESPONSE: Defendant objects to this Request on the grounds that it is vague, ambiguous, overbroad as to time and scope, assumes facts not in evidence, is not relevant to a claim or defense of a party, and is not proportionate to the needs of the case.

(Dkt. 26-6).

## III.   STANDARD OF REVIEW

Rule 26(b)(1) provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

To obtain pre-certification discovery beyond his own personal claims, Borup must demonstrate that the inquiry is relevant; to do so, Borup "bears the burden of advancing a *prima facie* showing that . . . discovery is likely to produce substantiation of the class allegations." *Mantolete*, 767 F.2d 1416, 1424-25 (9th Cir. 1985) (citing *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) ("[W]here the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites, . . . the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations.")).

The information will be relevant if it bears some relationship to the questions at issue in this litigation. For his FLSA collective allegations, the question will be whether Borup is "similarly situated" to the putative collective. *Id.* For his Rule 23 allegations, Borup's burden is to demonstrate that (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). The commonality requirement requires that Borup "demonstrate that the class members have 'suffered the same injury.' This does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Some *prima facie* demonstration towards

these matters is required in order to justify discovery beyond Borup's personal claims.

Even if this burden is met, however, and even under the less stringent FLSA certification standard, discovery of the entire scope of the Plaintiff's putative class is not automatic. Courts regularly enforce limitations to set a reasonable scope for discovery that will permit the plaintiff to explore his class and collective allegations, without exposing the defendant to unnecessary burden, expense, and private disclosures. *See, e.g. Knutson v. Blue Cross and Blue Shield of Minnesota*, 254 F.R.D. 553, 558 (D. Minn. 2008) (motion to compel denied where plaintiff had been given discovery related to 43 other individuals within the putative class and collective; court determined such scope was sufficient to explore class and collective allegations for broader putative class).

## IV.   ARGUMENTS AND AUTHORITIES

### A.   HCI's Proposed Scope of Discovery For RFPs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 17, 18, 21, 22, 23, 25, and 26 is Reasonable at This Stage of the Litigation

The appropriate scope of non-party discovery for RFPs 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 17, 18, 21, 22, 23, 25, and 26 is what HCI has proposed, because Borup's Motion to Compel does not advance his *prima facie* case under the FLSA or Rule 23 sufficiently to demonstrate that broader discovery is relevant. Borup has not made any showing that (1) there are questions of law or fact common among ATE MDs at the Mayo Clinic, and others who did not perform in that role or work on that project; (2) there is interest in class participation from *any* current or former ATEs, particularly those covered by the *Sanders* settlement; (3) HCI has the same defenses for all ATEs; and (4) that Borup is an adequate representative for those individuals who did not hold the same role as he, and

17

whose claims were covered by a prior lawsuit he was not – and could not be – party to.

First, discovery beyond HCI's proposal is not relevant because it will not shed light on claims that arise from common questions of law or fact with Mr. Borup's claims. Even at this early stage, Borup must "have presented evidence indicating that a company-wide policy may exist with regard to" the putative class. *See Owens v. Clear Wireless LLC*, 2014 U.S. Dist. LEXIS 29069, *9 (D. Minn. Jan. 3, 2014). He has not done so; all of Borup's allegations and information submitted with his Complaint relate to his own experience, and the evidence submitted by HCI demonstrates that, in fact, Borup was in a group of ATEs whose classification was determined separate and apart from the others (Tokarz Dec. ¶¶ 7-9).

Second, Borup's discovery beyond ATE MDs is not relevant to Borup's Rule 23 and FLSA allegations, because Borup has made no preliminary showing that there may be some interest in class or collective participation. *See Knutson*, 254 F.R.D. at 558; *Owens*, 2014 U.S. LEXIS 29069, *9 (permitting discovery of putative collective because "several plaintiffs have been identified," demonstrating there is not a "lack of nationwide sentiment" for class treatment). Here, Borup has not identified any other putative plaintiffs who have expressed any interest in participating in this litigation. And, beyond what HCI has offered in compromise (discovery related to other ATE MDs from the Mayo Clinic project), Borup demands discovery of individuals who have *already been offered the opportunity to participate in a collective action, and declined*.[4] Borup has not

---

[4] Borup suggests that the *Sanders* settlement was somehow inadequate, but provides nothing beyond his own opinion to support this conclusion. In fact, consistent with the

made any demonstration that any other ATE MDs from the Mayo Clinic project, much less any individuals from the broader *Sanders* group, are interested in participating in this putative collective action, where many of them have already declined to do so in the past. That showing is necessary in order to demonstrate that records relating to those individuals are relevant, even before certification. *Knutson*, 254 F.R.D. at 558.

Third, Borup's demanded discovery beyond ATE MDs is not relevant to Borup's Rule 23 or FLSA allegations because he has made no preliminary showing that HCI's defenses are common among these different groups of ATEs. In fact, Borup is well aware – and certainly at liberty to explore with interrogatories or depositions – that the Company re-classified *all* ATEs except the ATE MDs in 2017, retaining only the ATE MD contractors as independent contractors (Tokarz Dec. ¶ 7). Put simply – *that* is the only decision that is relevant to the question of whether HCI can demonstrate Borup was properly classified. Exploration of the defenses at issue in *Sanders* will not shed light on the decisions that applied to Mr. Borup, or the other ATE MDs who worked on the Mayo Clinic project.

Finally, Borup has not made a *prima facie* showing that he will be an adequate representative of any current or former HCI workers beyond the ATE MD group from the Mayo Clinic project. Borup seeks to represent individuals who could have, but were given notice and chose not to, settled their FLSA claims in the *Sanders* litigation.[5] But,

---

requirements of Rule 23 and the FLSA, the *Sanders* settlement was approved and overseen by the District Court for the Southern District of New York.

[5] All state law claim were resolved as part of the *Sanders* settlement approved by the Southern District of New York.

even a cursory analysis must conclude that Borup did not have any claims at issue in the *Sanders* litigation, and lacks standing to challenge the *Sanders* settlement – in this Court, or any other. *See, e.g. In re Wells Fargo Wage & Hour Empl. Practices Litigation*, 18 F. Supp. 3d 844, 851 (S.D. Tex. 2014) (company resolved two combined putative collective actions with plaintiffs in those cases; plaintiffs in later litigation lacked standing to challenge settlement). In order to represent the individuals who had claims at issue in *Sanders*, Borup appears to recognize that he will inevitably need to challenge the adequacy of that settlement. Respectfully, any challenges to the sufficiency of the *Sanders* settlement belong in the federal jurisdiction where it was approved, and should be raised by one of the putative plaintiffs in that action; Mr. Borup was not one of them. *Id.*

While Borup is entitled to discover the metes and bounds of his collective and class claims by exploring those individuals proximately related to his own claims (the ATE MDs working on the Mayo Clinic project), he has not met his burden to demonstrate he is entitled to conduct a private audit of every one of HCI's myriad groups of contractors – simply because that is how he chose to define his putative class. The Court should define the scope of preliminary non-party discovery for Requests for Production Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 17, 18, 21, 22, 23, 25, and 26 to the ATE MDs who, like Mr. Borup, worked on the Mayo Clinic go-live project in the spring of 2018.

**B.     Pre-Certification, Names and Contact Information for Putative Class Members Are Not Relevant**

HCI's objections to Interrogatory No. 1 – requesting names and contact information for every "consultant" not settled in the *Sanders* litigation – should be sustained. To obtain names and contact information for potential plaintiffs, before class certification, Borup must demonstrate this information is relevant "for some reason other than facilitating notice to potential plaintiffs." *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 557 (D. Minn. 2008) (*quoting Severtson v. Philips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991)).

Borup has made no such showing. While both parties agree that Borup is entitled to explore the metes and bounds of what might tie his claims to those of others potentially like him in order to support his class and collective allegations, there is no articulated reason why he needs the names, email and home addresses, and phone numbers of private individuals not currently involved in this litigation, or employed by HCI, to do so. Borup's motion to compel HCI to reveal the names and contact information for the individuals in his putative class and collective should be denied because the request is premature and not relevant. *See Kernats vs. COMCAST Corp.*, 2010 U.S. Dist. LEXIS 20276, at *3 (N.D. Ill. Jan. 14, 2010) (denying discovery in class action; "[t]he full employee list will be necessary and relevant after class certification in order to allow for class notification, but Plaintiffs need not rely upon it at this stage in order to show that they are entitled to class certification"); *Charles v. Nationwide Mut. Ins. Co., Inc.*, 2010 U.S. Dist. LEXIS 143487, at *7 (E.D.N.Y. May 27, 2010) (denying employee contact information in FLSA case pre-certification, noting that "such an extensive inquiry is unnecessary at this stage in the litigation," particularly in light of

fairly lenient burden for certification); *Osborne v. Nicholas Fin., Inc.*, 2013 WL 1182682, *3 (M.D. Tenn. March 21, 2013) ("before class certification, discovery of the names and contact information of potential opt-in plaintiffs is premature. Moreover, discovery of such contact information before conditional certification is likely to impair the Court's ability to supervise the process of providing notice to absent class members"); *Levine v. Gunther Motor Co. of Plantation, Inc.*, No. 10-61812-CIV, 2010 U.S. Dist. LEXIS 136230, at *3 (S.D. Fla. Dec. 9, 2010) (denying request for pre-certification contact information as premature and holding that "until such time as a collective action may be conditionally certified, the Court will not require Defendants to respond"). This claim is even more perplexing, given that Borup has already produced records demonstrating that already has email addresses for many ATE MDs in his possession (Deason Dec. ¶ 11).

Furthermore, the risk of unfair prejudice to HCI is significant if HCI is compelled to share names and contact information for putative parties; revealing this information at this early stage is far from harmless, or merely inconvenient. Put simply, the Court – not Borup and his counsel – is responsible for facilitating notice to putative collective and class members to invite them to participate in litigation, post-certification; utilizing discovery for such a purpose is inappropriate and prejudicial. *See Knutson*, 254 F.R.D. at 557 ("discovery sought solely for the purpose of inviting others to join this litigation . . . would not be not relevant to the particular claims and defenses currently asserted in this case."); *Velasquez-Monterrosa v. Mi Casita Rests.*, 2015 U.S. Dist. LEXIS 57385, 22-23 (E.D. N.C. May 1, 2015) (denying motion to compel putative class names and contact

information; pre-certification, such discovery "presents the risk of recruitment of class members outside the bounds of court supervision and, at this point, unjustified intrusion on the [putative class members'] privacy.")*;* *Dziennik v. Sealift, Inc.*, 2006 U.S. Dist. LEXIS 33011, at *1 (E.D.N.Y. May 23, 2006) (denying production of contact information; "[c]ourts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification"); *In re Disaster Near Honolulu,* 792 F. Supp. at 1551 ("[S]hort of plaintiffs' satisfying the requirements for class certification . . . (which, of course, does provide for notice), it is not appropriate for this court to help plaintiffs' counsel round up more clients."). Because names and contact information of putative class members are not relevant before class certification, and because discovery of such information is highly likely to prejudice HCI, Borup's motion to compel a response to Interrogatory No. 1 should be denied.

## C. Records Related to the *Sanders* Litigation and Settlement, Requested in RFPs 14, 15, 20, 29, and 30, are Not Discoverable

The Court should deny Borup's motion to compel HCI to produce records from its prior litigation, specifically the *Sanders* suit (Requests 14, 15, 20, 29 and 30). First, these records are not relevant. Here, any matters revealed by *Sanders* records will not be relevant to the fundamental question at issue in this case: Borup's degree of control over his work as an ATE MD at the Mayo Clinic project. None of the individuals involved in the *Sanders* settlement worked as ATE MDs at the Mayo Clinic project Borup – and any

other ATE MDs who worked on the Mayo Clinic project – worked for HCI one year after the matters covered by the *Sanders* settlement. Borup was not a party to *Sanders*, had no claims at issue in *Sanders*, and is not entitled to and has not received any part of the *Sanders* settlement (Deason Dec. ¶ 12). Further, any matter revealed by the *Sanders* litigation will not be relevant to HCI's defenses because the decision to classify ATE MDs as independent contractors in spring 2018 was not at issue in that litigation (Dkt. 26-8 (*Sanders* settlement covered work performed between May 2014 and May 2017)).

Second, the records related to the *Sanders* settlement process and negotiations (requested in Requests No. 14, 15, and 20) are particularly sensitive, confidential communications – presumably discussing settlement terms, amounts, and positions (Deason Dec. ¶ 12). These materials would not be admissible in any aspect of this litigation. *See* FED. R. CIV. P. 408(b). While it is true that inadmissible materials may still be discoverable, the Court is well within its discretion to weigh the sensitivity and inadmissibility of the records to conclude they are not discoverable. *See Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 345 (8th Cir. 2012) (affirming district court decision to prevent discovery of settlement terms in prior litigation; "it is generally not an abuse of discretion for a district court to deny discovery when the intended use of the document would be prohibited at trial."). Further, one of the rationales for the inadmissibility of settlement records is, in fact, that such information is *never relevant*. *See* FED. R. CIV. P. 408 Advisory Commte. Notes (the evidence is "irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position.").

Third, HCI contends that the materials and communications related to the *Sanders* settlement are privileged. While the Eighth Circuit has not affirmatively accepted or rejected that settlement records are privileged, other circuits recognize that statements made in furtherance of settlement are "privileged and protected from third-party discovery." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003) ("The public policy favoring secret negotiations, combined with the inherent questionability of the truthfulness of any statements made therein, leads us to conclude that a settlement privilege should exist, and that the district court did not abuse its discretion in refusing to allow discovery.").

Fourth, even if the *Sanders* settlement records and communications are relevant, and are not protected by privilege, discovery of such records will result in undue prejudice. *See Duncan v. Phoenix Supported Living, Inc.*, 2006 U.S. Dist. LEXIS 66742, *9 (W.D. N.C. Sept. 12, 2006) (denying motion to compel discovery of settlement negotiations in prior dispute; request "appears to be more likely to provide plaintiffs with a preview of defendants' trial strategy, as well as learning what defendants perceive to be the weaknesses as well as strengths of their position").

Furthermore, the requests for *Sanders* records are disproportionate to the needs of this case. The proportionality requirement of Rule 26(b)(1) "serves to protect a party against having to produce voluminous documents of questionable relevance." *Woods v. Capital One Servs., LLC*, 2011 U.S. Dist. LEXIS 61962 (N.D.N.Y Apr. 15, 2011); *see also*, *e.g., Med Pharma, Inc. v. BioMatrix*, 2011 U.S. Dist. LEXIS 141614 (D.N.J. Dec. 9, 2011); *Thermal Design, Inc. v. Guardian Building Products, Inc.*, 2011 U.S. Dist. LEXIS

50108 (E.D. Wis. Apr. 20, 2011). Here, Borup has requested every produced document and every communication between every counsel in the entire duration of the litigation. Given that the *Sanders* litigation is entirely separate and unrelated to Plaintiff's claims, and involved thousands of litigants, the Court should not force HCI to re-play the discovery phase from that entirely separate, and concluded, lawsuit – merely to satisfy Borup's curiosity. Borup's motion to compel responses to Requests 14, 15, 20, 29 and 30 should be denied.

**D.    Discovery of Litigation Holds and Retention Policies, Requests 27 and 28, is Entirely Inappropriate: Plaintiff's 'Spoliation' Concerns are Unfounded**

Borup's motion to compel HCI to produce all litigation holds issued from this litigation and the *Sanders* case should be denied. The Federal Rules do not grant parties the right to take formal discovery to test the sufficiency of each other's document retention, preservation or production efforts, absent evidence of misconduct, which evidence is absent here. *See, e.g., Orillaneda v. French Culinary Institute*, 2011 U.S. Dist. LEXIS 105793, at *17-23 (S.D.N.Y. Sept. 19, 2011) (issuing a protective order against plaintiff's demand for a list of "backup sets," litigation hold notices, document retention plans, and other aspects of defendant's preservation of ESI on the basis that this information was irrelevant absent a specific showing of production deficiencies); *In re Honeywell Int'l., Inc. Sec. Litig.*, 230 F.R.D. 293, 302 (S.D.N.Y. 2003) (denying motion to compel seeking information concerning document retention, preservation, search and collection procedures).

Here, Borup's suggestion that HCI is somehow wrongfully withholding or has

inappropriately destroyed certain time records is unfounded. Borup's sole basis for this belief appears to be his counsel's own failure to review communications from HCI's counsel, which plainly explained that to the extent this data exists, "it would have been preserved for this litigation and we will produce relevant records as they are accessible" (Dkt. 26-7). Indeed, such records will continue to be, produced (Deason Dec. ¶ 7). Borup's suggestion that HCI's conduct in discovery is insufficient because of spoliation is, put simply, wrong. *Koninklijke Philips N.V. v. Hunt Control Systems, Inc.*, 2014 WL 1494517, at *4 (D.N.J. Apr. 16, 2014) (granting protective order against discovery regarding preservation and production efforts where party failed to make the requisite showing that the challenged production was materially deficient, and pointing out that the party's alleged dissatisfaction with the results of the production was at best speculative and suggestive, and insufficient to allow the invasive discovery sought).

Absent a colorable basis for these discovery requests, then, they amount to an impermissible fishing expedition and must be denied. *See, e.g., Steuben Foods, Inc. v. Country Gourmet Foods, LLC*, 2011 U.S. Dist. LEXIS 43145, at *19-21 (W.D.N.Y. Apr. 21, 2011) (denying party's request to conduct "discovery directed to [other party's] document preservation actions in this case," because "[g]iven the lack of a colorable factual basis," such a request amounts to one seeking to initiate a 'fishing expedition' based on mere speculation"); *Larsen v. Coldwell Banker Real Estate Corp.*, 2012 WL 359466, at *7-8 (C.D. Cal. Feb. 2, 2012) (denying plaintiff's request for evidence regarding the defendant's ESI preservation, collection, and processing, on the basis that plaintiff had not shown any bad faith in the defendant's production and that the

inadequacies in production alleged and the isolated examples cited failed to demonstrate that defendants had not reasonably and in good faith produced the documents required).

### E.    Plaintiffs' Remaining Requests Are Not Relevant

#### 1.    Records Related to Meal and Rest Breaks, RFP 16, are Not Relevant

Borup's Request Number 16, demanding "any documents that reflect the amount of time spent at unpaid rest or meal breaks" should be denied. Borup's request must be relevant to a claim or defense of either party. This is a misclassification case, not an off-the-clock case. Further, Borup's claims do not arise under any state or federal law requiring paid meal or break periods (*see* Dkt. 1). Accordingly, any records related to the time spent eating or resting during his working time are not relevant to his misclassification claims, or to his potential damages recovery, particularly when HCI has already committed to producing, any and all records of the time Borup spent at the Mayo Clinic project per day (Deason Dec. ¶ 7). Those records should be adequate for Borup to evaluate his claims and assess the scope of his alleged damages, and HCI should not be burdened by unnecessary efforts to recreate daily meal and break periods where records of such may not exist. Any records related to the time spent on meal or rest breaks are not discoverable.

#### 2.    Financial Records With HCI's Customers, RFP 19, are Not Relevant, and are Confidential

The Court should deny Borup's motion to compel HCI to respond to Request No. 19 to produce records of the financial relationship between HCI and the clinics and hospitals with which it works. Borup has not demonstrated how these records are

relevant. The records "reflecting the number of hours you billed any third-party for [putative class members'] work" are not relevant to the claims or defenses at issue in this litigation. Specifically, they will not necessarily reflect the amount of time Borup spent doing compensable work for HCI; instead, they will reflect the private agreement between HCI and its customers for how the customer will compensate HCI for various services. HCI has already committed to producing, any and all records of the time Borup spent at the Mayo Clinic project per day (Deason Dec. ¶ 7). Those records should be adequate for Borup to evaluate his claims and assess the scope of his alleged damages, without requiring HCI to reveal confidential agreements and financial records related to its customers.

### 3.    HCI Agrees to Produce Records Responsive to Request No. 24, if Any Such Records Exist for ATE MDs

Borup's motion to compel a response to Request 24 should be denied because it is vague, and appears to assume facts that are not in evidence or connected to reality. Request 24 asks for "all documents related to your decision to provide an option to workers, during the relevant time period and related to go live events, to be compensated as an employee or as an independent contractor" (Dkt. 26-6). Despite inquiries during meet and confer, at this time, HCI and its counsel are not aware of the material or matter to which this request is targeted (Deason Dec. ¶ 13). If, through its due diligence and investigation, during the course of discovery, HCI discovers witnesses or records related to any such "option," they will be identified to Borup in supplemental discovery responses (*id.*).

## V.   CONCLUSION

Instead of utilizing the discovery process to explore an appropriate scope of his putative class and collective claims, Borup brings before the Court request that are irrelevant, overly broad, premature, and – importantly – not supported by any indication that they will lead to meaningful information to support his class and collective claims. Borup's motion should be denied.


Date: January 15, 2019

Jacqueline E. Kalk (#0388459)
Claire B. Deason (#0390570)
**LITTLER MENDELSON, P.C.**
1300 IDS Center
80 South 8th Street
Minneapolis, MN  55402.2136
Telephone: 612.630.1000

**ATTORNEYS FOR DEFENDANT THE
CJS SOLUTIONS GROUP, LLC, D/B/A
THE HCI GROUP**