**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| TIMOTHY C. BORUP,<br>*individually and on behalf of all others similarly situated,* | NO. 18-CV-1647 (PAM/DTS) |
| Plaintiff, | |
| v. | **ORDER** |
| THE CJS SOLUTIONS GROUP, LLC,<br>*d/b/a* The HCI Group, | |
| Defendant. | |

**INTRODUCTION**

Plaintiff Timothy C. Borup filed a "collective and class action" lawsuit under the Fair Labor Standards Act and Minnesota state law alleging that Defendant CJS Solutions Group, LLC misclassified him and others as independent contractors, resulting in loss of overtime pay. Borup now seeks to compel discovery from CJS, arguing that many of CJS's responses to his interrogatories and document requests were deficient. The Court concludes that Borup is entitled to much of the discovery he has requested.

**FACTS**

**I.      Relevant Background**

In his Complaint, Borup alleges that CJS employed him and others as consultants to assist medical facilities as they transition to electronic recordkeeping systems. Compl. ¶ 11, Docket No. 1. These consultants are known as "ATEs" because they work "at the elbows" of a facility's employees for a brief period as the facility "goes live" with the electronic system. Decl. of Stephen Tokarz ¶¶ 5-6, Docket No. 34-1. Borup worked for CJS for one such "go live" project at the Mayo Clinic in 2018. Compl.

¶ 13. He contends that, though CJS classified him and other consultants as independent contractors, the reality of the arrangement properly rendered them CJS employees. *Id.* at ¶¶ 16-28. He also contends that he and other consultants regularly worked 12-hour days, 7 days a week during the Mayo Clinic and other "go live" events. *Id.* at ¶ 33. But, because CJS classified them as independent contractors, they were not paid overtime under either the Fair Labor Standards Act or Minnesota state law. *Id.* at ¶ 34. Borup seeks to have his lawsuit certified as a collective action for the FLSA claim and as a Rule 23 class action for the Minnesota statutory claim. *Id.* at p. 17.

CJS previously faced lawsuits alleging it failed to pay appropriate overtime wages due to misclassifying employees as independent contractors. It settled these lawsuits in 2018. *See* Decl. of T. Joseph Snodgrass Ex. I (Pl.'s Mem. L. in Supp. Unopposed Mot. for Final Approval of the Am. Settlement Agreement), Docket No. 26. The settlement was universally binding on claims under New York, North Carolina, and Washington law. *Id.* at Ex. H (Notice of Settlement). It was only binding on FLSA claims if a class member opted-in and deposited the settlement award check. *Id.*

While the litigation was ongoing, CJS changed its practice and began classifying almost all its ATE consultants as employees. Tokarz Decl. ¶ 7. However, it continued to classify certain ATEs who were medical doctors, medical residents, or medical students, as independent contractors. *Id.* These consultants, "ATE MDs", received some additional training and allegedly exercise greater discretion over their work. *Id.* at ¶¶ 8-9. The Mayo Clinic event has been the only "go live" project thus far under CJS's new classification regime. *Id.* at ¶ 7.

## II. Discovery Dispute

Borup served his first discovery requests in November of 2018. Snodgrass Decl. Ex. A. Many of the requests, including the single interrogatory, are aimed at identifying and classifying individuals whom Borup contends are similarly situated to him, but who have not released their claims against CJS. *Id.* This includes individuals who worked on go live events at issue in the prior lawsuits, but who did not receive a part of the settlement award. *Id.* For these individuals, Borup seeks documents that may show they worked more than 40 hours a week without overtime pay, such as records of the number of hours they worked per week, their pay rates, and any time they may have spent on travel or uncompensated breaks. *Id.* He also seeks documents that would tend to demonstrate that such individuals should have properly been classified as employees, including records outlining the scope of their job duties, the training and instruction they received, and any oversight that CJS exercised. *Id.*

Another category of document requests relates to the prior litigation and settlement. Some requests seek documents indicating which individuals waived their FLSA claims by opting into the settlement and cashing a settlement check. *Id.* Others seek the discovery and disclosures CJS made during the prior litigation, as well as communications between counsel in the prior litigation. *Id.* The remaining requests concern CJS's potential liability and defenses, including the basis for any affirmative or good faith defense it might raise. *Id.*[1]

---

[1] For the sake of clarity and simplicity, the Court will not repeat verbatim each discovery request and response. However, for the reader's convenience, the Court does attach as Exhibit A to this order, CJS's responses to Borup's Interrogatory and Document Requests.

CJS objected to the interrogatory and nearly every request for production. *Id.* at Exs. E, F. Some responses directed Borup to documents previously produced as part of CJS's initial Rule 26 disclosures. *Id.* at Ex. F. CJS's central objections are that the discovery requests are irrelevant, overly broad, or inappropriately attempt to relitigate the prior lawsuits that led to settlement. *Id.*; Decl. of Claire B. Deason ¶ 5, Docket No. 34. Beyond these objections, CJS's objections are mere boilerplate.[2]

**ANALYSIS**

CJS primarily questions the relevance of the information Borup seeks, including those requests relating to the scope and certifiability of the FLSA and Rule 23 classes, as well as matters of privilege and breadth.[3] Because much of the information sought is at least relevant to the certifiability of the collective action under the FLSA, as well as the merits of the FLSA claim, Borup is entitled to much—though not all—of what he seeks.

**I.  Legal Standard**

Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." This rule contemplates a liberal scope of discovery, though this Court "possess[es] considerable discretion in

---

[2] For example, CJS objects to almost every discovery request as being "vague" or "ambiguous," without offering any specific basis for these objections. Snodgrass Decl. Ex. F. The Court finds none of the requests vague or ambiguous. Indeed, it is clear from CJS's memorandum that it, too, understands what Borup is requesting, but does not agree with the breadth of discovery he seeks.

[3] Borup initially sought to compel documents regarding CJS's document retention and litigation hold policies, raising questions about the discoverability of such material. But the parties have resolved those issues, and Borup no longer seeks to compel a response to his Document Requests Nos. 27 & 28.

determining the need for, and form of, discovery." *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 120 F. Supp. 3d 942, 949 (D. Minn. 2015). Provided that the party seeking discovery makes a threshold showing of relevance, it is generally entitled to the information. *Beseke v. Equifax Info. Servs. LLC*, Civil No. 17-4971 (DWF/KMM), 2018 WL 6040016, at *3 (D. Minn. Oct. 18, 2018) (citing *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 237 (D. Minn. 2013)).

II. **Potential Scope of the Putative Class and Collective**

The parties' dispute is largely one of scope. CJS argues that any information relating to consultants paid as independent contractors, but who were not the ATE MDs who worked on the Mayo Clinic "go live" event is not relevant to the current litigation at this stage of discovery, even if the individuals did not opt into the prior settlement.[4] Its central contention is that Borup cannot be similarly situated to any ATEs from prior go live events because of the 2017 reclassification. The Court agrees with Borup that information about ATEs at other go live events is at least relevant to certification of a collective action for the FLSA claim.[5] At the first stage of certifying a case under the FLSA—the conditional certification stage—Borup "need only establish a colorable basis for [his] claim that the putative class members were the victims of a single decision, policy, or plan." *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (quoting *Dege v. Hutchinson Tech., Inc.*, Civil No. 06-3754 (DWF/RLE),

---

[4] CJS raises this relevance objection and its "Proposed Scope Compromise" in response to Borup's Interrog. No. 1 and Document Request Nos. 1-11, 17-18, 21-23, 25-26. Def.'s Opp. to Pl.'s Mot. to Compel Disc. 17-23.

[5] Unlike a Rule 23 class action, a collective action under the FLSA only binds individuals if they "opt-in" to the litigation. *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 939 (D. Minn. 2009). So, any individual who did not affirmatively opt-in to the prior settlement by submitting a form and cashing the check, *see* Snodgrass Decl. Ex. H, has not waived his or her FLSA claim and may bring it in an appropriate action.

2007 WL 586787, at *1 (D. Minn. Feb. 22, 2007)). Although the Court does not make a credibility determination at conditional certification, *id.*, Borup "must come forward with something more than the mere averments in [his] complaint." *Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 278-79 (D. Minn. 1992).

Borup has sufficiently demonstrated the relevance of information relating to ATEs beyond the narrow scope suggested by CJS. He has made a prima facie showing that the identities he seeks are individuals similarly situated to him because they performed similar work at medical facilities during "go live" events but were treated as independent contractors. *See Burch*, 500 F. Supp. 2d at 1187 (noting that, at the conditional certification stage, the plaintiffs were "not required to provide evidence showing Qwest's illegal practice at every location or that Plaintiffs are identically situated to putative class members in all respects"). The authority CJS cites to suggest Borup must present something more, such as "evidence indicating that a company-wide policy may exist with regard to" the class in order to get discovery is inapposite. *See Owens v. Clear Wireless LLC*, Civil No. 13-834 (DSD/AJB), 2014 U.S. Dist. LEXIS 29069, at 9 9D. Minn. Jan. 3, 2014). In *Owens*, the court was ruling on the plaintiffs' motion for conditional certification, not whether discovery was warranted prior to conditional certification. Applying the *Owens* standard here would ignore the posture of the case at hand—pre-certification discovery—by effectively determining the merits of a certification motion that is neither ripe nor presently before the Court.

Further, while persons who opted into the earlier settlement cannot join this lawsuit, the size of the prior litigation shows, at least for discovery purposes, that there remains interest in pursuing an FLSA claim. Borup's attempt to identify individuals who could have been, but were not, bound by the prior settlement is not a challenge to that

settlement. Therefore, CJS's argument that Borup lacks standing to challenge the settlement is inapposite. Borup has made a prima facie showing that he might be similarly situated to ATEs who worked on prior projects encompassed by the prior settlement; whether he actually is similarly situated will be determined on a motion for conditional certification and any subsequent motion for decertification.

## III. Interrogatory No. 1 and Related Document Requests

Besides its overarching relevance objection, CJS argues that most of Borup's discovery requests are irrelevant on other grounds. Borup's Interrogatory No. 1 asks CJS to "[i]dentify all workers [it] paid as independent contractors during the relevant time period and whose work related to go live ievents, and who did not receive money from the Sanders settlement." Snodgrass Decl. Ex. A. CJS contends that Interrogatory No. 1 is irrelevant prior to conditional certification. Borup contends that he needs the identities and contact information to gain conditional certification, specifically, to investigate whether these individuals are similarly situated to him. The Court agrees that the contact information and related document requests are relevant to Borup's claim that these other ATEs are similarly situated to him.

The parties rely upon seemingly conflicting precedent.[6] CJS largely replies upon *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553 (D. Minn. 2008), to argue the identity information is not discoverable. In *Knutson*, the court reversed the magistrate judge's order compelling the defendant to produce contact information for

---

[6] The competing caselaw reflects the reality that "the United States Supreme Court and the federal courts of appeals have provided very little guidance" about the certification process in collective actions. Saleen, 649 F. Supp. 2d at 939. This has led to seemingly piecemeal approaches by the district courts, including this one, though a trend appears to favor discovery of the information. See Hammond v. Loew's Home Ctrs, Inc., 216 F.R.D. 666, 673 (D. Kan. 2003) (collecting cases).

individuals within the putative class *after* the Court had denied conditional certification without prejudice. *Id.* at 558. The court did so because the plaintiff there had only asserted that the contact information was necessary to solicit others' participation in the lawsuit. The Court held that Plaintiff was required to show "that such information 'is discoverable *for some reason other than facilitating notice to potential plaintiffs.*'" *Id.* at 556-57 (quoting *Severtson*, 137 F.R.D. at 267). It also noted that, even if the information were discoverable, the discovery was not necessary to demonstrate conditional certification because the plaintiff had the "contact information for at least 43 of her former co-workers[,]" but had not taken full advantage of that information. *Id.* at 558.

By contrast, Borup analogizes the present matter to *Holaway v. Stratasys, Inc.*, Civil No. 12-998 (PAM/JSM), 2012 WL 12895690 (D. Minn. Oct. 30, 2012). There, the Court overruled an objection to the magistrate judge's order compelling similar contact information, noting only that such contact information was "undoubtedly relevant," whether "at the conditional certification stage or at the liability stage." 2012 WL 12895690, at *3. It subsequently granted conditional certification. *Id.*

Because the present matter is distinguishable from *Knutson*, broader discovery is warranted here, as it was in *Holaway*. Borup asserts he needs the contact information, not simply to solicit additional plaintiffs, but to develop information that the broader class of ATEs is similarly situated to him. *Cf. Burch*, 500 F. Supp. 2d at 1188-89 (considering the affidavits of potential class members as evidence of a common scheme for conditional certification). Unlike *Knutson*, the Court has not yet considered, much less decided, conditional certification; nor is there evidence that Borup has the contact information for the other ATEs. As CJS has emphasized, Borup only worked on the Mayo Clinic project. In this regard, Borup is more akin to the hypothetical plaintiff the

8

court in *Knutson* thought might be entitled to compelled production: "where a plaintiff has been given no access to contact information by the defendant and, because of her short tenure with her employer, she is unlikely to possess such information." *Knutson*, 254 F.R.D. at 558. The information Borup seeks is relevant to show similar situations and "to make the threshold showing that others seek to opt in to [his] case." *Id.* Additionally, because discovery is not bifurcated in this case, documents relating to any individual identified by Interrogatory No. 1 that go to liability, statute of limitations, or other matters separate from certification are also discoverable at this point. *See Holaway*, 2012 WL 12895690, at *3.

Finally, the information sought is proportionate to the needs of the case. The individuals identified by CJS in answering the interrogatory and document requests may well ultimately define the class itself, and CJS has made no showing that production of this information (which, presumably, was already gathered in the prior litigation) would constitute an undue burden. That noted, two requests are overbroad as written. Document Request 5 seeks "all documents relating to" out-of-town travel for go live events. Although the request is relevant to showing time spent travelling during regular business hours, the request currently seeks a far larger universe of documents; the Court will limit the scope of this request to documents indicating who travelled out of town and when they did so. Similarly, Document Request 9 seeks "[a]ll emails and other communications by [CJS] to workers identified in Interrogatory No. 1 during the relevant time period and related to go live events." Though many such communications may be relevant to show, among other things, the level of control CJS exercised over the ATEs and the similarity of job duties, many others may not be related to any claim or defense; this request will be limited to emails and communications that relate to a claim or

defense. With these modifications, the motion to compel responses to Interrogatory No. 1 and Document Requests 1-7, 9, 16-18, and 26 are granted.

The only document request relating to Interrogatory No. 1 that is not relevant and proportionate is Document Request 19, which seeks the number of hours CJS billed clients for work by the identified individuals. The billing practices agreed to by CJS and its clients has only a tenuous relationship with how CJS is legally obligated to compensate its workers. Unlike Document Request 18, which seeks the rates CJS billed its clients for the ATEs' work and may show overtime billing, Document Request 19 does not seek documents that may establish bad faith. To the extent Borup seeks the information to get conditional certification, that information is sufficiently covered by Borup's other discovery requests. Moreover, even if it had any bearing on the number of hours the individuals should have been necessarily remunerated, it is redundant as that information is directly requested in Document Request 2. Document Request 19 is denied.

## IV. "Go Live" Events

Several of Borup's Document Requests seek material regarding advertising, training, and rules covering workers of all "go live" events during the three years preceding the filing of Borup's Complaint. CJS objected and asks that the scope of the requests be limited to documents relating to ATE MDs at the Mayo Clinic Project. The Court has already decided, for the reasons noted above, that broader discovery is appropriate. The information could reasonably be used to demonstrate that the putative class was subject to similar timekeeping policies and job duties. And, given the lack of bifurcated discovery, any information showing the level of control CJS exercised over

"go live" event consultants is relevant, even before conditional certification. The motion to compel Document Requests 8, 10, 11, 21, 24, 25, and 26 is granted.

## V. CJS's Defenses

Borup also sought discovery regarding CJS's affirmative defenses and any advice-of-counsel and good faith defenses it might raise. CJS objected to the scope of these document requests on grounds previously discussed, namely the relevance of any good faith defenses not specifically related to Borup. Those objections are overruled. Documents relating to these defenses are relevant to show the appropriateness of certification because they may demonstrate similar situation through the existence of a common scheme or common defenses. *See Holaway*, 2012 WL 12897218), at *8-9 (D. Minn. Sept. 24, 2012) (Mayeron, M.J.). Again, given the short discovery period, production at this stage is not disproportionate to the needs of the case. The motion to compel Document Requests 12, 13, 22, and 23 is granted. The Court reminds CJS it must submit a privilege log noting any documents withheld based upon an assertion of privilege.

## VI. Records Relating to Prior Litigation and Settlement

CJS opposes Borup's requests for documents relating to the prior litigation and settlement. Beyond its general relevance objection, CJS contends that these documents are otherwise irrelevant, privileged, unduly prejudicial, or disproportionate to the needs of the case. The Court largely agrees regarding Document Requests 20, 29 and 30. These requests seek communications between counsel during the settlement, as well as documents produced, and discovery disclosed, to plaintiffs as part of the prior lawsuits. The requests are irrelevant and overbroad because they sweep into discovery documents relating primarily to individuals who have already settled and waived their

claims. To the extent that some of the documents would be relevant to showing a common policy, other requests provide Borup with that information. Of course, CJS may produce the documents it produced in these prior cases if doing so lessens the burden of complying with the discovery in this case. The motion to compel Document Requests 20, 29, and 30 is denied.

Document Requests 14 and 15 seek documents identifying workers who received notice of the prior settlement and workers who signed checks or drafts as part of the settlement. The Court agrees with CJS that many such documents may contain proposed settlement terms and other information not admissible under Rule 408(b). But the information Borup seeks from the documents is relevant to defining the scope of the class, as those who have waived their claims cannot participate in the present action. The motion to compel Document Requests 14 and 15 is granted, but, to avoid disclosure of settlement terms, CJS may answer them as though they were interrogatories.

**ORDER**

The Court, being duly advised in the premises, upon all the files, records and proceedings herein, now makes and enters the following Order.

IT IS HEREBY ORDERED:

1. Plaintiff Timothy Borup's Motion to Compel Disclosures and Discovery Pursuant to Fed. R. Civ. P. 37(a) [Docket No. 21] is GRANTED IN PART and DENIED IN PART.

2. Defendant CJS Solutions Group, LLC shall answer Plaintiff's Interrogatory No. 1.

3. Defendant CJS Solutions Group, LLC shall produce all documents requested in Plaintiff's Document Requests Nos. 1-18 and 21-28, subject to the following specific modifications:

   a. Document Request No. 5: For all workers identified in Interrogatory No. 1, Defendant shall produce all documents identifying which workers traveled to any out-of-town locations related to go live events, and when they did so.

   b. Document Request No. 9: Defendant shall produce the documents requested to the extent they relate to any of the parties' claims or defenses are not otherwise privileged.

   c. Document Requests Nos. 14-15: Defendant shall treat these requests as they were served as interrogatories.

4. Defendant CJS Solutions Group, LLC need not produce documents requested by Plaintiff's Document Requests Nos.19-20 and 29-30.

Dated: February 13, 2019

s/ David T. Schultz  
DAVID T. SCHULTZ  
United States Magistrate Judge