# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

TIMOTHY C. BORUP, individually and
on behalf of all others similarly situated,

Plaintiff,

vs.

THE CJS SOLUTIONS GROUP, LLC,
d/b/a THE HCI GROUP,

Defendant.

Court File No. 0:18-CV-01647-PAM-DTS

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO STRIKE
OR OTHERWISE INVALIDATE
DEFENDANT'S JUNE 12, 2019 RULE
68 OFFER OF JUDGMENT**

---

If Mr. Borup is not interested in resolving his claims on the terms articulated in HCI's June 12 offer of judgment, he can simply reject HCI's offer. Instead, he files yet another lengthy brief complaining about HCI's efforts to settle another case, the *Gray* litigation, and insisted on doing so *before* the end of his 14-day Rule 68 consideration period. Mr. Borup had not yet had an opportunity to consider and reject HCI's Rule 68 offer within the timeframe provided to him by the Federal Rules.[1] Plaintiff appears dead-set on criticizing even the most straightforward efforts by HCI to resolve his claims, with no real threat to any other aspects of this litigation.

---

[1] HCI has received no assurances that Mr. Borup's counsel, Mr. Snodgrass, shared HCI's offer with his client. Mr. Snodgrass, who on behalf of Mr. Borup has spent nearly a year maligning the propriety of HCI's efforts to resolve claims brought by its former contractors, has given no assurance that he has complied with the most basic tenant of settlement conduct: an attorney may not decide to ignore or reject an offer without first sharing it with his client. *See* MINN. R. PRO. CONDUCT 1.2(a) ("A lawyer shall abide by a client's decision whether to settle a matter."); 1.4 Comment [2] ("a lawyer who receives from opposing counsel an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case must promptly inform the client of its substance unless the client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer.").

HCI's offer, whether accepted or rejected, would have no effect whatsoever on any hypothetical class or collective certification in this case or any of the pending disputes in the *Gray* case. It is simply an offer to Mr. Borup; who is currently one of *eleven* plaintiffs in this case. Indeed, immediately upon learning that Plaintiff intended to pursue the instant motion, counsel for HCI assured Plaintiff's counsel that – despite that after over a year, there is still no pending motion for certification in this litigation – HCI fully expected the putative class and collective claims to proceed with a new named plaintiff in the event Mr. Borup chose to accept HCI's offer.

There is plainly no reason that Mr. Borup should not accept or reject (or simply ignore) HCI's offer, as Rule 68 instructs. Instead, he incredibly asks that the Court enjoin HCI from making any offers of settlement to him or any other litigant in this case until a decision on a motion for class and collective certification – a motion that *does not exist*. Plaintiff's motion to strike flies in the face of the core principles that underlie Rule 68. The Court should deny it.

## I.   FACTUAL BACKGROUND

The HCI Group is a technology company (Dkt. 34-1 ¶ 2). It provides information technology solutions for the healthcare industry. Specifically, it partners with several vendors to develop tailored technology solutions and then assists in establishing that technology at the customer's hospital or clinic (*id.* ¶ 3).

After customer training, HCI manages a "go-live" event when the new technology begins managing records in real-time. The event begins on the first "live" day and typically lasts several weeks (*id.* ¶ 5). Given the nature of medical care, this critical

transition period requires constant attention to ensure that doctors and nurses use the new software confidently and without error while treating patients (*id.*)

HCI enlists consultants known as "ATEs" to work alongside or "at-the-elbows" of the healthcare provider's employees (*id.* ¶ 6). Prior to May 2017, HCI paid all ATEs as independent contractors (*id.*). In February 2018, HCI resolved a collective and class action lawsuit, *Sanders v. The CJS Solutions Group, LLC d/b/a HCI Group*, seeking alleged unpaid overtime wages and damages for ATEs who worked for HCI from early 2014 to May 31, 2017. After May 2017, HCI began classifying all ATEs as employees with two exceptions: (1) a specialized group of salaried, exempt employees and (2) medical doctors (including resident and medical students) with specialized training engaged to work a specific project at the Mayo Clinic in Rochester, Minnesota (Dkt. 34-1 ¶ 7).

Mr. Borup was in the second group (*id.* ¶ 8). He worked for HCI only once, in Minnesota, on the Mayo Clinic event, for approximately four weeks in April and May 2018 (*id.* ¶¶ 2-3).

## II.     PROCEDURAL BACKGROUND

Plaintiff Borup filed his Collective and Class Action Complaint and Jury Demand on June 13, 2018 (Dkt. 1). Borup alleges that HCI improperly classified him as an independent contractor in violation of the Fair Labor Standards Act and Minnesota state law (*id.* p.1). Borup does not allege violations of any other state or federal laws (*c.f. id.*).

Nearly a year has passed since Borup filed his Complaint, and he has yet to seek certification of a class or collective. Instead, Borup has spent most of his procedural and

discovery efforts attempting to strengthen the hypothetical scope of his putative class and collective by disrupting other litigation against HCI in other jurisdictions. Borup explained in his deposition that he understands this is his attorney's strategy, not his own (Deposition of Timothy Borup, attached to Deason Dec. as Exhibit 1, hereinafter "Borup Dep." at 102:2-7). In fact, when Borup originally decided to pursue litigation following his work for HCI, he testified that he wanted to represent the group of 137 Implementation MDs who worked alongside him at the Mayo Clinic in the spring of 2018 (*id.* at 71:9-18 (while working as Implementation MD at Mayo, Borup decided there should be a lawsuit for all the 137 Implementation MDs working on the same project)); 101:4-102:7 ("Q. Who are the people that you want to represent? A. When I started this it was all those who were working there . . . At Mayo, yes, at-the-elbow support.")). However, since his attorney changed his strategy to try to increase the size of the putative class he would represent, Borup has not pursued his goal to represent only Mayo Clinic workers (*see id.* at 102:2-7 ("A. So you don't have any independent understanding of why the class you want to represent has changed since you filed your complaint, other than what you've been told by your lawyers, is that correct? A. Correct.").

    In his deposition, Mr. Borup reviewed text messages that he sent to other Mayo Clinic workers while working at the Mayo go-live project, wherein he suggested that a settlement of $10,000 would be "worth it," and also reviewed the Excel spreadsheet that he prepared for his colleagues, in which he estimated his own alleged unpaid overtime to be $3,368.00. He and his colleagues discussed the *Sanders* settlement, and Borup said that pursuing litigation was "[p]robably worth it if in the end we get an extra $10,000 like

they did in some of the other cases." (*see id.* at 78:5-18, Ex. 7; 85:2-21, Ex. 8 (Excel spreadsheet prepared by Borup, "that was my personal estimation of what I would be paid on overtime that I did not"). Borup also reviewed an email from Mr. Snodgrass to counsel for HCI, wherein Mr. Snodgrass refused a compromise related to deposition scheduling, because of his own valuation of his client's individual claim (*see id.* at 89:13-21, Ex. 10 (email from Mr. Snodgrass, "I'm not paying for two flights on an individual claim below $10,000")).

Two weeks after Mr. Borup clarified these figures in his May 30 deposition, HCI served an offer of judgment to Mr. Borup for $10,000.00, "as well as any amount for costs of suit, attorneys' fees, and any and all other accrued costs that might be recoverable against Defendant in this action, to be determined by the Court" (Dkt. 104-6 p.1). The offer specifically indicated, "A judgment entered upon acceptance of this Offer of Judgment shall not be deemed to have determined or adjudicated any issue relevant to the merits of Plaintiff's claims, ***or the claims of others***, and shall instead have the effect of aiding the settlement of this case" (*id.* pp.2-3). Consistent with Rule 68, the offer indicated that HCI would accept judgment with regard to Mr. Borup's claims, and the offer would be available for 14 days, until June 26 (*id.* p.1).

On June 14, counsel for HCI sent a form for Mr. Borup to complete on or before the June 26 consideration period deadline, with a section to indicate whether the offer was accepted or rejected (Deason Dec. ¶ 3; Ex. 2). Counsel for HCI wrote to Mr. Snodgrass, "obviously if [Mr. Borup] chooses to accept the offer, we can move to determining if fees can be agreed upon or will require motion practice. We could also at

that time address whether any of the opt-ins will transition to a named plaintiff role," inviting a discussion of whether the offer would be accepted, and how to substitute a named plaintiff (Dkt. 104-7). As of the date of this brief, HCI has not received the completed form accepting or rejecting the offer it made, and Mr. Borup's counsel has not responded to HCI's invitation to discuss court-approved attorney fees or any substitute named plaintiff (Deason Dec. ¶ 4). Instead, Plaintiff moves to "strike" the offer. The motion should be denied.

## III.   STANDARD OF REVIEW

Plaintiff's motion implicates two rules of federal procedure: Rule 12(f) and Rule 68. The Court considers different standards when addressing each.

### A.   Rule 12(f) Motion to Strike

Rule 12(f) permits that "upon motion made by a party . . . or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "Motions to strike are viewed with disfavor and are infrequently granted." *Lunsford v. United States*, 570 F. 2d 221, 229 (8th Cir. 1977); 2 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 12.37 (3d ed. 2000) ("Courts disfavor the motion to strike, because it proposes a drastic remedy.").

Only pleadings may be stricken. The federal rules define "pleadings" as a complaint, a third-party complaint or answer thereto, an answer to a complaint, a counterclaim, or cross-claim, and a reply to an answer if ordered. FED. R. CIV. P. 7(a). "Generally . . . motions, briefs, and memoranda may not be attacked by a motion

to strike."). *Searcy v. Soc. Sec. Admin.*, 956 F.2d 278, 1992 WL 43490, at *1, *4 (10th Cir. 1998). "Under the Rules, an offer of judgment is not a pleading subject to a motion to strike." *Davis v. Credit Collection Servs.*, 2017 U.S. Dist. LEXIS 162542, *6 (D. N.J. Oct. 1, 2017).

### B.    Rule 68 in Putative Class and Collective Actions

"Rule 68 is intended to be coercive, in order to encourage settlements and avoid protracted litigation." *Bryant v. Bonded Accounts Servs.*, 2000 U.S. Dist. LEXIS 22309, *4 (D. Minn. Aug. 2, 2000); *Marek v. Chesney*, 473 U.S. 1, 5 (1985). "The hope is that the existence of Rule 68 will encourage plaintiffs to accept reasonable settlement offers rather than forcing defendants through the expensive process of going to trial." *Bryant*, 2000 U.S. Dist. LEXIS 22309, *4. Rule 68 anticipates that, if an offer is accepted, the plaintiff will voluntarily dismiss his claims. The rule protects the offeror; a defendant who "was willing to settle the case on reasonable terms, as measured by the result at trial, should not have to suffer financially for its adversary's unjustified stubbornness in forcing the case to be carried further." Thomas D. Rowe, Jr., *Predicting the Effects of Attorney Fee Shifting*, 47: 1 LAW & CONTEMP. PROBS. 139, 165 (1984).

Without a doubt, "circumstances could exist where the policies behind Rule 68 and 23(e) could come into conflict." *Bryant*, 2000 U.S. Dist. LEXIS 22309, *4. Nevertheless, "nothing in the text of Rule 68 itself, nor in any other Federal Rule, prohibits a defendant from making an offer of judgment in a putative class action," and myriad courts have recognized that "a policy categorically barring Rule 68 offers of judgment in class actions would be best set forth in the Federal Rules of Civil Procedure

themselves." *Combe v. Goodman Frost, PLLC*, 217 F. Supp. 3d, 986 (E.D. Mich. 2016) (internal quotation omitted); *see also Leahy-Fernandez v. Bayview Loan Servicing, LLC*, No. 8:15-cv-2380, 2016 U.S. Dist. LEXIS 33899, *1-*2 (M.D. Fla. March 16, 2016); *Williams v. Amazon.Com, Inc.*, 312 F.R.D. 497, 499-501 (N.D. Ill. 2015); *Jacobson v. Persolve, LLC*, No. 14-CV-00735, 2014 U.S. Dist. LEXIS 115601, *4-*5 (N.D. Cal. Aug. 19, 2014); *White v. Ally Financial Inc.*, No. 2:12-cv-00384, 2012 U.S. Dist. LEXIS 101948, *3-*4 (S.D. W. Va. July 20, 2012); *Buechler v. Keyco, Inc.*, No. 09-2948, 2010 U.S. Dist. LEXIS 40197, *3 (D. Md. April 22, 2010).[2]

## IV.    ARGUMENTS AND AUTHORITIES

The Court should not strike HCI's Rule 68 offer for several reasons. First, any concerns raised by HCI's offer are not ripe for consideration, and a motion to strike is an improper procedural vehicle because the offer itself is not a pleading and has not been filed. Second, though Borup recognizes that HCI's offer is not an attempt to "moot a plaintiff's case," he nevertheless relies almost exclusively on outdated cases criticizing that historical "pick off" strategy. In reality, the breadth of case law since the 2016 *Campbell-Ewald* decision by the U.S. Supreme Court indicates that – when there is no certified class or collective, or even a timeline for such a motion – a Rule 68 offer of settlement to a named plaintiff is entirely appropriate. Third, Plaintiff's argument

---

[2] In fact, the Advisory Committee on the Federal Rules expressly considered whether to make Rule 68 inapplicable to class actions when preparing the Rule, and it elected not to do so. *See Leahy-Fernandez*, 2016 U.S. Dist. LEXIS 33899, *1-*2; *Jacobson*, 2014 U.S. Dist. LEXIS 115601, *5 n.4; *McDowall v. Cogan*, 216 F.R.D. 46, 48 n.2, 49 (E.D.N.Y. 2003).

regarding court approval is simply wrong; there is no *de facto* requirement for court approval of a single-plaintiff FLSA settlement in the Eighth Circuit. Further, HCI's offer meets all the procedural requirements of Rule 68 and was clearly made in good faith. Finally, despite Plaintiff's perseverating, HCI's offer to Mr. Borup has nothing to do with, and will have no effect on, the *Gray* litigation.

### A.   Plaintiff's Motion is Not Ripe and Improperly Seeks an Advisory Opinion

Plaintiff's motion should be denied because there is no procedural avenue for the relief requested therein. Under Rule 68, an offer of judgment may not be filed except in a proceeding to determine costs. *See* FED. R. Civ. P. 68(b) ("Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs."). In the absence of a filed pleading, there is nothing for the Court to strike. *See, e.g., Bogner v. Masari Invs.*, LLC, No. 08-1511, 2009 U.S. Dist. LEXIS 45311, *1 (D. Ariz. May 19, 2009) ("Because Defendants have not filed the offer of judgment with the Court, there is nothing to strike from the record."); Further, the offer is not a "pleading" under the federal rules; to strike it would be to exceed the authority of what the rules permit. *See Davis*, 2017 U.S. Dist. LEXIS 162542, *9. Accordingly, there is no mechanism for the Court to "strike" HCI's offer, as Plaintiff requests. *See, e.g. McDowall v. Cogan*, 216 F.R.D. 46, 52 (E.D.N.Y. 2003) ("[T]here is nothing to strike here, as an offer of judgment is not filed with the court until accepted or until offered by a deferred party to prove costs."); *Parker v. Risk Mgmt. Alternatives, Inc.*, 204 F.R.D. 113, 114 (N.D. Ill. 2001) ("Plaintiff has erred by moving to strike a document that has not been filed with the court.").

Courts routinely deny motions to strike unfiled Rule 68 offers of judgment in putative class cases, particularly because the concerns raised by the plaintiff have not ripened – and may never do so. *See, e.g. Tillman v. Calvary Portfolio Servs., LLC*, No. 08-8142, 2009 U.S. Dist. LEXIS 18467, *2 (D. Ariz. Feb. 27, 2009) (motion to strike an unfiled offer of judgment was procedurally improper because the offer's "fairness and validity will only ripen after an entry of judgment less favorable than Defendant's offer" or, alternatively, "the issue may not ripen at all").

There is no procedural mechanism for "invalidating" HCI's offer, either. The validity of the offer – whether it can be used for the cost-shifting purpose intended by Rule 68 – may in fact never be before the Court. Indeed, this litigation may never reach a trial conclusion, and if it does, Mr. Borup might not prevail, and if he does, the amount of his award would determine the effect of HCI's offer, if HCI files it. The Court should not assess the effectiveness of HCI's offer until such time that the offer is filed, if and when HCI moves for relief under Rule 68. *See Leahy-Fernandez*, 2016 U.S. Dist. LEXIS 33899, *2 (determining the effectiveness of [the defendant's] offer of judgment would be advisory."); *see also Combe v. Goodman Frost, PLLC*, 217 F. Supp. 3d 986, 989 (E.D. Mich. 2016) (denying motion to strike Rule 68 offer of judgment where no motion to certify class was pending; "the Court declines Plaintiff's invitation to effectively rewrite Rule 68 a manner that assumes the existence of a conflict that arises only if a class is certified, while at the same time preventing the defendant from invoking a cost-limiting measure that unquestionably should be available, and likely would benefit both parties, in the event that a class is ***not*** certified. The balancing of these competing costs

and benefits must be undertaken by the Advisory Committee or the Congress, and not this Court. . . . In light of this uncertainty about matters that have not yet (and may never) come to pass, Plaintiff's motion [to declare the offer of judgment ineffective] is aptly characterized as seeking an advisory opinion that the Court is not authorized to give.") (emphasis in original).

This District Court has reached the same conclusion before. In *Bryant v. Bonded Accounts Servs.*, the Court considered a motion to strike a Rule 68 offer to a single plaintiff who purported to represent a putative class. 2000 U.S. Dist. LEXIS 22309, *12-13 (D. Minn. Aug. 2, 2000). The Court denied the motion, concluding, "the conflict counsel for Plaintiff seeks to resolve is a hypothetical one. Plaintiff himself has determined that he will not accept the settlement offer, but Defendant has not moved to recover costs from Plaintiff. Defendant has merely made a settlement offer. It is, of course, possible that a controversy over enforcement of the offer of judgment may arise at some point in the future. At this time, any opinion we would issue on the subject would be merely advisory." The same result is warranted here. The Court should deny Plaintiff's motion because there is no proper procedural mechanism for the Court to consider it.

## B.   HCI's Offer is Consistent With the FLSA and Rule 23

Even if the Court were to consider Plaintiff's motion as ripe, it should be denied because HCI's offer to Mr. Borup is entirely appropriate at the procedural posture of this litigation. The weight of authority in this District indicates that the concerns raised by Plaintiff are only valid *very early* in litigation, *after certification* of a class or collective,

and *not since 2016*, at which time the Supreme Court effectively put an end to the possibility that service of an offer to the named Plaintiff could threaten a class action. This case has none of those features.

> **1.     HCI's Offer is Appropriate Because, Since *Campbell-Ewald*, Rule 68 Offers Cannot Threaten Putative Class or Collective Litigation**

Plaintiff argues that HCI's offer should be "stricken" because, despite that HCI has not made any efforts to dismiss the putative class or collective because of its offer to Mr. Borup, Plaintiff somehow believes the hypothetical class or collective is at risk as a result of the offer. Frankly, that has not been a threat in putative class cases since 2016.

In the 2016 *Campbell-Ewald Co. v. Gomez* case, the U.S. Supreme Court ruled that an unaccepted offer of judgment to a named plaintiff before a class certification motion is "only a proposal" and, if rejected, has no effect whatsoever on the putative class claims. 136 S. Ct. 663, 670-71 (2016). Specifically, the Court opined that after the offer was rejected, "both parties retained the same stake in the litigation they had at the outset." *Id.* at 671. Prior to that decision, putative class plaintiffs faced a very real threat that an offer of judgment – even if ignored – would moot their individual claims, *and* any hopes for class or collective litigation as well. *See id.* at 669 (describing circuit split over whether unaccepted offer can moot putative class litigation); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013).

Plaintiff admits that HCI has not sought to dismiss his class claims, but he relies on case precedent decided on that basis. Plaintiff makes much of the *Johnson v. U.S. Bank Nat. Ass'n* decision, decided by this District in 2011, well before *Gomez*. In that

case, the Court struck the defendant's offer to a named plaintiff in a consumer class action because, it reasoned, "[h]ad he voluntarily accepted the offer of judgment, the action would most likely have been dismissed for lack of case or controversy because the putative class interests would at that point be abandoned." 276 F.R.D. 330, 335 (D. Minn. 2011). Similarly, in another 2011 decision striking a Rule 68 offer to a named plaintiff, this District Court reasoned the offer was unfair because, "if Plaintiff were to accept Defendant's offer it would resolve both her individual and her class claims, as she would receive all relief she is seeking. As a result, Plaintiff would no longer be able to serve as a class representative and seek class certification." *Schroeder v. First National Collections Bureau, Inc.*, No. 10-4238, 2011 U.S. Dist. 75054, *2 (D. Minn. May 12, 2011). And, in the 2007 *Jancik* case repeatedly referenced by Plaintiff, the Court assumed that permitting a Rule 68 offer to a named plaintiff would effectively allow the defendant to "buy its way out of class litigation." *Jancik v. Cavalry Portfolio Servs., LLC*, No. 06-3104, 2007 U.S. Dist. LEXIS 49500, *3 (D. Minn. July 3, 2007).

In fact, every District of Minnesota case referenced by Plaintiff to support his "conflict of interest" theory was decided before *Campbell-Ewald* and discusses the fact that a mere offer of settlement to the named plaintiff threatens the class, because of concerns for subject matter jurisdiction and mootness. The concerns underlying those decisions are not a legal possibility after *Campbell-Ewald*. *See Davis*, 2017 U.S. Dist. LEXIS 162542, *4, *9 (describing that *Campbell-Ewald* held there is "no Rule 68 exception in class actions"; noting that pre-*Campbell-Ewald* decisions striking offers of

judgment "rested on Rule 68 being inapplicable in pre-certification stage class actions when, in fact, *no rule bars its application*").

Further, there is presumably no such concern here, where even HCI's own counsel invited Mr. Snodgrass to propose which of the opt-in plaintiffs might assume the role of named plaintiff in the event Mr. Borup elected to resolve his own claims. Indeed, there are *ten other* plaintiffs in this litigation who have yet to resolve their claims against HCI. Notably, in *Johnson*, there were *no other plaintiffs*. 276 F.R.D. at 334. Logically, the Court concluded that accepting the offer would persuade the named plaintiff to "drop the class action" – because no others could carry it forward. *Id.* It was the same in the other District of Minnesota cases Plaintiff cites, *Lamberson*, *Schroeder*, and *Jancik*: there were no other plaintiffs. *See* 2011 U.S. Dist. LEXIS 56614 (D. Minn. April 13, 2011); 2011 U.S. Dist. LEXIS 75054 (D. Minn. May 12, 2011); 2007 U.S. Dist. LEXIS 49500 (D. Minn. July 3, 2007). In these cases, there was naturally a concern – given the jurisprudence at the time *and* the lack of other parties with any interest in the case – that the defendant's offer, whether accepted or rejected, could obliterate the entire litigation, putative class claims and all. That is simply not the case anymore.

*Jacobson v. Persolve* is instructive here. In that case, as here, the defendant served an offer of judgment on the named plaintiff in a putative Rule 23 class case. 2014 U.S. Dist. LEXIS 115601, *14. The plaintiff had not filed a motion to certify the class at the time the offer was made, and – like Borup – objected that the offer created an unfair conflict of interest for him. *Id.* The Court denied the plaintiff's motion to strike, first finding that the motion was an improper procedural mechanism for an unfiled offer of

judgment, and second noting that, even if it were a proper procedure, "it is unclear why it would be necessary" where the defendant had "not moved to dismiss the putative class claims as moot, or taken any other action based on the unaccepted offer of judgment." *Id.* In fact, the Court did not even learn of the existence of the offer until the plaintiff moved to strike it. *Id.* The Court denied the motion. *Id.*

The same result is warranted here. HCI has not done anything to undermine the putative class or collective claims, which – if its offer to Mr. Borup were accepted – presumably could proceed to a motion for certification (if it is ever filed) under the banner of any or all of ten other plaintiffs, and will not be affected at all if Mr. Borup does not accept HCI's offer.

The *Jacobson* court rightly noted that – because there was no avenue for the defendant to move to dismiss the putative class claims – the offer to the named plaintiff "poses no danger to the putative class claims" at all. *Id.* \*16. Since *Campbell-Ewald*, that is plainly the law. The rationale in the older cases from this District – grounded in an understandable frustration with and distaste for the pre-2016 "pick off" strategy – is inapplicable where every feature of the litigation suggests that the putative class claims will simply carry on, regardless of the outcome of HCI's offer for Mr. Borup. Indeed, if Mr. Borup declines HCI's offer, the Supreme Court has made clear that he would maintain the "same stake in the litigation" that he has always had, including his stake in his putative class claims – the U.S. Supreme Court said *nothing* about a "conflict of interest." *See Campbell-Ewald*, 36 S. Ct. at 671 (parties' stakes in the litigation are unchanged if offer is rejected).

15

### 2. HCI's Offer is Appropriate Because There is No Certified Class or Pending Motion for Certification in This Case

Plaintiff completely disregards the fact that there is no certified class in this litigation – or even a motion requesting it. The "conflict of interest" that Plaintiff complains about is purely theoretical. Indeed, "this choice ripens into an actual conflict only if the named plaintiff is able to establish the prerequisites under Rule 23 for certification as a class action. If this showing cannot be made, then the plaintiff need only consider his own interests in determining whether to accept an offer of judgment. Because the outcome of this inquiry typically is not known until the later stages of litigation, a prohibition against offers of judgment in putative class actions would prevent a defendant from using this device early in a case to limit its litigation costs, even though the suit ultimately might prove unamenable to treatment as a class action." *Combe*, 217 F. Supp. 3d at 989.

This District has clarified this precise distinction. In *Davis v. Gulf State Credit*, the Court reviewed an appeal of a Magistrate's decision denying a similar motion. 2000 U.S. Dist. LEXIS 22442, *2 (D. Minn. Nov. 2, 2000). The Court distinguished several of the cases upon which Mr. Borup relies, and explained that the theoretical "conflict of interest" between named plaintiff and putative class would not manifest unless there were, in fact, a certified class. 1999 U.S. Dist. LEXIS 12258, 1999 WL 608714, at *2. As the *Davis* court explained, "In *Gay*, a class had been certified at the time the Rule 68 offer was made, and in *Janikowski*, a motion for class certification was pending "during the ten days allotted by Rule 68 for acceptance or denial of the offer." *Id.*

(internal citations omitted). The Court explained, "In this case, plaintiff's conflict of interest is speculative at best. Despite the fact plaintiff styled her complaint as a class action, a class has not been certified nor has a motion for class certification been filed with the Court." *Id.*

The same result is warranted here. Like the plaintiff in *Davis*, Mr. Borup has not filed any motion to certify any class and, as such, any conflict between Mr. Borup and his hypothetical class or collective is entirely speculative.

### 3.    HCI's Offer is Appropriate Because There are No Time Constraints on Plaintiff's Class Pursuits

Further, there is no procedural pressure on Mr. Borup. "[P]re-class-certification *timing* of a Rule 68 Offer of Judgment is not a per se ground to strike the Offer" but is "nevertheless an important factor to be taken into consideration." *Portz v. St. Cloud State Univ.*, 2017 U.S. Dist. LEXIS 133406, *21 (D. Minn. April 19, 2017) (emphasis added). Where considerable time has passed since the putative collective or class complaint was filed, and yet no class or collective is certified, and other parties exist to promote the interests of any putative class or collective in the event a single plaintiff accepts the offer in question, there is simply no appropriate reason to strike a Rule 68 offer. Indeed, many of the cases upon which Plaintiff relies were decided on the basis that the named plaintiff had not had *time* to seek certification of his putative class or, in some cases, even know when such a motion would be due to file. *See e.g. Jancik v. Cavalry Portfolio Servs., LLC*, 2007 U.S. Dist. LEXIS 49500, *4 (D. Minn. July 3, 2007) (offers can be unfair where plaintiff is placed in a "race to the courthouse" *before the scheduling order issues,*

and where no other plaintiffs can step in as named plaintiff); *Boles v. Moss Codilis, LLP*, No. 10-1003, 2011 U.S. Dist. LEXIS 104466 (W.D. Tex. Sept. 15, 2011) (offer of judgment made ten days after motion to certify class was filed).

In fact, in the *Jancik* case, the Court found in the plaintiff's favor in part because it was "not a situation in which Plaintiff dragged his feet on bringing a proper motion for class certification. Plaintiff did so in a timely manner after the pretrial scheduling order was issued." 2007 U.S. Dist. LEXIS 49500, *10. In contrast here, so much time has passed in this litigation that the current scheduling order no longer applies; Plaintiff's motions for certification were due over a month ago, and there is no new deadline to replace that date (*see* Scheduling Order, Dkt. 19, Filed December 10, 2018, setting "filed and heard by" deadline for certification motions as April 1, 2019).[3] During that time, Plaintiff has filed four motions, appeared in New York to intervene in the *Gray* case, issued subpoenas to counsel who represent other former HCI contractors, and enlisted ten other plaintiffs to join his cause in this litigation. For his part, Mr. Snodgrass has elected to initiate another lawsuit against HCI for claims unrelated to Mr. Borup's claims (*see* Dkt. 86). This case plainly does not present the same concerns raised in *Portz* and *Jancik* regarding timing of an offer: Plaintiff has had ample time to effect the briefing and curiously aggressive strategy he and his counsel have chosen for class litigation. With all

---

[3] Any argument that HCI has somehow blocked Mr. Borup from seeking class certification is disingenuous. Since Mr. Borup filed his Complaint, he has served 48 requests for production on HCI, and as of the date of this brief, HCI will have produced over 24,000 pages of records, including contact information, time, and payroll data related to his putative class and collective – as defined in the Complaint (Deason Dec. ¶ 5).

due respect to his right to do so, HCI has an equal right to suggest settlement through the procedures available in the Federal Rules.

### C.    Borup May Accept HCI's Rule 68 Offer Without Court Approval

Mr. Borup would be entirely within his right to accept HCI's offer, with or without Court approval. First, nothing in HCI's offer suggests that – if Mr. Borup accepted it – it could not be subject to approval by the Court. Indeed, the offer anticipates a negotiated settlement agreement that the parties could certainly submit for court approval if they so negotiated or if they were instructed to do so (*see* Dkt. 104-6).

Nevertheless, Borup is wrong that such Court approval is required for a single-plaintiff FLSA settlement in this jurisdiction. The Eight Circuit has made clear that, while there is a "circuit split on whether to extend older Supreme Court cases so as to require judicial approval of *all* FLSA settlements," it has "never taken a side on this issue." *Barbee v. Big River Steel, LLC*, No. 18-2255, *3 (June 20, 2019). Borup makes much of the *Lynn Foods* decision from the Eleventh Circuit, requiring court approval of any FLSA settlement, but the Circuit Court that controls in this jurisdiction reminds us that while it has "noted" the *Lynn Foods* case, it has not made any similar holding. *Id.* *4. In fact, after explaining that in its recently decided *Barbee* case, the Eight Circuit went on to hold that private settlement of attorney fees in a pre-certification FLSA dispute was beyond the reach of Court approval entirely. *Id.* *4 ("we conclude that 29 U.S.C. § 216 does not require approval of settled attorney fees").

Plaintiff also relies heavily on the *Luna v. Del Monte Fresh Produce* case. 2008 U.S. Dist. LEXIS 21636 (N. D. Ga. Mar. 18, 2008). But, in that case, the Court had

already certified a collective action, and issued supervised notice to the putative collective, and the 42 offers in question were made to nearly all of the opt-in plaintiffs after the close of the opt-in period. *Id.* *34. The Court rightly concluded that, because the applicable law of that jurisdiction directed that *collective* settlements required court approval, the offers were invalid unless approved. *Id.* *34-36. Here, there is no certified collective or class, or even a motion requesting as much, and there is no controlling law requiring court approval of all FLSA settlements.

In fact, HCI's offer does more than the Eighth Circuit requires, because it provides a mechanism for the Court to assess the appropriate award of attorney fees if Mr. Borup were to accept the offer (*see* Dkt. 104-6). Contrary to his attorney's lamentations, nothing but his own strategy – or that of his lawyer – prevented Mr. Borup from accepting HCI's offer during the 14-day time period required by the Federal Rules.

### D.   HCI's Offer Meets the Procedural Requirements of Rule 68 and Was Made in Good Faith

#### 1.   Procedural Requirements

HCI's offer meets all the procedural requirements of Rule 68. The only requirements for a Rule 68 offer is that it be served, not be conditioned on later actions by the defendant, and include an offer by the defendant to accept judgment. *See* FED. R. CIV. P. 68. Contrary to Plaintiff's protestations, courts generally permit conditional offers, including those conditioned on traditional settlement and release terms. *Mite v. Falstaff Brewing Corp.*, 106 F.R.D. 434, 435 (N.D. Ill. 1985) (denying motion to strike offer of judgment that included conditions); 13 MOORE'S FEDERAL PRACTICE ch.68 § 68.05

(2004) (conditional offers acceptable); *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1022-23 (9th Cir. 2012) (principles of contract law apply; interpreting offer and parole evidence surrounding prior offer to determine whether offer included release of right to appeal).

### 2.   HCI's Offer Was Made in Good Faith

HCI's offer was also made in good faith. HCI did not offer "too much" to Mr. Borup. Even accepting that the standard is what Plaintiff describes – that the value of the offer must be for what the plaintiff "could reasonably expect to surpass at trial" (there is no such rule) – that is *precisely* what Mr. Borup was offered. HCI offered to Mr. Borup what his *own* expectation was; his records and testimony confirmed that when he decided to pursue litigation, he personally estimated that a settlement of $10,000 would be "worth it," and referenced what others had received in settlements from HCI when he did so: clear evidence that this figure is what Mr. Borup "reasonably expects" (*see* Borup Dep. at 78:5-18, Ex. 7). Borup's personal calculation of his damages would be $6,736.00 if liquidated, before any fee or service award, and apparently not including the claim for travel time that Mr. Borup later added to his claims (*see id.* at 85:2-21). Even Mr. Snodgrass himself set $10,000 as the maximum value of his client's claim (*id.* at 89:13-21, Ex. 10).  HCI offered him that, plus what the Court might order for fees (Dkt. 104-6). That is entirely reasonable.

### E.   HCI's Offer Has No Impact on the *Gray* Litigation

Throughout his motion, Plaintiff suggests that HCI's offer was somehow intended to undermine Mr. Borup's efforts to challenge the now-rejected settlement reached

between the parties in the *Gray* litigation. Plaintiff does not explain his basis for this belief.[4] As discussed herein, HCI's offer is only what it appears to be: an offer for Mr. Borup to resolve his personal claims for the amount his own records showed he desired. There is no nefarious subplot here. The Court should not strike HCI's offer of judgment.

## V.     CONCLUSION

HCI respectfully requests that the Court deny Borup's Motion and grant such further relief to which it may justly be entitled.


Date: June 28, 2019

*/s/ Claire B. Deason*
Jacqueline E. Kalk (#0388459)
Claire B. Deason (#0390570)
Corey J. Christensen (#0398314)
**LITTLER MENDELSON, P.C.**
1300 IDS Center
80 South 8th Street
Minneapolis, MN  55402.2136
Telephone: 612.630.1000

**ATTORNEYS FOR DEFENDANT THE CJS SOLUTIONS GROUP, LLC, D/B/A THE HCI GROUP**

---

[4] Though tempted, HCI declines to address the irony that Mr. Borup simultaneously complains that HCI's now-rejected settlement in the *Gray* case was not generous enough, while also complaining that HCI's offer to him was too generous. Somewhere between those two positions is the reality that HCI has been (and will always be) open to resolving claims in good faith where the parties, through their counsel, can agree.