UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TIMOTHY C. BORUP, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

THE CJS SOLUTIONS GROUP, LLC, d/b/a THE HCI GROUP,

Defendant.

Court File No. 0:18-CV-01647-PAM-DTS

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING TRAVEL TIME**

Jacqueline E. Kalk (#0388459)
Claire B. Deason (#0390570)
Corey J. Christensen (#0398314)
**LITTLER MENDELSON, P.C.**
1300 IDS Center
80 South 8th Street
Minneapolis, MN 55402.2136
Telephone: 612.630.1000

**ATTORNEYS FOR DEFENDANT THE CJS SOLUTIONS GROUP, LLC, D/B/A THE HCI GROUP**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORTIES .......... ii
I. INTRODUCTION .......... 1
II. FACTUAL BACKGROUND .......... 1
III. STANDARD OF REVIEW .......... 4
IV. ARGUMENTS AND AUTHORITIES .......... 4
A. Borup Was Not Employed at the Time the Travel Occurred. .......... 5
B. The Travel Was Non-Compensable Home to Work Travel. .......... 6
V. CONCLUSION .......... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 4

*Dalton v. Hennepin Home Health Care, Inc.*,
2016 U.S. LEXIS 108765 (D. Minn. Aug. 16, 2016) .......... 5

*Gibson v. Am. Greetings Corp.*,
670 F.3d 844 (8th Cir. 2012) .......... 4

*Imada v. City of Hercules*,
*138 F.3d 1294 (9th Cir. 1998)* .......... 8

*Integrity Staffing Sols. v. Busk*,
135 S. Ct. 513 (2014) .......... 5

*Kavanagh v. Grand Union Co.*,
192 F.3d 269 (2nd Cir. 1999) .......... 7

*Kuebel v. Black & Decker (U.S.) Inc.*,
2009 U.S. Dist. LEXIS 43846 (W.D.N.Y. May 18, 2009) .......... 7

*Pittard v. Red River Oilfield Servs., LLC*,
2017 U.S. Dist. LEXIS 206956 (S.D. Tex. Dec. 15, 2017) .......... 8

*Ricard v. KBK Servs.*,
2016 U.S. Dist. LEXIS 120483 (W.D. Wisc. Sept. 7, 2016) .......... 8

*Smith v. Aztec Well Servicing Co.*,
462 F.3d 1274 (10th Cir. 2006) .......... 9

*Vega ex rel. Trevino v. Gasper*,
36 F.3d 417 (5th Cir. 1994) .......... 9

*Wicke v. L&C Insulation, Inc.*,
2014 U.S. Dist. LEXIS 89193 (W.D. Wisc. July 1, 2014) .......... 6

**Statutes**

29 U.S.C. § 203(e)(1)-(g) .......... 5

# TABLE OF AUTHORITIES
## (CONTINUED)

**PAGE**

29 U.S.C. § 207(a)(1) .......... 4

29 U.S.C. § 254 .......... 5

Fair Labor Standards Act .......... 3, 4, 5

Portal-to-Portal Act. 29 U.S.C. § 254(a) .......... 4

**Other Authorities**

29 C.F.R. §§ 785.7-.11 .......... 4

29 C.F.R. § 785.35 .......... 5, 7, 9

FED. R. CIV. P. 56 .......... 4

## I. INTRODUCTION

Even if Mr. Borup was an employee of HCI (which he was not) and even if he was entitled to overtime pay for hours worked over 40 each week (which he was not), those compensable "hours worked" do not include the time he spent traveling via airplane and car to and from the Mayo Clinic in Rochester, Minnesota. First, any employment relationship between Borup and HCI began *after* his arrival in Minnesota, and ended *before* he left Minnesota. Second, Borup's travel to and from Minnesota amounted to ordinary non-compensable "home to work" travel. Third, because Borup was a passenger on a common carrier traveling on non-working days, the time spent traveling is not compensable. Finally, no genuine disputes of material fact suggest that Borup performed any work for HCI before, during, or after his travel. The Court should grant summary judgment to HCI on this claim, and hold that Borup's time spent traveling to and from the work site was not compensable.

## II. FACTUAL BACKGROUND[1]

The HCI Group is a technology company (Dkt. 1 ¶ 11; Dkt. 34-1 ¶ 2). It provides information technology solutions for the healthcare industry. HCI partners with several vendors to develop tailored technology solutions for medical record keeping, and then it assists in establishing that technology at the customer's hospital or clinic (Dkt. 34-1 ¶ 3).

After customer training, HCI manages a "go-live" event when the new technology begins managing records in real-time. The event begins on the first "live" day and

[1] HCI presents the facts in a light most favorable to Borup consistent with the standard for deciding HCI's Motion. HCI in no way admits or concedes any fact presented here. HCI expressly reserves the right to challenge each fact presented here at trial.

typically lasts several weeks (*id.* ¶ 5). Given the nature of medical care, this critical transition period requires constant attention to ensure that doctors and nurses use the new software confidently and without error while treating patients (*id.*)

HCI enlists consultants known as "ATEs" or "Implementation MDs" to work alongside or "at-the-elbows" of the healthcare provider's employees (*id.* ¶ 6). After May 2017, HCI began classifying all ATEs as non-exempt HCI employees with two exceptions: (1) a specialized group of salaried, exempt employees and (2) medical doctors (including resident and medical students) with specialized training engaged to work the "go-live" event at the Mayo Clinic in Rochester, Minnesota (*id.* ¶ 7). Mr. Borup was in the second group (*id.* ¶ 8). He worked for HCI only once, on the Mayo Clinic event, in May 2018 (*id.* ¶¶ 2-3). Borup himself acknowledges this fact: He admits that he worked for HCI from Friday, May 4, 2018 to Friday, May 25, 2018, and only during that time period (*id.* Ex. 2, Plaintiff Borup's Answers to Defendant's First Interrogatories, p.4).

Before the project began, Borup lived in Ohio (Deposition of T. Borup, attached hereto as Exhibit A, hereinafter "Borup Dep.", at 114:1-12). He worked with a recruiting company to coordinate travel to Rochester (*id.* at 166:1-11). In fact, an entire group of workers, known as "Logistics" coordinated air travel and hotels for the contractors working on the Mayo Clinic project (Borup Dep. 163:23-24).

On May 4, 2018, Borup flew from Columbus, Ohio through Chicago, Illinois, to the Rochester Regional Airport, leaving at 6:10 am and arriving at 9:05 am in Rochester, and then took an Uber rideshare from that airport to a hotel adjacent to the Mayo Clinic

(*id.* at 167:23-168:5; Ex. 22 (airline travel records)). Borup claims that 4 hours and 55 minutes of this time is "compensable out-of-town travel." (*id.* Ex. 2 p. 2). Borup did not perform any compensable work for HCI at any time before he arrived in Minnesota (*id.*)

Borup stayed in Rochester for the duration of his work on the Mayo Clinic project (*id*. at 166:12-14). He worked at the Mayo Clinic from 7:00 am to 7:00 pm each day, with a lunch break (*id.* at 153:19-154:5).

After finishing his work for HCI, on Saturday May 26, 2018, Borup took a shuttle from Rochester to Minneapolis, where he departed via airplane at 11:40 am for Grand Rapids, Michigan, arriving at 5:29 pm (*id.* at 168:9-18; Ex. 22). Borup flew to Grand Rapids because he had recently purchased property there, and needed to mow the lawn and measure rooms for his wife to plan furniture arrangements (*id.* at 166:19-167:8). Borup then rented a car to drive from Grand Rapids, Michigan back to his home in Columbus, Ohio (*id.*). He claims that 5 hours and 49 minutes of this time is "compensable out-of-town travel" (*id.* Ex. 2 p.6). Borup did not perform any compensable work for HCI after leaving Minnesota (*id.*)

Borup filed his Collective and Class Action Complaint and Jury Demand on June 13, 2018 (Dkt. 1). He alleges that HCI improperly classified him as an independent contractor in violation of the Fair Labor Standards Act ("FLSA") and Minnesota state law (Dkt. 1 p.1), and failed to compensate him for this "compensable out-of-town travel" (Dkt. 1; Borup Dep. Ex. 2 p. 6-7). However, even if Borup *was* an employee of HCI, his travel time on May 4 and May 26 was not compensable. Summary judgment to HCI is warranted on that claim.

## III. STANDARD OF REVIEW

Only a genuine and material factual dispute may defeat a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). HCI bears the burden to demonstrate that "no genuine issue as to any material fact" exists. FED. R. CIV. P. 56. Conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, does not create a "genuine issue" of "material fact." *E.g.*, *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 852 (8th Cir. 2012).

## IV. ARGUMENTS AND AUTHORITIES

Under the FLSA, unless otherwise exempt, an employee is entitled to overtime pay for hours worked over 40 in one workweek. *See* 29 U.S.C. § 207(a)(1).[2] Compensable time is time spent on a "principal activity" for the benefit of the employer, with the employer's actual or constructive knowledge. 29 C.F.R. §§ 785.7-.11. Congress limited the types of compensable hours when it passed the Portal-to-Portal Act. 29 U.S.C. § 254(a). Under the Act, employees are not entitled to wages for:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity; and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular

---

[2] For purposes of this Partial Motion for Summary Judgment only, HCI assumes – without conceding in any manner – that Borup was an employee of HCI for the time that he worked for the Company at the "go live" event at the Mayo Clinic in Rochester, Minnesota. This Motion describes that, *even if* Mr. Borup successfully demonstrates that he was an "employee" and not an "independent contractor" for HCI, he would still not be legally entitled to compensation for the time spent traveling to and from Rochester for the Mayo Clinic project.

> workday at which he ceases, such principal activity or activities.

*See* 29 U.S.C. § 254; *Dalton v. Hennepin Home Health Care, Inc.*, 2016 U.S. LEXIS 108765 at *6 (D. Minn. Aug. 16, 2016) ("The FLSA generally exempts employers from compensating employees for time spent 'traveling to and from the actual place of performance of the principal activity or activities" of employment.") (citing 29 U.S.C. § 254(a)). "Principal activities" are those that are an "integral and indispensable part of the principal activities", specifically those that are "an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform those activities." *Integrity Staffing Sols. v. Busk*, 135 S. Ct. 513, 517 (2014).

"Normal travel from home to work is not worktime." 29 C.F.R. § 785.35. "Travel that keeps an employee away from home overnight" is "clearly worktime" but "as an enforcement policy, the [Department of Labor does] not consider as worktime that time spent in travel away from home outside of regular working hours as a passenger on an airplane, train, boat, bus, or automobile." *Id.* § 785.39.

**A. Borup Was Not Employed at the Time the Travel Occurred.**

As a preliminary matter, Borup was neither employed by, or working for, HCI when he traveled on May 4 and May 26. An "employee" under the FLSA is "any individual employed by an employer," and "employ" means "to suffer or permit to work." 29 U.S.C. § 203(e)(1)-(g). It is undisputed that, before he arrived in Rochester, Borup performed no work for HCI whatsoever (Borup Dep. Ex. 2 p.6). Nothing in the record suggests that Borup performed any substantive work at all for HCI before

boarding his May 4 flight, or during the flight, or while he was a passenger in the rideshare Uber through Rochester. In fact, when his plane landed in Rochester at 9:05 am on Friday May 4, Borup had not even attended any orientation for the job, and he did not do so until later in the afternoon that day (Borup Dep. 114:23-115:1 ("When I arrived on Friday there was in the afternoon a limited two-hour session of kind of orientation")). Borup does not claim he worked at all during or after his flight, until the orientation later in the day.

The same is true for his travel home; by May 26, Borup was no longer employed by HCI (if he ever was at all). Indeed, Borup's own interrogatory response sets his last day of work for HCI as "Friday, May 25, 2018" – the day *before* his flight out of Minneapolis (*id.* p.4). Nothing in the record suggests that he was an employee of HCI on May 26, and Borup's own admissions indicate otherwise. Because Borup was neither employed by, or working for, HCI, when he traveled on May 4 and May 26, his travel time on those days is not compensable.[3]

**B. The Travel Was Non-Compensable Home to Work Travel.**

Even if Borup was an employee before his arrival in Minnesota on May 4, and after his last activities at the Mayo Clinic on May 25, his May 4 and May 26 travel was

[3] Borup's time traveling to and from Rochester is also not compensable because May 4 and May 26 were "nonworking days" for all the reasons described herein. "Travel time is *not* compensable when: 1) it occurs outside of the employee's regular working hours, whether on working or nonworking days, or 2) the employee is a passenger on a common carrier and his travel occurs during his regular working hours on nonworking days." *Wicke v. L&C Insulation, Inc.*, 2014 U.S. Dist. LEXIS 89193, *32 (W.D. Wisc. July 1, 2014) (*quoting Bassett v. TVA*, 2013 U.S. Dist. LEXIS 83203, *22-23 (W. D. Ky. June 13, 2013).

non-compensable "home to work" travel. "Normal travel from home to work is not worktime." 29 C.F.R. § 785.35. Federal courts "interpret 'normal travel' as used in [this] regulation, to refer to the time normally spent by a specific employee traveling to work. The term does not represent an objective standard of how far most workers commute or how far they may reasonably be expected to commute. Instead, it represents a subjective standard, defined by what is usual within the confines of a particular employment relationship." *Kavanagh v. Grand Union Co.*, 192 F.3d 269, 273 (2nd Cir. 1999) (time spent driving from home to work sites all over East Coast was "normal travel from home to work" for mechanic assigned to far-away worksites).

Here, the "normal" travel from home to work consisted of travel via plane and car to the Mayo Clinic. Borup testified that an entire group of workers, known as "Logistics" coordinated air travel and hotels for the contractors working on the project (Borup Dep. 163:23-24). For these types of intensive, short-term projects, a flight to and from the project location, with hotel stay for the duration of the work, was "normal" (*see id.*). And, Borup's travel via plane and car on May 4 and May 29 was from his home to work and back (*id.* Ex. 22; 166:19-167:8). This is "normal travel from home to work," and "is not worktime." 29 C.F.R. § 785.35.

The fact that Borup's travel kept him in Rochester for multiple days does not change that it was non-compensable "normal travel from home to work." *See* 29 C.F.R. § 785.35. "Home-to-work travel that is 'a contemplated, normal occurrence' of the employment is viewed as 'normal travel' under the regulation." *Kuebel v. Black & Decker (U.S.) Inc.*, 2009 U.S. Dist. LEXIS 43846, *26 (W.D.N.Y. May 18, 2009). In

*Imada v. City of Hercules*, the Ninth Circuit explained that travel need not be frequent, in order to be "normal" or "ordinary." 138 F.3d 1294, 1297 (9th Cir. 1998) (police officer's travel to remote site for three-day training program was non-compensable home to work travel; it was a "normal, contemplated and mandated incident of their employment" even though infrequent). Borup's commute need not be a daily commute to qualify as non-compensable "home to work" travel.

To hold otherwise would effectively "produce perverse incentives for workers who travel to remote job sites" because, "if their travel time were compensable, plaintiffs would then be strongly motivated to return home each night." *Ricard v. KBK Servs.*, 2016 U.S. Dist. LEXIS 120483, *3, *16 (W.D. Wisc. Sept. 7, 2016). Borup, and other plaintiffs, "could add up to six hours to [his] compensable time each day, merely by returning home, rather than staying near the job site," and much of that additional time "would have to be paid at overtime rates." *Id.* This "proposed interpretation of the travel rules would strongly encourage workers to undertake a great deal of inefficient and potentially unsafe travel." *Id.*

Indeed, federal courts have regularly held that even lengthy and arduous home to work travel is non-compensable. Courts note, "Plaintiff chose where he lived and how to get to and from work." *Pittard v. Red River Oilfield Servs., LLC*, 2017 U.S. Dist. LEXIS 206956 (S.D. Tex. Dec. 15, 2017) (time plaintiff spent driving for hours from his home in South Texas to project sites in New Mexico and West Texas was "traveling from home to work" and not compensable); *Ricard*, 2016 U.S. Dist. LEXIS 120483 at *15 (plaintiffs' time spent driving between 115 and 160 miles from home to worksites before start of

work was commute time and not compensable). "The fact that the travel time was so long does not make it compensable under the statute. . . The travel time was just an extended home-to-work-and-back commute." *Vega ex rel. Trevino v. Gasper*, 36 F.3d 417, 425 (5th Cir. 1994) (four hour commute was not compensable); *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274 (10th Cir. 2006) (three and a half hour commute was not compensable). The length of Borup's travel does not change that, for this particular work, it amounted to non-compensable home to work travel. 29 C.F.R. § 785.35.

## V. CONCLUSION

HCI respectfully requests summary judgment for Borup's claim for travel time, and requests that the Court hold that Borup's time spent traveling to and from the work site was not compensable, and grant any such relief to which HCI is justly entitled.

Date: August 12, 2019

*/s/ Claire B. Deason*

Jacqueline E. Kalk (#0388459)
Claire B. Deason (#0390570)
Corey J. Christensen (#0398314)
**LITTLER MENDELSON, P.C.**
1300 IDS Center
80 South 8th Street
Minneapolis, MN 55402.2136
Telephone: 612.630.1000

**ATTORNEYS FOR DEFENDANT THE CJS SOLUTIONS GROUP, LLC, D/B/A THE HCI GROUP**