# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Timothy C. Borup,
*Individually and on behalf of all others similarly situated*,

    Plaintiff,

v.

The CJS Solutions Group, LLC,
*d/b/a/ The HCI Group*,

    Defendants.

Case No. 18-cv-1647 (PAM/DTS)

**ORDER**

___

## INTRODUCTION

Plaintiff Timothy C. Borup moves to strike or otherwise invalidate the purported Rule 68 Offer of Judgment Defendant CJS Solutions Group, LLC ("HCI") made on June 12, 2019. Relying upon authority from this District and from other circuits and districts, Borup argues that—whatever the mechanism used—the Court must invalidate HCI's offer of judgment as premature in the context of a putative class and collective action. Offering competing authority, HCI contends the Court must wait to decide the issue later, if it has to decide it at all.

Although a Rule 68 offer of judgment offered solely to the named plaintiff in a putative class and collective action does not neatly square with the rules governing those types of actions, there is no reason to declare HCI's offer ineffective as the concern Borup raises does not exist and so will not come to roost.

## RELEVANT BACKGROUND

Borup alleges that HCI misclassified him and other "at the elbow" consultants as independent contractors and accordingly failed to provide appropriate overtime pay. He asserts two causes of action: (1) a violation of the federal Fair Labor Standards Act,

filed on behalf of himself and a putative FLSA collective, and (2) a violation of the Minnesota Fair Labor Standards Act, filed on behalf of himself and a putative Minnesota class. The case has proceeded at something short of breakneck speed. Stays, the result of both stipulation and the revelation of an undisclosed, related case in the Southern District of New York, as well as discovery issues, have stalled the normal case progression.

On June 12, 2019, HCI served Borup with a Rule 68 Offer of Judgment on his individual claim. The pertinent terms of the Offer provide:

> That Judgment be entered in Plaintiff's favor in the above-captioned case for a total sum of ten thousand and twenty five dollars and zero cents ($10,000) [sic], as well as any amount for costs of suit, attorneys' fees, and any and all other accrued costs that might be recoverable against Defendant in this action, to be determined by the Court. This Offer includes all valid claims for damages that Plaintiff has alleged against Defendant, as well as compensation for costs and reasonable attorneys' fees accrued up to the date of this Offer (to the extent that (a) reasonable attorneys' fees are included in "costs" recoverable for certain of Plaintiff's causes of action; and (b) Plaintiff has incurred any attorneys' fees).

Decl. of T. Joseph Snodgrass, June 21, 2019, Ex. F, at 1. The Offer further requires that "as a condition of this Offer, Plaintiff agrees to execute a mutually agreeable Settlement Agreement and Release for the purpose of releasing any and all claims against Defendant." *Id.* at 1-2.

Before the fourteen day period to accept HCI's Offer of Judgment elapsed, Borup filed the present motion to strike or otherwise invalidate the Offer.[1] That period elapsed,

---

[1] In a footnote, HCI demurs that it "has received no assurances that Mr. Borup's counsel, Mr. Snodgrass, shared HCI's offer with his client[,]" the "most basic tenant [sic] of settlement conduct[.]" Def.'s Opp. Pl.'s Mot. Strike 1 n. 1, Dkt. No. 106. HCI does not explain why opposing counsel should need to assure *it* that he is satisfying his ethical duties to his client. Nor will this Court infer misconduct absent even a scintilla of evidence. Mr. Snodgrass has assured the Court that he did in fact convey the offer to his client. July 25, 2019 Hr'g Tr. 5, Dkt. No. 121. If HCI is concerned that Mr. Snodgrass

however, before the hearing on the motion took place. Because Borup did not accept the Offer within the fourteen days, it is considered unaccepted and withdrawn. Fed. R. Civ. P. 68(a)-(b).

**ANALYSIS**

At least 14 days before trial, a defendant may offer to allow judgment to be entered against it for a specific amount, including the costs then accrued. Fed. R. Civ. P. 68(a). If the offeree declines, and subsequently obtains a judgment "not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." *Id.* at 68(c). The "plain purpose of Rule 68 is to encourage settlement and avoid litigation . . . . The Rule prompts both parties to a suit to evaluate the risk and costs of litigation, and to balance them against the likelihood of success upon trial on the merits." *Marek v. Chesny*, 473 U.S. 1, 5 (1985).

Borup makes several arguments as to why HCI's purported Rule 68 Offer of Judgment should be stricken or invalidated. But his argument that the Court should do so now, rather than during a hearing to determine costs, as would be the normal course, rests on a single key premise. If the Court fails to act now, Borup's theory goes, the Offer will create an intractable conflict between his personal interests and his obligations as a representative of the putative class. This is so because the Offer, exclusive of costs and attorney's fees, is greater than any personal award he could hope to obtain at a trial on the merits. He now faces significant pressure to settle, lest he bear the burden of all costs incurred subsequent to the Offer, which may outstrip any award in his favor.

---

has breached a legal or ethical duty, it should raise those concerns in the proper format—and do so "above the line."

3

HCI disagrees and argues that the matter is not ripe for decision and that the Court lacks the power to grant the relief Borup desires.

The Court will not grant Borup's motion. This is so not because the Court lacks the power to do so or because the matter is unripe. Rather, the sword of Damocles dangling over Borup's head does not present the disproportionately coercive threat he claims—or that HCI likely hoped it would.

## I.  The Divided Authority

The issue presented by the parties is not new. Almost every federal court to consider a Rule 68 offer of judgment to only the putative representative in the context of a class or collective action has concluded that, although Rule 68 may not directly conflict with either Rule 23 or the FLSA, they cannot be said to exist harmoniously. At the very least, Rule 68 offers seemingly undermine the purpose of class and (to a lesser extent) FLSA collective actions and the unique oversight role that courts have in such cases. Despite this consensus, courts have addressed motions like Borup's very differently. These courts and their approaches may be categorized into three "camps." *Gilmore v. USCB Corp.*, 323 F.R.D. 433, 434 (M.D. Ga. 2017); Jack Starcher, Note, *Addressing What Isn't There: How District Courts Manage the Threat of Rule 68's Cost-Shifting Provision in the Context of Class Actions*, 114 Colum. L. Rev. 129, 131 (2014).

The first camp grants the motion to strike a Rule 68 offer of judgment served upon a putative class representative before certification. This is the approach most frequently followed in this District. *See, e.g.*, *Johnson v. U.S. Bank Nat'l Ass'n*, 276 F.R.D. 330 (D. Minn. 2011); *Portz v. St. Cloud State Univ.*, Civ. No. 16-1115 (JRT/LIB), 2017 WL 450548 (Apr. 19, 2017), *R&R adopted by* 2017 WL 3588757 (D. Minn. Aug. 20, 2017); *Lamberson v. Fin. Crimes Serv., LLC*, Civ. No. 11-98 (RHK/JJG), 2011 WL

1990450 (D. Minn. Apr. 13, 2011).[2] As Magistrate Judge Keyes emphasized in *Johnson*, "[t]he purposes of Rules 68 and 23 are ill-served" by requiring a putative class plaintiff to evaluate the merits of a class certification motion, rather than the merits of the class claim itself. 276 F.R.D. at 335. Rule 23 requires the court to act to prevent a circumvention of the class action mechanism. *Id.* at 336. These courts conclude that the appropriate remedy to the immediate harm plaintiffs face is to strike the Rule 68 offer, *e.g.*, *id.*, and any qualms regarding the mechanism used "is the sort of technicality that elevates form over substance." *Lamberson*, 2011 WL 1990450, at *4.

A second, smaller group of district courts follows the policy reasoning of the first camp up until the question of the appropriate remedy. These courts note that, because the "offer of judgment is not filed with the court until accepted or until offered by a deferred party to prove costs," there is nothing in the record to strike. *McDowall v. Cogan*, 216 F.R.D. 46, 51 (E.D.N.Y. 2003). This is not a problem, however, because their preceding analysis demonstrated that a pre-certification offer of judgment has no legal significance whatsoever. *Id.* These courts thus deny the motion to strike itself, but offer relief by declaring a pre-certification offer a legal nullity.

The final cohort—and the approach urged by HCI—emphasizes a plain reading of Rule 68 and provides the moving plaintiff with no relief or guidance. Nothing in the Rule itself prevents a defendant from serving an offer of judgment on an opposing party

---

[2] The caselaw demonstrates a split among the magistrate judges of this District as to whether motions to strike Rule 68 offers should be addressed by order or R&R. This Court views the present motion as falling within its authority to "[h]ear and determine any pretrial matter pending before the court" other than certain dispositive motions. D. Minn. LR 72.1(a)(2). Further, and as discussed below, the Supreme Court's decision in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), vitiated the concern expressed by some magistrate judges that a decision on the motion to strike implicates the continued existence of subject matter jurisdiction, as the mere *offer* of judgment satisfying the named plaintiff's personal claim once mooted the entire action.

5

simply because the case is a putative class or collective action. 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3001.1 (3d ed.). Without a *per se* bar on Rule 68 offers in class actions, these courts deem any pre-judgment motion regarding the offer to be purely advisory and so offer no guidance to the concerned plaintiff. *E.g.*, *Combe v. Goodman Frost, PLLC*, 217 F. Supp. 3d 986, 988-90 (E.D. Mich. 2016).

## II. Shortcomings of the Existing Authority

Both Borup and HCI urge the adoption of one of these three camps. Borup would have the Court adopt either of the first two approaches, as the relief under each would be satisfactory. HCI would rather its Offer remain effective. Analytically, however, none of the three approaches is wholly satisfying.

By its terms, Rule 68 does not create an exception for class or mass actions.[3] So, to the extent that an issue exists to be resolved, it is created by a conflict between the purposes, not the language, of Rule 68 and Rule 23. Those courts that strike or declare ineffective pre-certification Rule 68 offers have generally pointed to Rule 23 as the source of their authority to resolve the perceived conflict, specifically a court's obligation to review a settlement for fairness.[4] *E.g.*, *Johnson*, 276 F.R.D. at 336;

---

[3] A proposed but unadopted 1983 amendment to Rule 68 would have excluded class actions from the Rule's embrace entirely. Roy D. Simon, Jr., *The Riddle of Rule 68*, 54 Geo. Wash. L. Rev. 1, 11-12 (1986). Failed amendments are rarely useful in analyzing a rule as it actually exists. That is particularly true here, as the 1983 proposal included numerous changes to Rule 68, many of which were opposed by the plaintiffs' bar, a group who would presumably support an explicit carveout for class actions. *Id.* at 12-16 (recounting the debate surrounding the proposed amendment).

[4] The parties dispute whether an analogous requirement exists under the FLSA, a question neither the Supreme Court nor the Eighth Circuit has squarely answered. As the Supreme Court has noted, "Rule 23 actions are fundamentally different from collective actions under the FLSA," and so individual Rule 68 offers to named collective

*Gilmore*, 323 F.R.D. at 435. But Rule 23 does not expressly grant a court the authority to strike filings from the docket. Nor does such authority spring logically from the power vested by the Rule to issue orders addressing procedural matters or "impos[ing] conditions on the representative parties." Fed. R. Civ. P. 23(d)(1). Further, even if it previously bestowed such power, the 2003 amendments to the Rule make clear that no court supervision is required for settlement of a putative class representative's individual claims. *Id.* at 23(e) advisory committee's note to 2003 amendment. This 2003 amendment also undermines a key premise of those courts that held a pre-certification offer simply to be without legal force because a putative class was previously presumed proper for purpose of settlement. *See, e.g.*, *McDowall*, 216 F.R.D. at 50 (relying upon the pre-2003 Rule 23(e) and pre-amendment caselaw). That is a presumption this Court can no longer make.

On the other hand, taking no action gives the imprimatur to conduct that, in this Court's view, goes beyond "the strategic nature of our adversary system," *Combe*, 217 F. Supp. 3d at 988, without sufficient consideration. True enough, Rule 68 itself provides no carveout for class or mass actions, nor does it grant the power to strike. But the "Federal Rules of Civil Procedure are designed to be interdependent[,]" and courts "should harmonize the rules" whenever possible. *Weiss v. Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004), *invalidated on other grounds by Campbell-Ewald Co. v.*

---

representatives do not exert the same coercive force as they do to putative class representatives. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013). *But see Nash v. CVS Caremark Corp.*, 683 F. Supp. 2d 195, 199-200 (D.R.I. 2010) (reasoning that "FLSA actions are more vulnerable to manipulation than Rule 23 actions" because filing a complaint in the class context tolls the statute of limitations, but the same is not true for FLSA opt-in actions and so defendants can "bleed value" out of an FLSA pool). Regardless, the answer to that question does not affect the analysis of the current issue: whether a Rule 68 offer of judgment can—and should—be invalidated now.

*Gomez*, 136 S. Ct. 663 (2016). There is certainly disharmony between the purpose of Rule 23 and the intent of defendants to such actions (if not Rule 68 itself) to use offers of judgment to "pick off" named plaintiffs.[5] And although neither Rule 68 nor Rule 23 expressly authorize a court to invalidate such an offer, Rule 1 commands that all of the rules "should be construed, administered, and employed by the court and the parties to secure the *just*, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis supplied); *cf. Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966) ("These rules were designed in large part to get away from some of the old procedural booby traps which common-law pleaders could set . . . ."). From this authority to administer the rules justly must come certain powers, like those inherent to a court, "necessary to the exercise of all others." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980).

Similarly, any concern that the question is "unripe" for judicial decision is misplaced. Although both parties (and the authority they proffer) speak of "ripeness," they do not actually invoke that particular doctrine of justiciability. *See* 13B Wright & Miller, *supra*, at § 3532 (3d ed.) (noting that the ripeness doctrine does not include "the occasional practice of concluding that an issue that need be resolved only on the outcome of another as-yet decided issue is not 'ripe' for present decision"). It may be unwise, in the normal course, to consider the validity of a Rule 68 offer, if only because the Rule itself makes evidence of an unaccepted offer inadmissible prior to proceedings

---

[5] HCI's argument that *Campbell-Ewald* ended all "picking off" of named plaintiffs is a non-starter. The Supreme Court merely held that an unaccepted offer cannot moot a putative class action. *Campbell-Ewald*, 136 S. Ct. at 666. Courts have recognized mootness as one of two pre-certification pick off strategies. *Campbell-Ewald* did not consider the other tactic, threatening the named plaintiff with significant cost-shifting, which is arguably at play here. *Gilmore*, 323 F.R.D. at 434 n. 3.

to determine costs. Fed. R. Civ. P. 68(b). But the question here, properly framed, is whether an otherwise valid offer of judgment is enforceable when made to the putative class plaintiff in his individual capacity prior to certification. That is a pure question of law that requires neither a review of the content of the Offer nor the occurrence of some future contingency. In this sense, the issue is, for lack of a better term, ripe because the future conduct of the parties "will probably depend, at least in part," on the resolution of the issue, thus giving the question "current significance." *United States v. Johnson*, 352 F.3d 339, 342 (8th Cir. 2003) (finding an issue "ripe" where it concluded that a trial on the second indictment would "probably depend, at least in part," on its resolution of the issue). That is, of course, the whole point of the "pick off" strategy, and HCI offers no reason why this purely legal issue cannot be decided now.

### III. The Rule 68 Offer at Hand

Recognizing the shortcomings of the approaches urged by the parties does not resolve the issue they bring to the Court. How, then, to proceed? As explained above, this Court possesses the authority to address Borup's motion, even if "striking" the unfiled Offer is not the appropriate relief to be granted. And the narrow issue—whether the Rule 68 Offer is invalid by virtue of being served pre-certification—is "ripe" insofar as it relies upon no future contingencies.

Still, this Court will deny Borup's motion. Prior analyses of the cost-shifting "pick off" strategy assumed that it forces named plaintiffs in putative class actions to pit the risk of bearing all the costs of a complex litigation against the relatively modest personal award they could expect to recover. Careful consideration of this premise shows it to be false: Borup faces no meaningfuly greater cost-shifting risk in the face of the Offer of Judgment than he would if he brought the action solely on his own behalf. A sword still

9

dangles above his head, to be sure. But it is precisely the sword Rule 68 intended, and is not made uniquely perilous by Borup's status as putative class representative. As such, there is no reason to invalidate HCI's Rule 68 Offer at this time.

The easiest way to understand why HCI's Rule 68 Offer, if valid, does not pose an outsized threat in this case is to examine each of the possible future contingencies.[6] As a preliminary matter, it is important to note that Borup, individually or as part of a class and collective, may never obtain a judgment against HCI. For example, the case may settle or, if it goes to trial, HCI may win. If so, then the Rule 68 Offer is irrelevant. *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 351-52 (1981) (holding that an unaccepted Rule 68 Offer is "simply inapplicable" where the plaintiff does not obtain a favorable judgment). That may be cold comfort to Borup, but it does not alter the irrelevance of the Offer in those outcomes.

What about the scenarios in which Borup, in some fashion, obtains a judgment against HCI? First, if the class action is certified (Scenario 1), the Rule 68 Offer would be a nullity as to that claim, regardless of the judgment ultimately obtained. The Rule requires that the judgment the "*offeree* finally obtains" be no more favorable for costs to shift. Fed. R. Civ. P. 68(d) (emphasis supplied). "[A] putative class acquires an independent legal status once it is certified under Rule 23." *Genesis Healthcare Corp.*, 569 U.S. at 75. It follows that, upon certification, the "opposing party" in the action transforms from the named plaintiff to the class. *E.g.*, *Kremnitzer v. Cabrera & Rephen, P.C.*, 202 F.R.D. 239, 243-44 (N.D. Ill. 2001). When an offer of judgment is only to the

---

[6] A diagram of these contingencies is also attached to this Order. Showing how all possible contingencies lead to the same relevant conclusion also demonstrates why a determination of this issue is not reliant upon any as-yet undecided issues.

named plaintiff, that offer necessarily disappears upon certification, as did the named plaintiff who now stands in the shoes of the entire class. *Id.*

The collective action (Scenario 2) claim muddies the analytical waters. The Supreme Court has stated that "Rule 23 actions are fundamentally different from collective actions under the FLSA," as conditional certification does not grant an independent status to the collective. *Genesis Healthcare Corp.*, 569 U.S. at 74-75. Even if the collective survives a subsequent decertification motion, there is still no independent legal entity. The FLSA refers to opt-in employees as "party plaintiffs," so opt-in plaintiffs hold the same relationship to the case as does the named plaintiff. 29 U.S.C. § 216(b); *see generally* Allan G. King & Camille C. Ozumba, *Strange Fiction: The "Class Certification" Decision in FLSA Collective Actions*, 24 Lab. Law. 267 (arguing that FLSA collective actions are mass actions with relaxed joinder requirements, and that courts improperly analogize such to Rule 23 class actions). Despite the lack of an independent entity, courts may proceed on representative evidence and enter a single judgment for all plaintiffs as individuals, although the judgment will reflect the aggregated damages of all the party plaintiffs. *See, e.g.*, *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1247, 1258 (11th Cir. 2008).

Regardless of how a judgment would be entered in Borup's favor on the collective claim, he would not face a unique liability as the first person to bring the action. If he and any opt-in plaintiffs receive a single judgment for all of their damages, such a judgment would almost assuredly be "more favorable" than the Rule 68 Offer, and he would not face costs as the Rule speaks of a "judgment," not an offeree's share of such. Fed. R. Civ. P. 68(d). If the judgment Borup receives is not more favorable, either because a single judgment for nominal damages is entered or because individual

judgments are entered for each party plaintiff, he would then face the cost-shifting provision of Rule 68. But this is subject to two important caveats.

First, Borup would face only shifting costs—not attorney's fees. In *Marek v. Chesny*, the Supreme Court held that Rule 68's award of costs refers to "all costs properly awardable under the relevant substantive statute or other authority." 473 U.S. at 9. It then concluded that, since the underlying statute at issue expressly awarded attorney's fees to a prevailing party "as a part of costs . . . , such fees are subject to the cost-shifting provision of Rule 68." *Id.* The FLSA's attorney's fee provision is distinguishable from that at issue in *Marek*, and so attorney's fees in this case are not part of the costs for Rule 68 purposes. Unlike the statute in *Marek*, which awarded attorney's fees to the "prevailing party," the FLSA allows "a reasonable attorney's fee *to be paid by the defendant* . . . ." 29 U.S.C. § 216(b) (emphasis supplied). Numerous courts, including the Eighth Circuit, have concluded that Rule 68 allows for the shifting of attorney's fees only if it is a "two way fee-shifting statute." *Hescott v. City of Saginaw*, 757 F.3d 518, 528 (6th Cir. 2014); *O'Brien v. City of Greers Ferry*, 873 F.2d 1115, 1120 (8th Cir. 1989). Moreover, the *Marek* Court emphasized that, in the statute at issue there, "Congress expressly included attorney's fees as 'costs' available to the plaintiff . . . ." *Marek*, 473 U.S. at 9. By contrast, the FLSA speaks of attorney's fees and costs as separate items. 29 U.S.C. § 216(b) (providing for "reasonable attorney's fees to be paid by the defendant, and costs of the action"). So attorney's fees awarded pursuant to the FLSA are not properly awardable "costs" to be shifted under Rule 68.

Second, in evaluating any costs to be shifted to Borup as an individual, the Court would almost certainly pro rate the costs to those reasonably attributable to Borup's personal claim. In a FLSA collective action, each opt-in member is a party plaintiff,

giving them the same status in the case as the named plaintiff. *Prickett v. DeKalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003). Yet HCI's Offer was made only to Borup. As HCI acknowledges, had Borup accepted the Offer, one of the existing opt-in plaintiffs could continue the action. Logically, then, any reasonable shifting of costs cannot include "any and all costs" of a multi-plaintiff action that HCI concedes it would continue to litigate had Borup accepted its Offer. Rather, Rule 68's reference to costs must be only those properly attributable to the offeree, Borup, who had the chance to receive a better personal judgment but rejected it.

Of course, Borup may fail to get either the class or collective actions certified (Scenario 3), but may still obtain a judgment against HCI on his individual claims. If the judgment is more favorable than the Offer, then costs will not shift. Fed. R. Civ. P. 68(d). If the judgment is not more favorable, then Borup will be liable for costs incurred after HCI served its Offer of Judgment, but subject to the same limitations and pro rata analysis previously discussed.

To summarize, Borup does not face the threat of a disproportionate liability for costs that animates his request for immediate relief. First, an award of costs will only be made if class certification is denied and an individual judgment is entered in Borup's favor for less than $10,000. In that event, Borup will be liable only for costs and not attorney's fees. This fact alone dilutes the threat. And what costs will Borup be required to shoulder in that event? Only those "costs properly awardable under the substantive statute or other authority" are shifted. *Marek*, 437 U.S. at 9. Because the FLSA speaks generically of "costs," which it does not define, 29 U.S.C. § 216(b), costs subject to

shifting are only those available in 28 U.S.C. § 1920.[7] *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). Rule 68 does not require by its terms that the court award all costs incurred "in the action." Rather, Rule 68 shifts "costs" incurred after a triggering event, but its language relates those costs to the judgment obtained by the "offeree." Though Rule 68 takes away the district court's discretion *whether* to shift costs, it does not eliminate its discretion in determining the amount of such costs that are subject to shifting. This would seemingly permit the court to limit its award of costs to those fairly attributable to Borup's individual claim, either by pro-rating the total costs or not shifting costs solely attributable to efforts aimed at certification.[8]

The upshot is that Borup will not face a meaningfully greater shift in costs than he would had he brought this action solely on his own behalf. As such, HCI's Rule 68 Offer of Judgment does not create the conflict of interest that has troubled those courts to have considered the issue before. Absent this conflict, there is no basis for granting Borup the immediate relief he requests. His motion is denied.

## ORDER

IT IS HEREBY ORDERED that Borup's Motion to Strike or Otherwise Invalidate Defendant's June 12, 2019 Rule 68 Offer of Judgment [Dkt. No. 101] is DENIED.

Dated: October 8, 2019                                       s/David T. Schultz
                                                             DAVID T. SCHULTZ
                                                             United States Magistrate Judge

---

[7] 28 U.S.C. § 1920 contains a restrictive definition of taxable costs that excludes the largest monetary items of attorney's fees and party-retained expert fees.

[8] Moreover, if a collective is certified but a class is not, future plaintiffs will need to opt in (as some have already done). That process may provide an opportunity for Borup to further protect himself from shouldering the burden of costs that are shifted.