UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Timothy C. Borup,<br>Individually and on behalf of<br>all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>The CJS Solutions Group, LLC<br>d/b/a The HCI Group,<br><br>    Defendant. | Civ. No. 18-1647 (PAM/DTS)<br><br><br><br><br><br><br><br><br><br>**MEMORANDUM AND ORDER** |
| Joyce Vallone and<br>Erasmus Igokor, individually<br>and on behalf of all others<br>similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>The CJS Solutions Group, LLC<br>d/b/a The HCI Group,<br><br>    Defendant. | Civ. No. 19-1532 (PAM/DTS) |

This matter is before the Court on four Motions in these related cases. For the following reasons, the Motions to Compel Arbitration are denied, the Motion to Dismiss is denied, and the Motion for Summary Judgment is granted in part and denied in part.

**BACKGROUND**

The full background of these cases is set forth in previous Orders and will not be repeated here. In brief, Plaintiffs contend that Defendant The CJS Solutions Group d/b/a

The HCI Group ("HCI") failed to sufficiently pay them for their time when they worked at the Mayo Clinic in Rochester. Plaintiffs are what is known as "at the elbow" workers, who assisted physicians, nurses, and others at the Mayo Clinic with the transition to a new computerized patient-management system.

Although the cases are related, Plaintiffs in these two actions raise slightly different claims. In <u>Vallone</u>, Plaintiffs contend that the Fair Labor Standards Act ("FLSA") requires HCI to pay them for the time they spent traveling from their homes or other remote locations to the Mayo Clinic and back to the remote location at the end of their assignments. The <u>Vallone</u> Plaintiffs also contend that they traveled to Rochester on April 29, 2018, at HCI's direction, only to have training that had been scheduled for April 30, 2018, cancelled abruptly late in the evening of April 29. The Court conditionally certified a FLSA collective in January 2020, but notice to the collective has yet to issue.

Plaintiffs in <u>Borup</u> are individuals with specialized medical training—usually physicians, medical residents, or medical students—who were "at the elbow" workers at the Mayo Clinic. Although since May 2017 HCI has characterized most at-the-elbow workers as employees for FLSA purposes, it has not done so for these medically trained individuals. Thus, although the <u>Borup</u> Plaintiffs contend that travel time should be included in the hours they worked for HCI, at bottom their claim is for misclassification under the FLSA. Plaintiffs in <u>Borup</u> have not moved to certify either a FLSA collective or a Rule 23 class action, although several individuals have filed consents to participate in the case as Plaintiffs.

**DISCUSSION**

HCI has brought four different Motions: a Motion to Compel Arbitration in both Borup and Vallone, a Motion to Dismiss nationwide class allegations and one opt-in Plaintiff in Borup, and a Motion for Summary Judgment in Vallone. The Court will address each Motion in turn.

**B.     Motions to Compel Arbitration**

The dispositive issue in these substantively identical Motions is whether the Court or the arbitrator should decide whether HCI waived its right to compel arbitration by litigating this case before invoking its alleged right to arbitrate the disputes. HCI argues that the agreements give the arbitrator the exclusive authority to determine even the litigation-waiver issue, while Plaintiffs contend that the Court should decide litigation waiver.

HCI correctly observes that Courts routinely uphold arbitration clauses that delegate issues of arbitrability to the arbitrator. But HCI does not cite a single case in which a court left to the arbitrator to determine whether a party's litigation conduct amounted to a waiver of its arbitration rights. And the cases in which courts themselves make this determination are legion, likely because waiver does not go to the "applicability, enforcement, or formation" of the agreement to arbitrate (Goerke Decl. Ex. 1  (Docket No. 169-1 in 18cv1647) at 2), but rather goes to whether a party's conduct before the Court should estop the party from later forcing its opponent to re-litigate in an arbitral forum that which has already been litigated. And "[e]very circuit that has addressed this issue—whether a district court or an arbitrator should decide if a party waived its right to arbitrate through litigation conducted before the district court—has reached the same conclusion." Martin

3

v. Yasuda, 829 F.3d 1118, 1123 (9th Cir. 2016) (citing cases from First, Third, Sixth, and Eleventh Circuits); see also Vine v. PLS Fin. Servs., Inc., 689 F. App'x 800, 802 (5th Cir. 2017) (recognizing that "when waiver depends on the conduct of the parties before the district court, the court, not the arbitrator, is in the best position to decide whether the conduct amounts to a waiver under applicable law") (quotation omitted).

So, for example, even when an arbitration agreement provided, "All disputes, claims, or controversies arising from or relating to this Agreement or the relationships which result from this Agreement, or the validity of this arbitration clause or the entire Agreement, shall be resolved by binding arbitration," the Court of Appeals reviewed the district court's litigation-waiver determination without any discussion of the propriety of the court making that determination in the first instance. Lewallen v. Green Tree Servicing, L.L.C., 487 F.3d 1085, 1088 n.3 (8th Cir. 2007). A waiver of the right to arbitrate "implicates courts' authority to control judicial procedures or to resolve issues . . . arising from judicial conduct." Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 219 (3d Cir. 2007) (quotation omitted) (emphases in original). Thus, HCI is mistaken that the Court has no power to determine whether it waived its right to arbitrate these disputes.[1]

### 1.     **Elements of Litigation Waiver**

To determine whether a party has waived its right to arbitration, the Court examines whether the party "(1) knew of its existing right to arbitration; (2) acted inconsistently with

---

[1] To the extent HCI contends that the Supreme Court's recent decision in Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612 (2018), means that an arbitrator should determine the litigation-conduct waiver issue, in mid-May 2020, the Eighth Circuit evaluated this Court's resolution of the litigation-conduct issue without mentioning that this issue was something an arbitrator should determine in the first instance. Sysco Minn., Inc. v. Teamsters Local 120, No. 18-3491, --- F.3d ---, 2020 WL 2464922 (8th Cir. May 13, 2020).

that right; and (3) prejudiced the other party by its inconsistent actions." Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc., 589 F.3d 917, 920 (8th Cir. 2009) (quotation omitted). However, "in light of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitrability should be resolved in favor of arbitration." Dumont v. Saskatchewan Gov't Ins., 258 F.3d 880, 886 (8th Cir. 2001) (quoting Ritzel Commc'ns v. Mid-Am. Cellular Tel. Co., 989 F.2d 966, 968–69 (8th Cir. 1993)).

Here, there is no dispute that as of October 2018, HCI knew that its employees had begun signing agreements to arbitrate disputes that would ostensibly require even arbitration of pre-existing disputes. Thus, the only questions for the Court to resolve are whether HCI acted inconsistently with that right and whether Plaintiffs in these two cases were prejudiced as a result.

"A party acts inconsistently with its right to arbitrate if the party 'substantially invokes the litigation machinery before asserting its arbitration right.'" Lewallen, 487 F.3d at 1090 (quoting Ritzel Commc'ns, 989 F.2d at 969). "To safeguard its right to arbitration, a party must 'do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration.'" Id. at 1091 (quoting Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 1995)).

HCI first argues that it did not act inconsistently with any agreement to arbitrate because Borup is not a collective action and the only named Plaintiff, Borup himself, did not sign an arbitration agreement. Thus, according to HCI, it had no cause to invoke the arbitration agreement. But the first individuals opted in to this litigation in February 2019 (Docket No. 36), and three of those individual Plaintiffs are the subject of this Motion to

5

Compel. Thus, as of February 2019, HCI knew that it could raise arbitration as a defense to those individuals.

Yet HCI did not mention anything about agreements to arbitrate while litigating motions to compel discovery, a motion to stay, including appeals of various decisions of the Magistrate Judge, or even HCI's motion for partial summary judgment, which was filed in July 2019 and heard in September 2019, a full year after HCI began requiring employees to sign arbitration agreements and six months after employees who signed those agreement opted in to this case. HCI did not mention the word "arbitration" in its motion for partial summary judgment. Not until after the hearing on the motion for partial summary judgment did HCI tell the Vallone Plaintiffs that it had begun requiring employees to sign arbitration agreements in "late 2018." HCI did not move to compel arbitration in Vallone, either, however, waiting more than three more months until the briefing on the motion for collective certification in January 2020 to inform Plaintiffs that HCI intended to enforce the arbitration agreements and to move to compel arbitration.

Moreover, in its pleadings, HCI repeatedly stated that it was propounding defenses not only for Borup's claims, but for "the claims of some or all of the class of allegedly similarly situated persons." (Docket No. 14 at 14.) HCI knew that there could be other Plaintiffs involved in the litigation and asserted defenses accordingly. It is only after receiving unfavorable rulings that HCI claims arbitration rights that have existed since the inception of the litigation, or very shortly thereafter. (See Docket No. 183 at 11 (arbitration agreement one opt-in Borup Plaintiff signed with HCI in 2017.)

There can be no doubt that HCI "substantially invoke[d] the litigation machinery" in both matters. See Messina v. N. Cent. Distrib., Inc., 821 F.3d 1047, 1050 (8th Cir. 2016)

6

(noting that a party "acted inconsistently with its right to arbitrate by proceeding in court for more than eight months before asserting that right"). Like the party at issue in Messina, HCI "had several opportunities to seek arbitration after" being on notice of the claims "and it let each of those opportunities pass." Id. (quotation omitted). And as Plaintiffs point out, HCI has continued to settle and mediate claims in other cases, such as the Gray matter currently pending before the Court for a settlement approval, without ever suggesting that any of those plaintiffs are bound to arbitrate claims that are the same as those raised in Borup and Vallone.

The timing of HCI's motions in Borup and Vallone—coming after the Court granted Vallone's motion for collective certification, "demonstrates that it 'wanted to play heads I win, tails you lose,' which 'is the worst possible reason' for failing to move for arbitration sooner than it did." Messina, 821 F.3d 1051 (quoting, inter alia, Hooper, 589 F.3d at 922). HCI's conduct in this case meets the second prong of the test for litigation waiver.

**2.     Prejudice**

"Prejudice from a failure to assert an arbitration right occurs when, for example, 'parties use discovery not available in arbitration, when they litigate substantial issues on the merits, or when compelling arbitration would require a duplication of efforts.'" Messina, 821 F.3d at 1051 (quoting Kelly v. Golden, 352 F.3d 344, 349 (8th Cir. 2003)). "Whether inconsistent actions constitute prejudice is determined on a case-by-case basis." Stifel, Nicolaus & Co. v. Freeman, 924 F.2d 157, 159 (8th Cir. 1991). Thus, there was no prejudice where "no issues were litigated" and the parties conducted only "limited discovery" in the six months between the lawsuit's filing and the arbitration demand. Id.

There can be no doubt that Plaintiffs in Borup have been prejudiced. They have conducted extensive discovery, litigated multiple motions before the Magistrate Judge, and even fully briefed a dispositive motion before this Court. While some of this discovery might be of use in an arbitration, Plaintiffs can never recoup the substantial funds they have expended engaging in litigation in this Court, which has been extremely hard-fought. And HCI's delay means that Borup and any opt-in Plaintiffs will be required to wait even longer for a decision on the substantive issues in the case, decisions that have already waited for nearly two years. This deprives both parties of the main purpose of arbitration: "efficient and low-cost resolution of disputes." Lewallen, 487 F.3d at 1094 (quotation omitted). Moreover, "[i]t is sufficient [that HCI] forced Plaintiffs to litigate substantial issues on the merits, and compelling arbitration would require a duplication of effort, because an arbitration provision . . . does not go so far as to allow or encourage the parties to proceed . . . sequentially, in multiple forums." Hooper, 589 F.3d at 923-24 (citation and quotations omitted).

The prejudice in Vallone is less than that in Borup, because Vallone had notice that HCI would seek to enforce its arbitration rights just over six months after the suit was filed. But even so, given that this case has been extremely contentiously litigated from the beginning, and given that HCI has taken such inconsistent positions with regard to arbitration in these cases as opposed to the numerous other cases it has litigated around the country, the Vallone Plaintiffs have also sufficiently established prejudice.

The Motion to Compel Arbitration is therefore denied.

**C.      Motion to Dismiss in <u>Borup</u>**

In <u>Vallone</u>, the Court found that it could exercise personal jurisdiction over HCI—a Florida corporation with its headquarters in Florida—only for claims arising out of work in Minnesota or by Minnesota Plaintiffs. HCI contends that this decision means that the <u>Borup</u> Plaintiffs' claims of nationwide misclassification and the claim of opt-in Plaintiff Jonathan Backers, who did not work on the Mayo project, must be dismissed. In <u>Vallone</u>, the Court determined that HCI's due-process affirmative defense was sufficient under the circumstance of that case to plead the lack of personal jurisdiction as a defense. HCI's affirmative defense in <u>Borup</u> is the same as in <u>Vallone</u>: "Certification of a collective or class action . . . would constitute a denial of Defendant's Due Process rights, both substantive in procedural, in violation of the Fourteenth Amendment to the United States Constitution." (Answer (Docket No. 14) ¶ 10.) As the Vallone Order stated, "While the Court would prefer that parties more explicitly raise jurisdiction as a defense in their pleadings, the Court is reluctant to deprive a party of its constitutional rights on the basis of inartful pleadings." (Docket No. 49 at 4.)

In February of this year, after the Court's ruling in <u>Vallone</u> and more than a year after the deadline to amend, HCI moved to amend its Answer to specifically plead a personal-jurisdiction defense. HCI also filed this Motion seeking dismissal of Backers and the nationwide class on the basis of lack of personal jurisdiction.

The <u>Borup</u> Plaintiffs argue that the <u>Vallone</u> decision was incorrect and that the procedural posture in <u>Vallone</u> was different than that here. Plaintiffs note that HCI is asking the Court to approve the <u>Gray</u> settlement despite that it includes individuals in the putative collective who did not work on the Mayo project. Plaintiffs also point out that

9

HCI has never argued in Gray or in any of the many other nationwide class actions brought against HCI that the Court lacks personal jurisdiction over HCI for claims of individuals who worked outside the forum.

### 1. Failure to Plead

Plaintiffs first ask the Court to determine that HCI waived the defense of personal jurisdiction by failing to specifically plead it at the earliest opportunity. HCI contends that because Borup worked in Minnesota, it did not have any personal-jurisdiction defense as to him and thus could not have pled that defense. That argument is wholly without merit. HCI knew from the Complaint that Borup contemplated a nationwide FLSA collective. And Backers opted in to the collective in February 2019; thus, HCI knew at that time that there were Plaintiffs who did not work in Minnesota. HCI did nothing for a year to assert personal jurisdiction as a defense.

However, as in Vallone, the Court is reluctant to deprive a party of the right to assert a defense on the basis of poor pleading. Thus, for purposes of this Motion, the Court will assume without deciding that HCI did not fail to plead personal jurisdiction and thus did not waive that defense in its Answer.

### 2. Litigation Conduct

But even if HCI did not waive the right to assert personal jurisdiction as a defense in its Answer, it has done so on by its conduct in this litigation. Unlike in Vallone, where HCI raised personal jurisdiction in response to the first substantive Motion filed in the case, HCI did not raise personal jurisdiction as a defense in this case for nearly two years. More egregious, HCI asked the Court to issue a substantive legal ruling on the travel-time issue in July 2019 without ever mentioning that it believed the Court lacked personal jurisdiction.

Even after explicitly asserting personal jurisdiction as a defense, a defendant's failure "to reassert the issue of personal jurisdiction" by participating in discovery and filing other motions but not seeking dismissal for lack of jurisdiction, constitutes a waiver of the right to assert the defense. Yeldell v. Tutt, 913 F.2d 533, 539 (8th Cir. 1990). "[D]elaying consideration of this threshold issue manifests an intent to submit to the court's jurisdiction." Id.; see also Network Prof'ls, Inc. v. Network Int'l Ltd., 146 F.R.D. 179, 184 (D. Minn. 1993) (MacLaughlin, J.) ("[D]efendants have waived their personal jurisdiction defense by raising it after the Court considered the merits or quasi-merits of the case in [a dispositive motion] and more than one year after the action began.")

By failing to assert the defense of lack of personal jurisdiction in its dispositive-motion briefing and for more than six months thereafter, HCI waived the right to plead that defense. The Court will therefore deny the Motion to Dismiss.

### D. Motion for Summary Judgment in Vallone

There are two distinct claims at issue in the Motion for Summary Judgment: a claim for travel time and a claim for a day of cancelled training.

#### 1. Travel Time

##### a. Employee status

HCI claims that the hours Plaintiffs spent traveling are not compensable for two reasons. First, HCI asserts that Plaintiffs were not employees of HCI when they traveled. According to HCI, Plaintiffs' employment relationship with HCI did not begin until they began working on the project, which for most of them was May 1, 2018.

There are very few decisions on point on this issue. Plaintiffs rely on "preliminary/postliminary activity" precedent, such as donning-and-doffing cases, but in

11

those decisions there was no dispute as to the individuals' employment status.  E.g., Tyson Foods, Inc., v. Bouaphakeo, 136 S. Ct. 1036, 1042 (2016) (meatpacking plant employees claiming donning and doffing of protective gear was compensable activity under FLSA).  The only dispute was whether the employees' activity just before or after a workday, such as putting on a uniform, was a compensable activity.  Here, Plaintiffs had not yet started to work for HCI, but claim that the time they spent getting to the jobsite and going home after the job was over is compensable.

The regulations define work time as including "all the time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace."  29 C.F.R. § 785.7 (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 690-91 (1946)).  Before Plaintiffs arrived in Rochester, they were not required to be in Rochester or performing any other duties for HCI.

Plaintiffs' arguments that their travel was "integral and indispensable" to their work for HCI, Steiner v. Mitchell, 350 U.S. 247, 249 (1956), are without merit.  Their travel time was integral to their ability to work for HCI, but was not integral to HCI.  In other words, HCI would have been satisfied if all individuals hired for the Mayo Clinic project lived in Rochester and did not need to travel.  Given the per-job nature of Plaintiffs' employment at HCI, travel time is simply not integral or indispensable, and it is therefore not compensable.  Plaintiffs were not employees at the time they traveled.

        **b.**    **Portal-to-Portal Act**

HCI next argues that, even if Plaintiffs had an employment relationship with HCI when they traveled, the travel is noncompensable "home-to-jobsite travel" under the FLSA.

Sec'y of Labor v. Timberline S., LLC, 925 F.3d 838, 854 (6th Cir. 2019).  HCI relies on the Portal-to-Portal Act, 29 U.S.C. § 254, to support its argument.

The Act provides that certain preliminary or postliminary work activities are not generally compensable, including "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" so long as that travel occurs "either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."  29 U.S.C. § 254(a).

The precedent interpreting this section consists of routine-commute cases, not cases like this one, where an individual travels to a remote worksite and stays there for an extended period doing work for the employer.  There is no dispute that "ordinary home-to-work and work-to-home commute time does not qualify as 'work' under the FLSA . . . and therefore that time is not subject to overtime requirements."  Timberline, 925 F.3d at 854.  Routine commute cases are therefore not particularly helpful to the Court's analysis.

Plaintiffs assert that the regulations require compensation for the type of travel at issue here:

> Travel that keeps an employee away from home overnight is travel away from home.  Travel away from home is clearly worktime when it cuts across the employee's workday.  The employee is simply substituting travel for other duties.  The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days.  Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through Friday the travel time during these hours is worktime on Saturday and Sunday as well as on the other days.

29 C.F.R. § 785.39. The application of this regulation, however, depends on the individual being an "employee" at the time of travel. And here, Plaintiffs were not employees within the meaning of either the Portal-to-Portal Act or the FSLA.

Moreover, even if Plaintiffs were considered "employees" before their first day of training or working, the regulation does not mandate that they be paid for the time they spent getting to Rochester. The regulation provides that it applies because "[t]he employee is simply substituting travel for other duties." Id. Plaintiffs were not substituting travel for other duties. Travel was their only duty. Plaintiffs did not have any duties with HCI either before they arrived in Rochester or after they left Rochester. The Portal-to-Portal Act does not require HCI to pay Plaintiffs for the time they spent getting to and from Rochester, and this part of the Motion for Summary Judgment is granted.

This necessarily means that the nationwide class allegations must be dismissed. The only remaining claim regarding the cancelled training at the Mayo Clinic on April 30, 2018, cannot be the subject of the nationwide class Plaintiffs envision, because only individuals who worked for HCI at the Mayo Clinic can bring such a claim.

### 2. Cancelled Training

The regulations provide that an employer must pay its employees when they are "engaged to wait." 29 C.F.R. § 785.15. HCI contends that the individuals who came to Rochester on April 29 for training on April 30 were not "engaged to wait" because they could do whatever they wanted on April 30. But the standard is not whether the employee can do what they wish. As the regulations note, when engaged to wait an "employee is unable to use the time effectively for his own purposes." Id. (emphasis added). None of these employees was free to do what they wished on April 30, because they had arrived in

14

a city far from home expecting to work.² That HCI ultimately did not require them to report to work does not mean that they were free to do anything they chose. They were required to remain in or near Rochester. Notably, HCI does not argue that it would have paid for the individuals to return to their homes and back to Rochester on April 30 if they wanted to do so. Their time "belong[ed] to and [wa]s controlled by the employer." Id. Under the circumstances of this case, the time was not "long enough to enable [them] to use the time effectively for [their] own purposes." Id. § 785.16(a). HCI is obligated to pay Plaintiffs for April 30, 2018, and the Motion for Summary Judgment is denied on this issue.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant's Motions to Compel Arbitration (Docket No. 150 in 18cv1647; Docket No. 62 in 19cv1532) are **DENIED**;

2. Defendant's Amended Motion to Dismiss in 18cv1647 (Docket No. 165) is **DENIED**;

3. Defendant's Amended Motion for Summary Judgment in 19cv1532 (Docket No. 87) is **GRANTED in part** and **DENIED in part**.

Dated: May 28, 2020

                                         *s/ Paul A. Magnuson*
                                         Paul A. Magnuson
                                         United States District Court Judge

---

² Any Plaintiffs who lived in or near Rochester, of course, could return home and thus could use that day effectively, and thus have no claim for the cancelled training.