UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Timothy C. Borup, | Civ. No. 18-1647 (PAM/DTS) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| The CJS Solutions Group, LLC d/b/a The HCI Group, | |
| Defendant. | |

This matter is before the Court on Plaintiff's Motion for Conditional Certification. For the following reasons, the Motion is denied.

**BACKGROUND**

Plaintiff Timothy Borup worked for Defendant The CJS Solutions Group d/b/a The HCI Group ("HCI") in May 2018. He had recently graduated from medical school and HCI hired him to assist physicians, nurses, and other healthcare providers at the Mayo Clinic with the transition to Epic, a new patient-management software system. Individuals who perform these duties for HCI are known as at-the-elbow, or "ATE" consultants. In May 2017, a year before Borup's employment and after defending numerous lawsuits regarding compensation for ATEs, HCI reclassified most ATEs as employees for purposes of the Fair Labor Standards Act ("FLSA").

HCI did not, however, reclassify individuals who, like Borup, were medically trained. Borup filed this lawsuit in June 2018, contending that HCI's refusal to classify medically trained individuals as employees violates both FLSA and Minnesota's wage and

hour laws. Borup now asks the Court to conditionally certify a collective under the FLSA, having apparently abandoned any class treatment for his state-law claim.

Borup seeks to represent a collective of "All individuals who were classified as independent contractors while performing work" for HCI "and who provided at-the-elbow training or support services for EHR [Epic] systems or software, without regard to specific job title." (Docket No. 202.) The class period "includes any time since June 13, 2015 through the date of the Court's ruling granting collective certification." (Id.)

As the Court discussed in ruling on the propriety of the settlement in the related Gray litigation, the procedural history of an earlier FLSA litigation involving HCI, Sanders v. CJS Solutions Group, 1:17cv3809 (S.D.N.Y.), is relevant here. See August 4, 2020, Order, Gray v. CJS Solutions, Inc., No. 19cv1008 (Docket No. 167) at 1-2, 7-8. With the instant collective, Borup purports to represent the so-called Sanders "leftovers"—individuals who were part of the Sanders settlement collective but who did not participate in that settlement and did not release their FLSA claims against HCI. But Borup himself is not a member of the Sanders collective; that collective closed in May 2017 and Borup first worked for HCI in 2018. Moreover, none of the ATEs in the Sanders collective was medically trained. Gray also purports to represent the Sanders leftovers, but not the medically trained ATEs.

Thus, the collective Borup requests consists of both the Sanders leftovers who worked for HCI from 2015 until May 2017, when most ATE workers were re-classified, and medically trained individuals who were not re-classified, almost all of whom worked on the Mayo project in 2018. (HCI asserts that the title of medically trained individuals was different than that of other ATEs, and for ease of reference, the Court will similarly

2

refer to these individuals as Resident Activation Support Specialists, or RAs.)  According to the briefing, there are approximately 136 RAs who have worked as ATE consultants for HCI; there are approximately 500 members of the Sanders settlement collective who did not release their claims.

In addition, Borup contends that his claims include a claim for unpaid travel time, despite the Court's ruling that such claims are not cognizable.  See May 28, 2020, Order, Vallone v. CJS Solutions, Inc., No. 19cv1532 (Docket No. 110) at 11-14.  Borup argues that he should be allowed to pursue the travel-time claim until the Eighth Circuit Court of Appeals rules on a pending appeal of that issue.  The Court's decision stands, however, and Borup may not pursue travel-time claims on his own behalf or on behalf of the putative collective.

## DISCUSSION

### A.     Timeliness

The only operative scheduling order in this case provides that the deadline for "motions re: class certification" is April 1, 2019. (Docket No. 19.)  Borup has never sought to amend that scheduling order or extend the deadline for motions for certification.  He argues that Judge Schultz stayed this case in February 2019, pending Borup's intervention in the Gray case, and that the stay was in place on April 1, 2019.  That stay, however, was lifted in May 2019, at Borup's request and over HCI's objections.  (Docket No. 90.)  Borup asserts that the parties "understood" that they would first litigate the propriety of the Gray settlement before certification in Borup, but Borup did not seek any ruling from the Court to prioritize the scheduling in this way.  Moreover, Borup's contention that "neither the Court nor the Magistrate Judge issued a new scheduling order directing the parties to

3

resolve collective litigation notice in Borup prior to resolving the propriety of collective settlement notice in Gray" is not well taken.  (Pl.'s Supp. Mem. (Docket No. 197) at 19 (emphases omitted).)  It is not the Court's responsibility to issue an amended scheduling order without any request to do so.  By May 2019, Borup's counsel knew that the collective-certification deadline had passed or, if tolled during the three-month stay, would shortly do so.  There is no justification for the failure to request an amended scheduling order.

Borup also contends that HCI did not move to extend the scheduling order and that its motion for partial summary judgment was untimely under that scheduling order.  Even if one party's lack of diligence could excuse the other party's, it is notable that HCI filed its summary-judgment motion less than one month after the time provided in the operative scheduling order, not more than 15 months after the scheduling order's deadlines.

"A schedul[ing order] may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Under the Court's Local Rules, a party moving for modification of such an order must establish "good cause" for the modification.  D. Minn. L.R. 16.3(b)(1).  A "scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."  Foster v. Litman, No. 19cv260, 2020 WL 4548281, at *2 (D. Minn. Aug. 6, 2020) (Cowan Wright, M.J.) (quotations omitted).  The Court has broad discretion to enforce the deadlines in a scheduling order. Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 759 (8th Cir. 2006).

"To establish good cause, a party must show its diligence in attempting to meet the [scheduling] order."  Id.  Thus, Rule 16 focuses on "the diligence of the party seeking to modify a Scheduling Order, as opposed to the litany of unpersuasive excuses . . . which

4

commonly undergird an untimely Motion to Amend." Scheidecker v. Arvig Enters., 193 F.R.D. 630, 632 n.1 (D. Minn. 2000) (Erickson, M.J.). The good-cause inquiry is a narrow one, and "[w]hile the prejudice to the [parties] resulting from modification of the scheduling order may also be a relevant factor, generally, [the Court] will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 717 (8th Cir. 2008).

Borup concedes that he did not attempt to meet the operative scheduling order's deadlines, relying on his assumption that these deadlines no longer applied in light of disputes in the related Gray litigation. Indeed, Borup has never sought to amend the scheduling order, even simultaneously with the instant Motion. Under these circumstances, he has failed to establish that he was diligent in attempting to comply with the scheduling order, and his untimely Motion must be denied on this basis alone.

**B.     FLSA Collective Action**

Even if timely, Borup has not demonstrated that certification of the collective he proposes is warranted. FLSA authorizes collective actions "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "The fundamental inquiry in determining whether a collective action under [Section] 216(b) is appropriate is whether or not the plaintiffs are 'similarly situated.'" Smith v. Heartland Auto. Servs., Inc., 404 F. Supp. 2d 1144, 1149-50 (D. Minn. 2005) (Kyle, J.).

Because FLSA does not define "similarly situated," courts in this District have adopted a two-stage process for determining whether a collective action is appropriate under that standard:

5

> At the initial stage, the court determines whether the class should be conditionally certified for notification and discovery purposes. At this conditional certification stage, the plaintiffs need only come forward with evidence establishing a colorable basis for their claim that the putative class members were together the victims of a single decision, policy, or plan. . . . At the second stage . . . the court uses a stricter standard for determining whether the putative class members are similarly situated and reconsiders whether the trial should proceed collectively or if it should be severed.

Thompson v. Speedway SuperAmerica LLC, No. 08-1107, 2009 WL 130069, at *5 (D. Minn. 2009) (Schiltz, J.) (citations and internal quotation marks omitted). "[T]he second stage occurs after discovery, usually when the defendant moves to decertify the class." Lyons v. Ameriprise Fin., Inc., No. 10-503, 2010 WL 3733565, at *2 (D. Minn. Sept. 20, 2010) (Kyle, J.) (citation omitted). The plaintiffs' burden at the first stage is a light one.

The parties spend much of their briefing on the appropriate certification standard. Borup argues that the pre-discovery, first-stage burden applies because the parties ostensibly have not engaged in much discovery in this case. HCI contends that Borup has the benefit of significant discovery, both from the now-closed Vallone matter and from the Gray litigation, so that the Court should use the second-stage stricter standard. Under either standard, however, Borup has not established that he is similarly situated to a large portion of the collective he seeks to represent. Thus, certification of his proposed collective is inappropriate.

### 1. Similarly Situated

To establish that he is similarly situated to the proposed collective even under the lighter burden, Borup must still "come forward with evidence establishing a colorable basis for their claim that the putative class members were together the victims of a single

6

decision, policy, or plan." Thompson, 2009 WL 130069, at *5. "A colorable basis means that [Borup] must come forward with something more than the mere averments in [his] [C]omplaint in support of [his] claim." Severtson v. Phillips Beverage Co., 141 F.R.D. 276, 278-79 (D. Minn. 1992) (Alsop, J.) (affirming Order of Noel, M.J.).

Borup has not established, even under the light burden applicable to pre-discovery conditional certification, that he is similarly situated to a large part of the collective he seeks to represent. Borup did not work as an ATE for HCI in the same capacity or manner as the ATEs involved in the Sanders litigation. Indeed, HCI's decision to reclassify ATEs in the Sanders collective and not medically trained ATEs like Borup establishes that all members of the collective were not "the victims of a single decision, policy, or plan." Thompson, 2009 WL 130069, at *5. HCI made the reclassification decision nearly a year before Borup worked for HCI; any decision regarding individuals who worked for HCI before that reclassification decision thus is not the same as HCI's determination with regard to Borup and other RAs. Borup has not established a common decision, policy, or plan that would allow him to represent the collective he envisions.

Borup's attempt to represent both the Sanders leftovers and RAs is problematic for at least one additional reason. Regular ATEs, such as the Sanders leftovers, received $30 to $45 an hour, while RAs received $60 to $70 per hour. The difference in pay reflects a difference in the degree of skill required of RAs as opposed to regular ATEs. See Karlson v. Action Process Serv. & Private Investig., LLC, 860 F.3d 1089, 1092 (8th Cir. 2017) (noting that one factor in determining employment status under FLSA is "skill required"). The difference between the two groups is also evident in the individuals who have chosen to opt in to this litigation. As of this Motion's filing, 25 individuals have filed notices of

intent to participate here. Only one of those is a <u>Sanders</u> leftover. The rest were RAs at the Mayo Clinic in 2018.

**CONCLUSION**

Borup's Motion is untimely under the operative scheduling order, but even if timely, Borup is not entitled to represent the collective set forth in his Motion. Accordingly, **IT IS HEREBY ORDERED that** Plaintiff's Motion to Certify Conditional Class (Docket No. 194) is **DENIED**.

Dated:   October 9, 2020

           *s/Paul A. Magnuson*
           Paul A. Magnuson
           United States District Court Judge